| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| STEVEN T. GUBNER – Bar No. 156593<br>RICHARD D. BURSTEIN – Bar No. 56661<br>MICHAEL W. DAVIS – Bar No. 274126<br>BRUTZKUS GUBNER<br>21650 Oxnard Street, Suite 500<br>Woodland Hills, CA  91367<br>Telephone: (818) 827-9000<br>Facsimile: (818) 827-9099<br>Email:      sgubner@bg.law<br>               rburstein@bg.law<br>               mdavis@bg.law<br><br>☐ *Individual appearing without attorney*<br>☒ *Attorney for:* David Seror, Chapter 7 Trustee | |

<div align="center">

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - SAN FERNANDO VALLEY DIVISION**

</div>

| In re:<br><br>OWNER MANAGEMENT SERVICE, LLC; OMS, LLC dba in California as OMS GLOBAL, LLC, f/k/a RAMSFIRE GLOBAL, LLC; RAMSFIRE EQUITY PARTNERS, INC.; WESTSIDE SERVICING COMPANY; CD-04, INC.; CREATIVE GROUP RESOURCE, LLC; DOROTHY MATSUBA; THOMAS MATSUBA; and, JAMIE MATSUBA,<br><br><div align="right">Debtor(s).</div> | CASE NO.: 1:12-bk-10231-MT<br><br>CHAPTER: 7<br><br>**NOTICE OF MOTION FOR:**<br>MOTION BY CHAPTER 7 TRUSTEE TO: (1) APPROVE SALE OF REAL PROPERTY FREE AND CLEAR OF ALL LIENS, INTERESTS, CLAIMS, AND ENCUMBRANCES WITH SUCH LIENS, INTERESTS, CLAIMS, AND ENCUMBRANCES TO ATTACH TO PROCEEDS PURSUANT TO 11 U.S.C. §§ 363(b) AND (f); (2) APPROVE OVERBID PROCEDURES; (3) DETERMINE THAT BUYER IS ENTITLED TO PROTECTION PURSUANT TO 11 U.S.C. § 363(m)<br>*(Specify name of Motion)*<br><br>DATE: 02/14/2018<br>TIME:  11:00 am<br>COURTROOM: 302<br>PLACE: Courtroom 302, United States Bankruptcy Court<br>              21041 Burbank Boulevard<br>              Woodland Hills, CA 91367 |

1.  TO (*specify name*):  ALL PARTIES IN INTEREST

2.  NOTICE IS HEREBY GIVEN that on the following date and time and in the indicated courtroom, Movant in the above-captioned matter will move this court for an Order granting the relief sought as set forth in the Motion and accompanying supporting documents served and filed herewith. Said Motion is based upon the grounds set forth in the attached Motion and accompanying documents.

3.  **Your rights may be affected**. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2012*                                    Page 1                             **F 9013-1.1.HEARING.NOTICE**

4. **Deadline for Opposition Papers:** This Motion is being heard on regular notice pursuant to LBR 9013-1. If you wish to oppose this Motion, you must file a written response with the court and serve a copy of it upon the Movant or Movant's attorney at the address set forth above no less than fourteen (14) days prior to the above hearing date.  If you fail to file a written response to this Motion within such time period, the court may treat such failure as a waiver of your right to oppose the Motion and may grant the requested relief.

5. **Hearing Date Obtained Pursuant to Judge's Self-Calendaring Procedure:** The undersigned hereby verifies that the above hearing date and time were available for this type of Motion according to the judge's self-calendaring procedures.

Date:  01/19/2018

Brutzkus Gubner
Printed name of law firm

/s/ Michael W. Davis
Signature

Michael W. Davis
Printed name of attorney

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2012                                      Page 2                          F 9013-1.1.HEARING.NOTICE

STEVEN T. GUBNER - Bar No. 156593
RICHARD D. BURSTEIN - Bar No. 56661
MICHAEL W. DAVIS - Bar No. 274126
BRUTZKUS GUBNER
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
Telephone:  (818) 827-9000
Facsimile:  (818) 827-9099
Email:       sgubner@bg.law
                rburstein@bg.law
                mdavis@bg.law

Attorneys for David Seror, Chapter 7 Trustee

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>OWNER MANAGEMENT SERVICES, LLC., et al.,<br><br>             Consolidated Debtors. | Case No. 1:12-bk-10231-MT<br><br>Chapter 7<br><br>**MOTION BY CHAPTER 7 TRUSTEE TO:**<br><br>**(1) APPROVE SALE OF REAL PROPERTY FREE AND CLEAR OF ALL LIENS, INTERESTS, CLAIMS, AND ENCUMBRANCES WITH SUCH LIENS, INTERESTS, CLAIMS, AND ENCUMBRANCES TO ATTACH TO PROCEEDS PURSUANT TO 11 U.S.C. §§ 363(b) AND (f);**<br><br>**(2) APPROVE OVERBID PROCEDURES;**<br><br>**(3) DETERMINE THAT BUYER IS ENTITLED TO PROTECTION PURSUANT TO 11 U.S.C. § 363(m)**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS OF DAVID SEROR AND RAFAEL FIGUEROA IN SUPPORT THEREOF**<br><br>Hearing:<br><br>Date:  February 14, 2018<br>Time:  11:00 a.m.<br>Place:  Courtroom 302<br>        United States Bankruptcy Court<br>        21041 Burbank Boulevard<br>        Woodland Hills, CA 91367 |

**TO THE HONORABLE MAUREEN A. TIGHE, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, CREDITORS, AND ALL OTHER INTERESTED PARTIES:**

David Seror, Chapter 7 Trustee ("Trustee") for the Bankruptcy Estate (the "Estate") of consolidated debtors Owner Management Service, LLC; OMS, LLC dba in California as OMS Global, LLC f/k/a Ramsfire Global, LLC; Ramsfire Equity Partners, Inc.; Westside Service Company; CD-04, Inc.; Creative Group Resource, LLC; Dorothy Matsuba; Thomas Matsuba; and, Jamie Matsuba (together the "Consolidated Debtors"), hereby moves this Court for an order authorizing the sale ("Sale") of real property located at 631 Caleb Street, Los Angeles, California 91202 ("Property") to Brian Der Vartanian and/or his assignee ("Buyer"), pursuant to 11 U.S.C. §§ 363(b)(1) and (f), free and clear of liens, interests, claims, and encumbrances, with such liens, interests, claims, and encumbrances to attach to the Sale proceeds, with the same priority and rights of enforcement as previously existed.

The Trustee seeks Court approval to sell the Property to Buyer pursuant to the terms and conditions set forth collectively in the *Residential Purchase Agreement and Joint Escrow Instructions,* the Trustee's *Counter-Offer*, and the *Buyer Counter Off No. 1* that set forth all terms and conditions of the proposed Sale, all attached hereto collectively as **Exhibit A** (together, the "Purchase Agreement"), and requests that the Court determine that Buyer is entitled to a good faith determination pursuant to 11 U.S.C. § 363(m).  In addition to the foregoing, the Trustee seeks Court approval to pay Broker's[1] commissions, normal and customary escrow closing costs, and the secured lienholders on the Property through escrow as set forth herein.  In support thereof, the Trustee represents as follows:

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.      INTRODUCTION**

By the Motion, the Trustee proposes to sell the Estate's interest in the Property to Buyer for a purchase price of One Million Two Hundred Thirty Thousand Dollars ($1,200,000.00) ("Purchase

---

[1] The Court approved the Broker's employment on May 23, 2017 [Docket No. 1909].

1899714

Price"), payable in cash upon close of escrow, upon the terms set forth in the Purchase Agreement, attached.  Buyer will attempt to fund a portion of the Purchase Price through a conventional loan, however, Buyer's failure to acquire any such loan will not be an impediment to sale because he has agreed to pay the Purchase Price in full in cash from funds he has on deposit, to the extent he is not able to acquire financing.  Financing is not a condition of the Purchase Agreement.  The Trustee also seeks approval for the solicitation of overbids concerning the sale of the Property at the hearing on the Motion and the procedures for such solicitation.  The Trustee requests that the Court find that the Buyer is a good faith purchaser within the meaning of 11 U.S.C. § 363(m) and is entitled to the protections thereof.

The Property was listed for sale for One Million Seven Hundred Thousand Dollars ($1,700,000.00) beginning in May 2017.  The Property is unique and, in Broker's opinion, there is a fairly limited market of potential buyers.  The Property is large (approximately 5,000 square foot) but has no usable yard, is constructed on a downhill slope, is on a road which dead-ends into a lot that appears to be subject to an electric utility easement, and the Property is in need of approximately $150,000 to $200,000 in deferred maintenance.

Based on the market response to the original purchase price, listing prices of comparable properties, and the various issues described above, the Trustee determined (upon advice of Broker) that the listing price needed to be reduced, and approved a price reduction to $1.425 million.  On Broker's further recommendation and pursuant to prevailing market conditions, the Trustee again agreed to reduce the listing price, to $1.38 million, and to $1.295 million thereafter.  In that time, the Trustee received only three initial offers, the Buyer being the only offeror with whom it was possible to enter into a Purchase Agreement, now made the subject of the Motion

On November 3, 2017, Trustee received an offer from Buyer in the amount of $1.15 million.  The Trustee countered at $1.25 million, and ultimately, the Trustee and Buyer agreed to the Purchase Price of $1.2 million.  In the Trustee's business judgment, the Purchase Price, subject to overbid, provides the best return to the Estate and its creditors.

The Property was extensively marketed at various price levels and garnered only minimal interest.  The Property was marketed on the Multiple Listing Service (MLS), as well as the following

websites: (1) www.realtor.com; (2) www.latimes.com; and, (3) www.zillow.com. There were two open houses (in June and October 2017), and the Broker received approximately 15 expressions of interest in the Property which resulted in the offers described above (including the offer from Buyer).  The results of the marketing are as noted above.

The Trustee believes that that the Offer from the Buyer, based on all the factors previously described, represents an offer that is well within the range of reasonableness and neither the Broker nor the Trustee believe that further marketing will result in any substantial incremental benefit to the Estate. Thus, the Trustee submits that this proposed Sale is in the best interest of the Estate because the consideration for the Sale of the Property is reasonable, and the Estate will benefit as a result of the Sale. Based on the foregoing, it is respectfully submitted that the Sale proposed herein provides maximum benefit to the Estate.

## II.    FACTUAL BACKGROUND

The debtor, Owner Management Service, LLC ("Original Debtor"), initiated this bankruptcy proceeding (1:12-bk-10231-MT) when it filed a voluntary Chapter 11 petition on January 9, 2012. Thereafter, the case was converted to one under Chapter 7 and David Seror ("Trustee") was appointed as the Chapter 7 Trustee. He continues to serve in that capacity.  On May 14, 2015, the Court substantively consolidated the Original Debtor's Estate with the estates of OMS, LLC, OMS Global, LLC, Ramsfire Global, LLC, Ramsfire Equity Partners, Inc., Westside Servicing Company, CD-04, Inc., and Creative Group Resource, LLC, Dorothy Matsuba, Thomas Matsuba, and Jamie Matsuba (together, the "Consolidated Debtors").

The assets of this Estate consist primarily of the Consolidated Debtors' interests in numerous parcels of residential real property (the "Properties") and the rental income collected therefrom.  The Property is one such property and, as set forth the Preliminary Title Report attached to the Seror Declaration as **Exhibit B** and incorporated herein by this reference, title to the Property stands in the name of OMS, LLC (as trustee of the 631 Caleb Trust), a consolidated debtor.

On April 25, 2017 [Docket No. 1891] (the "Compromise Motion"), the Trustee filed his *Motion for Approval of Compromise* seeking approval of settlement agreement between the Trustee, the Consolidated Debtors, and Bank of America, N.A. and Nationstar Mortgage, LLC (the

1899714

1  "Banks").  The Court granted the Compromise Motion and approved the underlying settlement

2  agreement between the settling parties on June 30, 2017 [Docket No. 1937].  Principal among the

3  factors considered by the Trustee in connection with the Compromise Motion was that the

4  underlying agreement provided the Trustee with a mechanism to attempt to make a 100%

5  distribution on allowed unsecured claims in this case, which included that the Trustee would seek to

6  liquidate real properties to the extent necessary to pay any such allowed claims.  In connection with

7  the approved Compromise Motion, the Trustee now seeks the authority to sell the Property as set

8  forth herein.

9  Through escrow the Buyer is being provided with a title policy, and the title inspection

10  contingency has been removed by the Buyer.  In order to maximize value to the Estate, the Trustee

11  seeks to sell the Property to Buyer free and clear of liens, interests, claims, and encumbrances with

12  such liens, interests, claims, and encumbrances to attach to the sale proceeds, pursuant to the terms

13  and conditions as set forth herein and in the Purchase Agreement.

14  **III.    TERMS OF PROPOSED SALE**

15  **A.    The Purchase Agreement**

16  The Purchase Agreement was fully executed on or about November 27, 2017.  The following

17  is a summary of the terms of the Purchase Agreement.  Interested parties should consult the Purchase

18  Agreement (**Exhibit A** to the Seror Decl.) for the full and complete terms and conditions of the

19  proposed Sale of the Property.  In the event the following summary of the terms of Sale is found to

20  conflict with the Purchase Agreement, the terms of the Purchase Agreement shall be controlling.

21  1.    Sale Price:  Trustee proposes to sell the Property to the Buyer, subject to Court

22  approval, for One Million Two Hundred Thirty Thousand Dollars ($1,200,000.00) ("Purchase

23  Price"), payable in cash upon close of escrow.  Buyer will attempt to fund a portion of the Purchase

24  Price through a conventional loan, however, Buyer's failure to acquire any such loan will not be an

25  impediment to sale as he has agreed to pay the Purchase Price in full in cash from funds he has on

26  deposit, to the extent he is not able to acquire financing.  Financing is not a condition of sale.

27  2.    Earnest Money Deposit:  Buyer has deposited with escrow a deposit in the amount of

28  $36,900 ("Deposit").

3.    <u>Broker's Commission</u>:  Subject to Court approval, the Trustee as seller will pay to the Broker through escrow real estate broker commissions totaling five percent (5%) of the Purchase Price ("Commission").  Broker and the Buyer's broker will share the Commission.  The Trustee will also pay the normal closing costs and costs of sale through escrow, including the cost of a standard coverage title insurance policy, recording fees, documentary transfer taxes, and other normal and customary charges, pro-rations, costs, and fees.

4.    <u>No Representations or Warranties</u>:  The Property will be sold by the Trustee on an **AS-IS, WHERE-IS** basis, without any representations or warranties regarding the condition of the Property.  Transfer of the Property shall be by Quitclaim Deed.

5.    <u>Contingencies</u>:  As of the date of filing this Motion, any contingencies have been removed, and Buyer has funded the deposit.

6.    <u>Liquidated Damages, Buyer Default</u>:  If, after Bankruptcy Court approval of the Sale to Buyer, the Buyer fails to complete the purchase contemplated by the Purchase Agreement, the Trustee shall retain the Deposit as liquidated damages.

7.    <u>Overbid</u>:  The proposed Sale to Buyer is subject to overbid.  If the Court does not approve Buyer as purchaser of the Property, the Trustee and Buyer shall cancel escrow and Trustee shall authorize the Escrow Holder, as defined in the Purchase Agreement, to refund the Deposit to Buyer.

8.    <u>Close of Escrow</u>:  Escrow shall close on the first business day that is at least fifteen (15) days after entry of the Bankruptcy Court order approving the Sale ("Sale Order") or such earlier date as agreed by the parties and the Court.

9.    <u>Bankruptcy Court Jurisdiction</u>:  The United States Bankruptcy Court for the Central District of California shall have exclusive jurisdiction to interpret and enforce the Purchase Agreement.

10.    <u>Tax Consequences</u>:  The Trustee expresses no opinion as to whether there are tax consequences to the Sale.

1899714

B. **Overbid Procedures**

While the Trustee is prepared to consummate the Sale of the Property to Buyer pursuant to the terms of the Purchase Agreement, he is obliged to seek the maximum price for the Property. Accordingly, the Trustee requests that the Court authorize him to implement an overbid procedure regarding the sale of the Property per the following terms ("Bidding Procedures"):

1.    Present at Hearing:  The Buyer and each Qualified Bidder, defined below, must be physically present at the hearing on the Motion or represented by an individual or individuals with the authority to participate in the overbid process;

2.    Notice of Overbid:  Any party wishing to participate in the overbid process must notify the Trustee in writing directed to David Seror via email addressed to dseror@bg.law **and** Richard Burstein and Michael W. Davis via email to rburstein@bg.law and mdavis@bg.law, respectively, of his/her/its intention to do so no later than close-of-business two (2) calendar days before the hearing on the Motion and must provide evidence of his/her/its financial ability to close;

3.    Earnest Money Deposit:  To be a qualified overbidder ("Qualified Overbidder"), each party participating in the overbid process (except for the Buyer, who has already paid the Deposit to the Trustee), must remit to the Trustee, care of his counsel of record at the address set forth on the top left of the first page of the Motion, at or prior to the hearing on the Motion, payment in the form of a cashier's check (no other form of payment shall be accepted) made payable to "David Seror, Chapter 7 Trustee" (payment made payable to any other party may, in the sole discretion of the Trustee and/or Trustee's counsel, be deemed inadequate and rejected) in a deposit amount of **$36,900.00** ("Overbid Deposit").  The Overbid Deposit shall not be refundable if such party is the successful bidder and is thereafter unable to complete the purchase of the Property per the terms of the proposed sale with fifteen (15) calendar days after entry of an order approving this Motion;

4.    Initial Overbid:  The initial overbid for the Property shall be **$1,250,000.00**, with subsequent overbids being made in minimum increments of **$5,000.00**;

5.    Successful Overbidder Subject to Terms of Purchase Agreement.  In the event that the Buyer is not the successful bidder for the Property, the successful bidder ("Successful Bidder") shall then become the buyer under the same terms and conditions as set forth in the Purchase Agreement,

1899714

1  except in Purchase Price.  Under these circumstances, the Purchase Agreement with Buyer would no

2  longer be effective and Buyer would be entitled to full refund of the Deposit.

3  **IV.      PROPOSED DISTRIBUTION OF SALE PROCEEDS**

4        The Motion seeks authority to sell the Property free and clear of other liens and

5  encumbrances.  The Title Report, **Exhibit B**, identifies encumbrances as follows:

6        1.   General and/or Special City and/or County taxes for the fiscal year 2017-2018 in the

7             amount of $6,168.26;

8        2.   A first position deed of trust ("First Trust Deed"), in favor of La Vista Properties in

9             the amount of $150,000.00;

10       3.   A second position deed of trust ("Second Trust Deed"), in favor of Washington

11            Mutual Bank in the amount of $1,000,000;

12       4.   A third position deed of trust ("Third Trust Deed"), in favor of consolidated debtor

13            CD-04, Inc. in the amount of $100,000;

14       5.   Three liens for unsecured property taxes in favor of the Los Angeles County tax

15            collector in the aggregate amount of $479.95;

16       6.   An abstract of Judgment recorded on September 2, 2015 in the amount of $2,200.00

17            in favor of Enchantee Lanice Minor ("Minor Abstract") with respect to a small claims

18            judgment entered on July 30, 2015; and,

19       7.   A $451.80 tax lien filed by the State of California Employment Development

20            Department.

21       Of the foregoing, the Trustee disputes only the First Trust Deed and the Minor Abstract (*see*,

22  Section V.B., below).  As the Third Trust Deed is in the name of a consolidated debtor and is thus

23  property of the Estate/ held for the benefit of the Estate, the Trustee will reconvey it/authorize its

24  release in connection with the sale, and seeks the authority to do so.  Based on the Trustee's

25  examination of the business practices of the debtors and their books and records, the Trustee does

26  not believe that the purported beneficiary of this Trust Deed advanced any funds or other value to

27  the trustor. The Trustee seeks authorization for distribution of the Sale proceeds at the close of

28  escrow as follows:

1899714

1    (a) Normal closing costs, including but not limited to the Trustee's share of escrow charges,

2    the cost of a standard coverage title insurance policy, recording fees, documentary transfer taxes,

3    pro-rated real property taxes, and other normal and customary charges, pro-rations, costs, and fees;

4    (b) Broker's commission of five percent (5%) of the Purchase Price;

5    (c) Payment to satisfy all amounts due and owing on the Second Trust Deed, subject to the

6    Trustee's review and approval of final payoff demands submitted by the lienholders.

7    **V.    DISCUSSION**

8    **A.    The Court Should Authorize the Sale of the Assets in Accordance with the**

9    **Purchase Agreement**

10   The Sale as contemplated by the Purchase Agreement is in the best interests of the Estate and

11   should be approved.  Section 363 of the Bankruptcy Code authorizes the Trustee to sell Estate

12   property following notice and a hearing on terms that are fair and reasonable and the result of an

13   arms-length transaction.  Specifically, Section 363(b)(1) states in pertinent part that: "The trustee,

14   after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business,

15   property of the estate."

16   In determining whether the sale of assets outside of the ordinary course of business should be

17   approved, bankruptcy courts usually consider several factors, including: (1) whether a sufficient

18   business reason exists for the sale; and (2) whether the proposed sale is in the best interest of the

19   estate, which in turn consists of the following factors: (a) that terms of the sale are fair and

20   reasonable; (b) that the proposed sale has been adequately marketed; (c) that the proposed sale terms

21   have been properly negotiated and proposed in good faith; and (d) that the purchaser is involved in

22   an arms-length transaction with the seller.  *See In re Wilde Horse Enterprises, Inc.*, 136 B.R. 830,

23   841 (Bankr. C.D. Cal. 1991) ("In approving any sale outside the ordinary course of business, the

24   court must not only articulate a sufficient business reason for the sale, it must further find it is in the

25   best interest of the estate, *i.e.*, it is fair and reasonable, that it has been given adequate marketing,

26   that it has been negotiated and proposed in good faith, and that it is an 'arms-length' transaction.");

27   *Matter of Phoenix Steel Corp.*, 82 B.R. 334, 335-356 (Bankr. D. Del. 1987) (In determining whether

28   a proposed sale of equipment is proper under § 363, courts should consider whether the proposed

1899714

1  sale is fair and equitable, whether there was a good business reason for completing the sale, and

2  whether the transaction is proposed in good faith.); *In re Alves*, 52 B.R. 353, 355 (Bankr. D.R.I.

3  1985) (whether to approve a sale under § 363 depends upon the integrity of sale and the best interest

4  of bankruptcy estate).

5          In the instant case, the Trustee has satisfied all of the applicable elements discussed above

6  concerning the proposed sale of the Property, and the Trustee has sound reasons for the sale,

7  specifically, to maximize return to the Estate by liquidation of the Property.

8          The Trustee submits that the Purchase Price for the Property offered by Buyer is fair and

9  reasonable and that the sale of the Property was adequately marketed.  The Trustee believes that

10 the Offer from the Buyer, based on all the factors previously described, represents an offer that is

11 well within the range of reasonableness and neither the Broker nor the Trustee believe that further

12 marketing will result in any substantial incremental benefit to the Estate.

13         As set forth in the Figueora Decl., the Broker extensively listed the marketed the Property,

14 and due to market conditions, the Trustee was required to reduce the price multiple times before the

15 Property attracted substantial interest.  In that the time that the Property was listed, the Trustee

16 received only three initial offers, the Buyer being the only offeror with whom it was possible to enter

17 into a Purchase Agreement, now made the subject of the Motion.

18          Thus, in the Trustee's business judgment, the proposed Sale to Buyer as contemplated by

19 the Purchase Agreement will maximize the benefit to the Estate, is fair and reasonable, and should

20 be approved.

21     **B.**     **The Court Should Authorize the Proposed Sale Free and Clear of All Liens,**

22             **Interests, and Encumbrances Pursuant to 11 U.S.C. § 363(f)**

23         Pursuant to 11 U.S.C. § 363(f), the Trustee may sell any and all right, title and interest he

24 may possess to the Property free and clear of liens, interests, claims, and encumbrances, with such

25 liens, interests, claims, and encumbrances to attach to the Sale proceeds, with the same priority and

26 rights of enforcement as previously existed.  The Trustee respectfully submits that he may quitclaim

27 whatever right and title the Estate has in the Property to Buyer, subject to overbid and Court

28 approval, free and clear of these encumbrances.

1899714

**1.    The Court Should Approve a Sale Free and Clear of the First Trust Deed**

The Title Report reflects at exception number 11 a purported lien for $150,000. The beneficiary of that trust deed is La Vista Properties, LLC., and the trustor of that trust deed is Alfred Gregorian. Prior to offering Caleb for sale, the Trustee was not aware of this possible encumbrance. Preliminary title reports obtained by the Trustee's brokers prior to marketing did not reflect the lien, although the brokers used a different title company than the company that provided the attached Title Report. Upon reviewing the attached Title Report and after analysis, it appeared to the Trustee that this lien was suspicious. The beneficiary and the trustor have the same business address on the lien documents. Because of these concerns, on December 20, 2017, the Trustee's counsel wrote to both the beneficiary and the trustor at the address on the lien documents, sent by overnight delivery, and requested evidence of the payment of the asserted consideration for the trust deed and an explanation of its background. The Trustee's counsel received no response at all to these letters, nor were they returned to his counsel as undeliverable.

The absence of the response gives weight to the Trustee's concerns about the legitimacy of this lien, which is also apparent in the suspicious circumstances noted above. The Trustee will be giving notice of this motion specifically to the beneficiary and trustor of this lien at the address shown for them on the lien documents. Subsequent research by the Trustee's counsel has located a possible additional address for Mr. Gregorian in Las Vegas, and indications that La Vista Properties, LLC., might no longer be in business. Therefore, the Trustee's notice will additionally be given to Mr. Gregorian and separately to La Vista Properties, LLC at the said Las Vegas address.

If by the time of the hearing, no sufficient response is provided, the Trustee urges the Court to then order this sale free and clear of this lien, the lien attaching to the net proceeds of the sale. The lien will under those circumstances be the subject of a bona fide dispute, 11 USC Section 363 (f) (4). The totality of the circumstances is the test for what qualifies as a bona fide dispute, 2 Bankruptcy Law Manual Section 15:12 (5th Edition, 2017), and here the Trustee has sought out the lien claimant for information and has been ignored, he has not rested simply on his untested perceptions, *see, e.g.*, *In re Takeout Taxi Holdings, Inc.*, 307 BR 525 (BK ED Va, Alexandria Division, 2004)."

**2.      The Court Should Approve a Sale Free and Clear of the Minor Abstract**

The Title Report reflects at exception number 16 an abstract of judgment in favor of Echantee Lanice Minor ("Minor") in the amount of $2,200.  The Minor Abstract is attached hereto as separate exhibit.   The Minor Abstract reflects that it relates to a small claims judgment and was issued on August 28, 2015, in favor of Minor and with OMS Global, LLC ("OMS LLC"), as the judgment debtor.  The Minor Abstract was thus entered after OMS LLC became a debtor in this matter (as a result of the substantive consolidation judgment entered May 14, 2015) and is void as having been recorded post-petition.  The majority of courts have long stated that violations of the automatic stay are void and of no effect.  *In re Schwartz*, 954 F.2d 569, 572 (9th Cir. 1992).

Minor also filed a proof of claim in this case as it relates to the Minor Abstract (Claim No. 32-1), a copy of which is attached hereto.  The Trustee sent a letter inquiring further about deficiencies with this claim to Minor (care of her counsel of record on the claim, BASTA, Inc.), and requesting supplemental information in support thereof.  It does not appear that Minor or her counsel ever responded.

Based on the foregoing, the Trustee submits that the Minor Abstract is the subject of a bona fide dispute, and that the Property should be sold free and clear thereof, with the Minor Abstract to attach to the proceeds of sale pending further resolution of the Trustee's dispute thereof.

**C.      The Court Should Find that the Buyer is a Good Faith Purchaser**

Pursuant to 11 U.S.C. § 363(m), the Court should make a finding that a buyer is a good faith purchaser.  A purchaser of property is protected from the effects of reversal on appeal of the authorization to sell or lease as long as the Court finds that the purchaser acted in good faith and the appellant fails to obtain a stay of the sale.  *See* 11 U.S.C. § 363(m).  Although the Bankruptcy Code does not define "good faith," courts have provided guidance as to the appropriate factors to consider. *See In re Pine Coast Enterprise, Ltd.*, 147 B.R. 30, 33 (Bankr. N.D. Ill. 1992) ("The requirement that a purchaser act in good faith speaks to the integrity of its conduct in the course of the sale proceeding."); *Kham and Nate's Shoes No. 2 v. First Bank*, 908 F.2d 1351, 1355 (7th Cir. 1990) (The purpose of § 363(m) is to disable courts from backtracking on promises with respect to bankruptcy sales in the absence of bad faith).  In *T.C. Investors, et al. v. Joseph, et al. (In re M*

1899714

1 *Capital Corp.*), 290 B.R. 743 (9th Cir. BAP 2003), the Bankruptcy Appellate Panel held that a

2 bankruptcy court may not make a finding of good faith in the absence of evidence, but may make

3 such a finding if appropriate evidence is presented.  290 B.R. at 746–747.

4       In the instant case, the Trustee requests that the Court make a finding that the Buyer is a good

5 faith purchaser within the meaning of Section 363(m).  The Trustee has no relation to the Buyer and

6 did not know the Buyer prior to his involvement in this bankruptcy case.  Additionally, the Trustee

7 submits that the Purchase Agreement was negotiated at arms-length, and the proposed Purchase

8 Price is fair consideration for the Property.  Seror Decl.  As such, a finding of good faith within the

9 meaning of Section 363(m) is appropriate.

10     **D.**    <u>**The Court Should Approve the Proposed Bidding Procedures**</u>

11       The Bidding Procedures ensure that the Estate receives the maximum benefit of the Sale, and

12 the Trustee submits that sufficient cause exists to approve these Bidding Procedures.  Courts

13 routinely have held that when the sale of substantial assets in bankruptcy is done on a competitive

14 bidding basis, as is proposed herein, it is appropriate to require parties submitting competing bids to

15 submit bids that exceed an existing bid by a specified amount.  *See, e.g., In re Financial News*

16 *Network, Inc.*, 931 F.2d 217 (2d Cir. 1991) (authorizing overbids that exceeded the initial offer by

17 9.5 percent).  Here, the initial overbid exceeds the Purchase Price by $50,000.00 (or 4.1%), with

18 further overbids to be in increments of $5,000.00.  The Trustee feels these amounts are appropriate

19 and designed to insure serious overbids, if there are any.  The Trustee proposes that any Qualified

20 Overbidder submit the Overbid Deposit amount to him pending the outcome of the hearing.  Buyer

21 has expended, and will continue to expend, considerable time, money, and energy pursuing the

22 Purchase Agreement and contemplated Sale, and has engaged in extended and good faith

23 negotiations with the Trustee.  Thus, the proposed Bidding Procedures are appropriate and should be

24 approved.

25 **VI.**   **NOTICE**

26       The Trustee submits that adequate notice of the proposed Sale has been given.  Concurrently

27 with the filing of this Motion, notice on the Court-approved form F 6004-2 was submitted to the

28 Court's clerk for publication on the Court's website pursuant to Local Bankruptcy Rule 6004-1(f).

1899714

1  Notice will also be published on the Danning, Gill, Diamond, & Kollitz LLP website.  Finally,

2  notice of this Motion has been provided to the Debtor, the Office of the United States Trustee, and

3  all other interested parties pursuant to Federal Rule of Bankruptcy Procedure 2002(a).

4  **VII.    CONCLUSION**

5        Based on the foregoing, the Trustee respectfully requests that the Court enter an order

6  granting the Motion and:

7        1.    Approving the terms of the Purchase Agreement, and finding that the terms of the

8  Purchase Agreement are fair and reasonable and that the Sale of the Property pursuant to the terms

9  of the Purchase Agreement is in the best interests of the Estate and its creditors;

10        2.    Authorizing sale of the Property to Buyer or the Successful Bidder free and clear of

11  all liens, claims, interests, and encumbrances, with such liens, claims, interests, and encumbrances to

12  attach to the sales proceeds, with the same priority and rights of enforcement as previously existed

13  pursuant to 11 U.S.C. §§ 363(b) and (f);

14        3.    Authorizing the Trustee to execute any and all documents that may be necessary or

15  convenient to consummate the Sale;

16        4.    Authorizing sale of the Property to Buyer or the Successful Bidder on the terms and

17  conditions set forth herein, on an **AS-IS, WHERE-IS** basis, without any representations or

18  warranties by the Trustee;

19        5.    Authorizing the payment through escrow of the Broker's commission, escrow fees,

20  pro-rated property taxes, and other normal and customary costs associated with the sale of real

21  property;

22        6.    Authorizing payment to satisfy all amounts due and owing on the Second Trust Deed,

23  subject to the Trustee's review and approval of final payoff demand submitted by the lienholder.  To

24  the extent that the Trustee does not approve of such payoff demand, that the sale be free and clear of

25  the Second Deed to attach to the proceeds of sale with the same priority and rights of enforcement as

26  previously existed;

27        7.    Authorizing the Trustee to release or reconvey the Third Trust Deed (in favor of

28  consolidated debtor CD-04, Inc.) and execute any documents required to effectuate the release or

1899714

1  reconveyance;

2          8.      Approving the proposed Bidding Procedures for the Sale of the Property;

3          9.      Finding that Buyer or the Successful Bidder is a good faith purchaser of the Property

4  pursuant to 11 U.S.C. § 363(m) and is entitled to all benefits and protections provided thereby;

5          10.     Approving the form and manner of notice provided by the Trustee;

6          11.     Waiving the fourteen (14) day stay provided by Federal Rule of Bankruptcy

7  Procedure 6004(h); and

8          12.     Granting such other and further relief to the Trustee as the Court deems just and

9  proper under the circumstances.

10

11 DATED:   January 19, 2018                    BRUTZKUS GUBNER

12
                                                    /s/ Michael W. Davis
13                                           By:_____
                                                  Richard D. Burstein
14                                                Michael W. Davis
                                             Attorneys for David Seror, Chapter 7 Trustee
15

16

17

18

19

20

21

22

23

24

25

26

27

28

1899714

## DECLARATION OF DAVID SEROR

I, David Seror, declare:

1.      I am the duly appointed and acting Chapter 7 Trustee for the bankruptcy estate of Owner Management Service, LLC.  I have personal knowledge of the facts contained herein, or have gained such knowledge from my review of records I normally maintain as Trustee, and if called as a witness, I could and would competently testify to these facts.

2.      I make this declaration in support of the Motion.  All initial capitalized terms used but not defined herein shall have the same meaning as is affixed to them in the Motion.

3.      With the assistance of Broker, my initial investigation of this Property revealed that the Property had a fair market value of approximately $1.7 million.  Thus, the Broker marketed the Property beginning May 2017 via Multiple Listing Service, and listed the Property for sale with a purchase price of $1,700,000.00.  Based on the market response to the original purchase price, listing prices of comparable properties, and the various issues described above, I determined (upon advice of Broker) that the listing price needed to be reduced, and approved a price reduction to $1.425 million, and authorized the reduction of the listing price.  Based upon market conditions and the lack of interest, I authorized two more price reductions, to $1.38 million and then $1.295 million.

4.      On approximately November 3, 2017, I received an offer from Buyer in the amount of $1.15 million.  I countered that offer at $1.25 million, and pursuant to subsequent negations, Buyer and I agreed on a price of $1.2 million.  The final offer from the Buyer, in the amount of $1.2 million was the highest and best offer that I received that resulted in a fully executed Purchase Agreement.  In that the time that the Property was listed, I received only three initial offers, the Buyer being the only offeror with whom it was possible to enter into a Purchase Agreement, now made the subject of the Motion.

5.      On or about November 10, 2017, I fully executed the Purchase Agreement, a true and correct copy of which is attached hereto as **Exhibit A.**

6.      On or about April 12, 2017, I received a title report regarding the Property from Fidelity National Title Company, which was attached to my motion seeking an order employing Broker [Docket No. 1898].  On or about November 30, 2017, I received an updated Preliminary Title

1899714

1 Report regarding the Property from Stewart Title Company, a true and correct copy of which is

2 attached hereto as **Exhibit B.**  As shown in the Title Report, the Debtor has title to the Property

3 through its known dba "OMS Global, LLC."

4        7.     Upon reviewing the attached Title Report and after analysis, it appears to me that the

5 First Trustee Deed is suspicious. The beneficiary and the trustor have the same business address on

6 the lien documents. Because of these concerns, on December 20, 2017, I instructed my counsel to

7 write to both the beneficiary and the trustor at the address on the lien documents, sent by overnight

8 delivery, and requested evidence of the payment of the asserted consideration for the trust deed and

9 an explanation of its background. I am informed that my counsel received no response at all to these

10 letters, nor were they returned to counsel as undeliverable.

11        8.     Additionally, the Title Report reflects at exception number 16 an abstract of judgment

12 in favor of Minor in the amount of $2,200.  The Minor Abstract is attached hereto as separate

13 exhibit.   The Minor Abstract reflects that it relates to a small claims judgment and was issued on

14 August 28, 2015, in favor of Minor and with OMS Global, LLC ("OMS LLC"), as the judgment

15 debtor.  Minor also filed a proof of claim in this case as it relates to the Minor Abstract (Claim No.

16 32-1), a copy of which is attached hereto.  I have previously instructed my counsel to send a letter

17 inquiring further about deficiencies with this claim to Minor (care of her counsel of record on the

18 claim, BASTA, Inc.), and requesting supplemental information in support thereof.  It does not

19 appear that Minor or her counsel ever responded.  A copy of that letter is also attached. I am

20 informed and believe that no response was received thereto.

21        9.     I request that the Court approve the terms of sale as those terms are set forth in full in

22 the Motion. As noted, I seek the authority to sell the Property free and clear of liens, interests,

23 claims, and encumbrances, with such liens, interests, claims, and encumbrances to attach to the Sale

24 proceeds, with the same priority and rights of enforcement as previously existed. I am also

25 requesting the authorization to pay the Second Trust Deed through escrow, subject to my review and

26 approval of a payoff demand from the secured party. In the event that I dispute any lien, I request

27 that the Sale nonetheless go forward with any disputed lien to attach to the net proceeds of Sale.

28

1899714

10.     As set forth in the Motion, the First Trust Deed and the Minor Abstract are the subject of bona fide disputes, and thus I seek the authority to sell the Property free and clear thereof.

11.     The Third Trust Deed is held for the benefit of a consolidated debtor (CD-04, Inc.), I thus request through the Motion the authority to release or reconvey that lien in connection with the Sale.

12.      I further request the authority to pay to the brokers through escrow real estate broker commissions totaling five percent (5%) of the Purchase Price ("Commission"). Broker and the Buyer's broker will share the Commission. I also seek authority to pay the normal closing costs and costs of sale through escrow, including the cost of a standard coverage title insurance policy, taxes, recording fees, documentary transfer taxes, and other normal and customary charges, pro-rations, costs, and fees.

13.     After payment of approved amounts as set forth herein, the balance of the Sale proceeds will be held for the benefit of the Estate.

14.     I am informed and believe that Buyer has deposited with escrow a deposit in the amount of $36,900.00.

15.     I am informed by Broker and believe that the Buyer removed all contingencies to the Sale of the Property.

16.     I have no relation to the Buyer and I did not know the Buyer prior to his involvement in this bankruptcy case.  The Purchase Agreement was negotiated at arms-length, and I believe the proposed Purchase Price is fair consideration for the Property. Based on the foregoing, I request that the Motion be approved as in the best interests of the Estate and that Buyer be provided with the protections of 11 U.S.C. § 363(m).

17.     I am also requesting that the Court approve the proposed overbid procedure. The initial overbid for the Property shall be $1,250,000.00, with subsequent overbids being made in minimum increments of $5,000.00. Given the value of the Property and the Purchase Price, I believe that these overbid increments are appropriate to encourage a vigorous overbid process, but are also in line with consideration of the fact that Buyer has expended, and will continue to expend, considerable time, money, and energy pursuing the Purchase Agreement and contemplated Sale. I

1899714

propose that any Qualified Overbidder submit the Overbid Deposit amount to me pending the outcome of the hearing. Thus, the proposed Bidding Procedures are appropriate and should be approved.

18.     I believe that adequate notice of the proposed Sale will be given. Concurrently with the filing of the Motion, notice on the Court-approved form F 6004-2 will be submitted to the Court's clerk for publication on the Court's website pursuant to Local Bankruptcy Rule 6004-1(f). Notice of the Sale will also be published on the Danning, Gill, Diamond, & Kollitz LLP website. Broker will update the listing of the Property on the Multiple Listing Service to include the date, time, and location of the hearing and overbid terms. Finally, notice of this Motion has been provided to the Debtors, the Office of the United States Trustee, to all parties identified on the Title Report, and all other interested parties pursuant to Federal Rule of Bankruptcy Procedure 2002(a).

19.     Additionally, notice of the Motion will be given to the beneficiary and trustor of the First Trust Deed at the address shown for them on the lien documents, and separately to La Vista Properties, LLC at the Las Vegas address described in the Motion.

20.     Based on the above, and in my business judgment, I believe that the Purchase Price of $1.2 million is a fair and reasonable price for the Estate's interest in the Property, and that the Motion should be granted.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this __ day of _____, 2018, at Woodland Hills, California.

_____
David Seror

1267754

# DECLARATION OF RAFAEL FIGUEORA

I, Rafael Figueroa, declare:

1.      I am a licensed real estate professional employed by Raford Management Company, Inc. ("Raford"). I am the owner and President of Raford. Raford and I are employed as the Trustee's real estate broker in this case ("Broker"), and I am authorized on behalf of Broker to make this declaration. I have personal knowledge of the facts set forth below and, if called to testify, would and could competently testify thereto.

2.      I make this declaration in support of the Motion. All initial capitalized terms used but not defined herein shall have the same meaning ascribed to them in the Motion.

3.      The Property was listed for sale for One Million Seven Hundred Thousand Dollars ($1,700,000.00) beginning in May 2017.  The Property is unique and, in my opinion, there is a fairly limited market of potential buyers.  The Property is large (approximately 5,000 square foot) but has no usable yard, is constructed on a downhill slope, is on a road which dead-ends into a lot that appears to be subject to an electric utility easement, and the Property is in need of approximately $150,000 to $200,000 in deferred maintenance.

4.      The Property was extensively marketed at various price levels and garnered only minimal interest.  The Property was marketed on the Multiple Listing Service (MLS), as well as the following websites: (1) www.realtor.com; (2) www.latimes.com; and, (3) www.zillow.com. There were two open houses, in June and October 2017.

5.      Based on the market response to the original purchase price, listing prices of comparable properties, and the various issues described above, I recommended that the listing price be reduced, and the Trustee reduced the price to $1.425 million.  On my further recommendation and pursuant to prevailing market conditions, the listing price was reduced again, to $1.38 million, and to $1.295 million thereafter.  In that time, I received only three initial offers, the Buyer being the only offeror with whom it was possible to enter into a Purchase Agreement

6.      On November 3, 2017, I received an offer from Buyer in the amount of $1.15 million. The Trustee countered at $1.25 million, and ultimately, the Trustee and Buyer agreed to the Purchase Price of $1.2 million.

7.      I will update the listing of the Property on the Multiple Listing Service to include the date, time, and location of the hearing and overbid terms. As of the filing of the Motion, Buyer has removed all contingencies for the purchase of the Property.

8.      Neither I nor Raford have any relation to the Buyer, nor did we know the Buyer prior to the transactions herein described regarding the Sale of the Property. The Purchase Agreement was negotiated at arms'-length, and I believe the proposed Purchase Price is fair consideration for the Property.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this _27TH_ day of _JAN_ , 2018, at Encino, California.

_____
Rafael Figueora

16

20

# EXHIBIT A

# CIVIL CODE SECTIONS 2079.24 (2079.16 APPEARS ON THE FRONT)

2079.13 As used in Sections 2079.14 to 2079.24, inclusive, the following terms have the following meanings: (a) "Agent" means a person acting under provisions of Title 9 (commencing with Section 2295) in a real property transaction, and includes a person who is licensed as a real estate broker under Chapter 3 (commencing with Section 10130) of Part 1 of Division 4 of the Business and Professions Code, and under whose license a listing is executed or an offer to purchase is obtained. (b) "Associate licensee" means a person who is licensed as a real estate broker or salesperson under Chapter 3 (commencing with Section 10130) of Part 1 of Division 4 of the Business and Professions Code and who is either licensed under a broker or has entered into a written contract with a broker to act as the broker's agent in connection with acts requiring a real estate license and to function under the broker's supervision in the capacity of an associate licensee. The agent in the real property transaction bears responsibility for his or her associate licensees who perform as agents of the agent. When an associate licensee owes a duty to any principal, or to any buyer or seller who is not a principal, in a real property transaction, that duty is equivalent to the duty owed to that party by the broker for whom the associate licensee functions. (c) "Buyer" means a transferee in a real property transaction, and includes a person who executes an offer to purchase real property from a seller through an agent, or who seeks the services of an agent in more than a casual, transitory, or preliminary manner, with the object of entering into a real property transaction. "Buyer" includes vendee or lessee. (d) "Commercial real property" means all real property in the state, except single-family residential real property, dwelling units made subject to Chapter 2 (commencing with Section 1940) of Title 5, mobilehomes, as defined in Section 798.3, or recreational vehicles, as defined in Section 799.29. (e) "Dual agent" means an agent acting, either directly or through an associate licensee, as agent for both the seller and the buyer in a real property transaction. (f) "Listing agreement" means a contract between an owner of real property and an agent, by which the agent has been authorized to sell the real property or to find or obtain a buyer. (g) "Listing agent" means a person who has obtained a listing of real property to act as an agent for compensation. (h) "Listing price" is the amount expressed in dollars specified in the listing for which the seller is willing to sell the real property through the listing agent. (i) "Offering price" is the amount expressed in dollars specified in an offer to purchase for which the buyer is willing to buy the real property. (j) "Offer to purchase" means a written contract executed by a buyer acting through a selling agent that becomes the contract for the sale of the real property upon acceptance by the seller. (k) "Real property" means any estate specified by subdivision (1) or (2) of Section 761 in property that constitutes or is improved with one to four dwelling units, any commercial real property, any leasehold in these types of property exceeding one year's duration, and mobilehomes, when offered for sale or sold through an agent pursuant to the authority contained in Section 10131.6 of the Business and Professions Code. (l) "Real property transaction" means a transaction for the sale of real property in which an agent is employed by one or more of the principals to act in that transaction, and includes a listing or an offer to purchase. (m) "Sell," "sale," or "sold" refers to a transaction for the transfer of real property from the seller to the buyer, and includes exchanges of real property between the seller and buyer, transactions for the creation of a real property sales contract within the meaning of Section 2985, and transactions for the creation of a leasehold exceeding one year's duration. (n) "Seller" means the transferor in a real property transaction, and includes an owner who lists real property with an agent, whether or not a transfer results, or who receives an offer to purchase real property of which he or she is the owner from an agent on behalf of another. "Seller" includes both a vendor and a lessor. (o) "Selling agent" means a listing agent who acts alone, or an agent who acts in cooperation with a listing agent, and who sells or finds and obtains a buyer for the real property, or an agent who locates property for a buyer or who finds a buyer for a property for which no listing exists and presents an offer to purchase to the seller. (p) "Subagent" means a person to whom an agent delegates agency powers as provided in Article 5 (commencing with Section 2349) of Chapter 1 of Title 9. However, "subagent" does not include an associate licensee who is acting under the supervision of an agent in a real property transaction.

2079.14 Listing agents and selling agents shall provide the seller and buyer in a real property transaction with a copy of the disclosure form specified in Section 2079.16, and, except as provided in subdivision (c), shall obtain a signed acknowledgement of receipt from that seller or buyer, except as provided in this section or Section 2079.15, as follows: (a) The listing agent, if any, shall provide the disclosure form to the seller prior to entering into the listing agreement. (b) The selling agent shall provide the disclosure form to the seller as soon as practicable prior to presenting the seller with an offer to purchase, unless the selling agent previously provided the seller with a copy of the disclosure form pursuant to subdivision (a). (c) Where the selling agent does not deal on a face-to-face basis with the seller, the disclosure form prepared by the selling agent may be furnished to the seller (and acknowledgement of receipt obtained for the selling agent from the seller) by the listing agent, or the selling agent may deliver the disclosure form by certified mail addressed to the seller at his or her last known address, in which case no signed acknowledgement of receipt is required. (d) The selling agent shall provide the disclosure form to the buyer as soon as practicable prior to execution of the buyer's offer to purchase, except that if the offer to purchase is not prepared by the selling agent, the selling agent shall present the disclosure form to the buyer not later than the next business day after the selling agent receives the offer to purchase from the buyer.

2079.15 In any circumstance in which the seller or buyer refuses to sign an acknowledgement of receipt pursuant to Section 2079.14, the agent, or an associate licensee acting for an agent, shall set forth, sign, and date a written declaration of the facts of the refusal.

2079.16 Reproduced on Page 1 of this AD form.

2079.17 (a) As soon as practicable, the selling agent shall disclose to the buyer and seller whether the selling agent is acting in the real property transaction exclusively as the buyer's agent, exclusively as the seller's agent, or as a dual agent representing both the buyer and the seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller, the buyer, and the selling agent prior to or coincident with execution of that contract by the buyer and seller, respectively. (b) As soon as practicable, the listing agent shall disclose to the seller whether the listing agent is acting in the real property transaction exclusively as the seller's agent, or as a dual agent representing both the buyer and seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller and the listing agent prior to or coincident with the execution of that contract by the seller.
(c)  The confirmation required by subdivisions (a) and (b) shall be in the following form.

|  (DO NOT COMPLETE. SAMPLE ONLY) | is the agent of (check one): □ the seller exclusively; or □ both the buyer and seller. |
| (Name of Listing Agent) | |
|  (DO NOT COMPLETE. SAMPLE ONLY) | is the agent of (check one): □ the buyer exclusively; or □ the seller exclusively; or |
| (Name of Selling Agent if not the same as the Listing Agent) | □ both the buyer and seller. |

(d)  The disclosures and confirmation required by this section shall be in addition to the disclosure required by Section 2079.14.

2079.18 No selling agent in a real property transaction may act as an agent for the buyer only, when the selling agent is also acting as the listing agent in the transaction.

2079.19 The payment of compensation or the obligation to pay compensation to an agent by the seller or buyer is not necessarily determinative of a particular agency relationship between an agent and the seller or buyer. A listing agent and a selling agent may agree to share any compensation or commission paid, or any right to any compensation or commission for which an obligation arises as the result of a real estate transaction, and the terms of any such agreement shall not necessarily be determinative of a particular relationship.

2079.20 Nothing in this article prevents an agent from selecting, as a condition of the agent's employment, a specific form of agency relationship not specifically prohibited by this article if the requirements of Section 2079.14 and Section 2079.17 are complied with.

2079.21 A dual agent shall not disclose to the buyer that the seller is willing to sell the property at a price less than the listing price, without the express written consent of the seller. A dual agent shall not disclose to the seller that the buyer is willing to pay a price greater than the offering price, without the express written consent of the buyer. This section does not alter in any way the duty or responsibility of a dual agent to any principal with respect to confidential information other than price.

2079.22 Nothing in this article precludes a listing agent from also being a selling agent, and the combination of these functions in one agent does not, of itself, make that agent a dual agent.

2079.23 A contract between the principal and agent may be modified or altered to change the agency relationship at any time before the performance of the act which is the object of the agency with the written consent of the parties to the agency relationship.

2079.24 Nothing in this article shall be construed to either diminish the duty of disclosure owed buyers and sellers by agents and their associate licensees, subagents, and employees or to relieve agents and their associate licensees, subagents, and employees from liability for their conduct in connection with acts governed by this article or for any breach of a fiduciary duty or a duty of disclosure.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

| Reviewed by _____ Date _____ |



AD REVISED 12/14 (PAGE 2 OF 2)

## DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 2 OF 2)

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com      631 Caleb



**CALIFORNIA
ASSOCIATION
OF REALTORS®**

### POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER
### OR SELLER - DISCLOSURE AND CONSENT
#### (C.A.R. Form PRBS, 11/14)

A real estate broker (Broker), whether a corporation, partnership or sole proprietorship, may represent more than one buyer or seller. This multiple representation can occur through an individual licensed as a broker or salesperson or through different individual broker's or salespersons (associate licensees) acting under the Broker's license. The associate licensees may be working out of the same or different office locations.

**Multiple Buyers:** Broker (individually or through its associate licensees) may be working with many prospective buyers at the same time. These prospective buyers may have an interest in, and make offers on, the same properties. Some of these properties may be listed with Broker and some may not. Broker will not limit or restrict any particular buyer from making an offer on any particular property whether or not Broker represents other buyers interested in the same property.

**Multiple Sellers:** Broker (individually or through its associate licensees) may have listings on many properties at the same time. As a result, Broker will attempt to find buyers for each of those listed properties. Some listed properties may appeal to the same prospective buyers. Some properties may attract more prospective buyers than others. Some of these prospective buyers may be represented by Broker and some may not. Broker will market all listed properties to all prospective buyers whether or not Broker has another or other listed properties that may appeal to the same prospective buyers.

**Dual Agency:** If Seller is represented by Broker, Seller acknowledges that broker may represent prospective buyers of Seller's property and consents to Broker acting as a dual agent for both seller and buyer in that transaction. If Buyer is represented by Broker, buyer acknowledges that Broker may represent sellers of property that Buyer is interested in acquiring and consents to Broker acting as a dual agent for both buyer and seller with regard to that property.

In the event of dual agency, seller and buyer agree that: (a) Broker, without the prior written consent of the Buyer, will not disclose to seller that the Buyer is willing to pay a price greater than the offered price; (b) Broker, without the prior written consent of the seller, will not disclose to the buyer that seller is willing to sell property at a price less than the listing price; and (c) other than as set forth in (a) and (b) above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the property to both parties.

**Offers not necessarily confidential:** Buyer is advised that seller or listing agent may disclose the existence, terms, or conditions of buyer's offer unless all parties and their agent have signed a written confidentiality agreement. Whether any such information is actually disclosed depends on many factors, such as current market conditions, the prevailing practice in the real estate community, the listing agent's marketing strategy and the instructions of the seller.

Buyer and seller understand that Broker may represent more than one buyer or more than one seller and even both buyer and seller on the same transaction and consents to such relationships.

**Seller and/or Buyer acknowledges reading and understanding this Possible Representation of More Than One Buyer or Seller - Disclosure and Consent and agrees to the agency possibilities disclosed.**

Seller _____ Date _____
Seller _____ Date _____
Buyer _____ *Brian Der Vartanian* Date *11/6/17*
Buyer _____ Date _____
Real Estate Broker (Firm) *Raford Management Co.* _____ CalBRE Lic # _____ Date _____
By _____ CalBRE Lic # _____ Date _____

Real Estate Broker (Firm) *Ohanian Realty* _____ CalBRE Lic # *00861650* Date *11/03/2017*
By _____ CalBRE Lic # *00861650* Date *11/03/2017*
   *Robert Ohanian*

© 2014, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS® ·
525 South Virgil Avenue, Los Angeles, California 90020

| Reviewed by _____ Date _____ |



**PRBS 11/14 (PAGE 1 OF 1)**

### POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER OR SELLER (PRBS PAGE 1 OF 1)

Robert Ohanian Realty, 100 N. Brand Blvd., #16 Glendale, CA 91203                Phone: (818)322-3197        Fax:                        631 Caleb
Robert Ohanian                                Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com

24

**CALIFORNIA ASSOCIATION OF REALTORS®**

**WIRE FRAUD ADVISORY**
(C.A.R. Form WFA, 6/16)

Property Address: _631 Caleb St, Glendale, CA  91202-1114_____ ("Property").

## WIRE FRAUD ADVISORY:

The ability to communicate and conduct business electronically is a convenience and reality in nearly all parts of our lives. At the same time, it has provided hackers and scammers new opportunities for their criminal activity. Many businesses have been victimized and the real estate business is no exception.

While wiring funds is a welcome convenience, buyers and sellers need to exercise extreme caution. Emails attempting to induce fraudulent wire transfers have been received and have appeared to be legitimate. Reports indicate that some hackers have been able to intercept emailed wire transfer instructions, obtain account information and, by altering some of the data, redirect the funds to a different account. It also appears that some hackers were able to provide false phone numbers for verifying the wiring instructions. In those cases, the buyers called the number provided, to confirm the instructions, and then unwittingly authorized a transfer to somewhere other than escrow. Sellers have also had their sales proceeds taken through similar schemes.

**ACCORDINGLY, BUYERS AND SELLERS ARE ADVISED:**
1. **Obtain the phone number of the Escrow Officer at the beginning of the transaction.**
2. **DO NOT EVER WIRE FUNDS PRIOR TO CALLING YOUR ESCROW OFFICER TO CONFIRM WIRE INSTRUCTIONS. ONLY USE A PHONE NUMBER YOU WERE PROVIDED PREVIOUSLY. Do not use any different phone number included in the emailed wire transfer instructions.**
3. **Orally confirm the wire transfer instruction is legitimate and confirm the bank routing number, account numbers and other codes before taking steps to transfer the funds.**
4. **Avoid sending personal information in emails or texts. Provide such information in person or over the telephone directly to the Escrow Officer.**
5. **Take steps to secure the system you are using with your email account. These steps include creating strong passwords, using secure WiFi, and not using free services.**

If you believe you have received questionable or suspicious wire instructions, immediately notify your bank, the Escrow Holder and your real estate agent. The sources below, as well as others, can also provide information:

Federal Bureau of Investigation: https://www.fbi.gov/

National White Collar Crime Center: http://www.nw3c.org/

On Guard Online: https://www.onguardonline.gov/

**By signing below, the undersigned acknowledge that each has read, understands and has received a copy of this Wire Fraud Advisory.**

Buyer _____    _Brian Der Vartanlan_ Date _11/03/2017_____

Buyer _____ Date _____

Seller _____ Date _____

Seller _____ Date _____

© 2016, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S, Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from C.A.R. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____



**WFA 6/16 (PAGE 1 OF 1)**

Robert Ohanian Realty, 100 N. Brand Blvd., #16 Glendale, CA 91203          Phone: (818)523-3197          Fax:          631 Caleb
Robert Ohanian                    Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

**CALIFORNIA ASSOCIATION OF REALTORS®**

## RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS
### (C.A.R. Form RPA-CA, Revised 12/15 )

Date Prepared: _11/03/2017_

**1. OFFER:**
  A. **THIS IS AN OFFER FROM** _Brian Der Vartanian_ ("Buyer").
  B. **THE REAL PROPERTY** to be acquired is _631 Caleb St, Glendale, CA 91202-1114_, situated in _Glendale_ (City), _Los Angeles_ (County), California, _91202-1114_ (Zip Code), Assessor's Parcel No. ____ ("Property").
  C. **THE PURCHASE PRICE** offered is _One Million, One Hundred Fifty Thousand_ Dollars $ _1,150,000.00_
  D. **CLOSE OF ESCROW** shall occur on ☐ (date)(or ☒ _90_ Days After Acceptance).
  E. Buyer and Seller are referred to herein as the "Parties." Brokers are not Parties to this Agreement.

**2. AGENCY:**
  A. **DISCLOSURE:** The Parties each acknowledge receipt of a ☒ "Disclosure Regarding Real Estate Agency Relationships" (C.A.R. Form AD).
  B. **CONFIRMATION:** The following agency relationships are hereby confirmed for this transaction:
  Listing Agent _Raford Management Co._ (Print Firm Name) is the agent of (check one): ☐ the Seller exclusively; or ☐ both the Buyer and Seller.
  Selling Agent _Ohanian Realty_ (Print Firm Name) (if not the same as the Listing Agent) is the agent of (check one): ☒ the Buyer exclusively; or ☐ the Seller exclusively; or ☐ both the Buyer and Seller.
  C. **POTENTIALLY COMPETING BUYERS AND SELLERS:** The Parties each acknowledge receipt of a ☒ "Possible Representation of More than One Buyer or Seller - Disclosure and Consent" (C.A.R. Form PRBS).

**3. FINANCE TERMS:** Buyer represents that funds will be good when deposited with Escrow Holder.
  A. **INITIAL DEPOSIT:** Deposit shall be in the amount of ............................................ $ _35,000.00_
    (1) Buyer Direct Deposit: Buyer shall deliver deposit directly to Escrow Holder by electronic funds transfer, ☐ cashier's check, ☐ personal check, ☐ other ____ within 3 business days after Acceptance (or ____ );
    OR (2) ☒ Buyer Deposit with Agent: Buyer has given the deposit by personal check (or ____ ) to the agent submitting the offer (or to ____ ), made payable to _Oak Escrow_. The deposit shall be held uncashed until Acceptance and then deposited with Escrow Holder within 3 business days after Acceptance (or ____ ).
    Deposit checks given to agent shall be an original signed check and not a copy.
    (Note: Initial and increased deposits checks received by agent shall be recorded in Broker's trust fund log.)
  B. **INCREASED DEPOSIT:** Buyer shall deposit with Escrow Holder an increased deposit in the amount of ......... $ ____
    within ____ Days After Acceptance (or ____ ).
    If the Parties agree to liquidated damages in this Agreement, they also agree to incorporate the increased deposit into the liquidated damages amount in a separate liquidated damages clause (C.A.R. Form RID) at the time the increased deposit is delivered to Escrow Holder.
  C. ☐ **ALL CASH OFFER:** No loan is needed to purchase the Property. This offer is NOT contingent on Buyer obtaining a loan. Written verification of sufficient funds to close this transaction IS ATTACHED to this offer or ☒ Buyer shall, within 3 (or _10_ ) Days After Acceptance, Deliver to Seller such verification.
  D. **LOAN(S):**
    (1) **FIRST LOAN:** in the amount of ............................................. $ _750,000.00_
    This loan will be conventional financing or ☐ FHA, ☐ VA, ☐ Seller financing (C.A.R. Form SFA), ☐ assumed financing (C.A.R. Form AFA), ☐ Other ____. This loan shall be at a fixed rate not to exceed ____ % or, ☐ an adjustable rate loan with initial rate not to exceed ____ %. Regardless of the type of loan, Buyer shall pay points not to exceed ____ % of the loan amount.
    (2) ☐ **SECOND LOAN** in the amount of ............................................. $ ____
    This loan will be conventional financing or ☐ Seller financing (C.A.R. Form SFA), ☐ assumed financing (C.A.R. Form AFA), ☐ Other ____. This loan shall be at a fixed rate not to exceed ____ % or, ☐ an adjustable rate loan with initial rate not to exceed ____ %. Regardless of the type of loan, Buyer shall pay points not to exceed ____ % of the loan amount.
    (3) **FHA/VA:** For any FHA or VA loan specified in 3D(1), Buyer has 17 (or ____ ) Days After Acceptance to Deliver to Seller written notice (C.A.R. Form FVA) of any lender-required repairs or costs that Buyer requests Seller to pay for or otherwise correct. Seller has no obligation to pay or satisfy lender requirements unless agreed in writing. A FHA/VA amendatory clause (C.A.R. Form FVAC) shall be a part of this Agreement.
  E. **ADDITIONAL FINANCING TERMS:** ____
  F. **BALANCE OF DOWN PAYMENT OR PURCHASE PRICE** in the amount of .......................... $ _365,000.00_
    to be deposited with Escrow Holder pursuant to Escrow Holder instructions.
  G. **PURCHASE PRICE (TOTAL):** ................................................. $ _1,150,000.00_

Buyer's Initials ( _BDV_ )( ____ )    Seller's Initials ( ____ )( ____ )

© 1991-2015, California Association of REALTORS®, Inc.
RPA-CA REVISED 12/15 (PAGE 1 OF 10)

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 1 OF 10)**

Robert Ohanian Realty, 100 N. Grand Blvd., #16 Glendale, CA 91203    Phone: (818)502-3197    Fax:    631 Caleb
Robert Ohanian    Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com

26

Property Address: *631 Caleb St, Glendale, CA  91202-1114*                    Date: *November 3, 2017*

**H. VERIFICATION OF DOWN PAYMENT AND CLOSING COSTS:** Buyer (or Buyer's lender or loan broker pursuant to paragraph 3J(1)) shall, within 3 (or ____ ) Days After Acceptance, Deliver to Seller written verification of Buyer's down payment and closing costs. ( ☐ Verification attached.)

**I. APPRAISAL CONTINGENCY AND REMOVAL:** This Agreement is (or ☐ is NOT) contingent upon a written appraisal of the Property by a licensed or certified appraiser at no less than the purchase price. Buyer shall, as specified in paragraph 14B(3), in writing, remove the appraisal contingency or cancel this Agreement within 17 (or ____ ) Days After Acceptance.

**J. LOAN TERMS:**
**(1) LOAN APPLICATIONS:** Within 3 (or ____ ) Days After Acceptance, Buyer shall Deliver to Seller a letter from Buyer's lender or loan broker stating that, based on a review of Buyer's written application and credit report, Buyer is prequalified or preapproved for any NEW loan specified in paragraph 3D. If any loan specified in paragraph 3D is an adjustable rate loan, the prequalification or preapproval letter shall be based on the qualifying rate, not the initial loan rate. ( ☐ Letter attached.)
**(2) LOAN CONTINGENCY:** Buyer shall act diligently and in good faith to obtain the designated loan(s). Buyer's qualification for the loan(s) specified above is a contingency of this Agreement unless otherwise agreed in writing. If there is no appraisal contingency or the appraisal contingency has been waived or removed, then failure of the Property to appraise at the purchase price does not entitle Buyer to exercise the cancellation right pursuant to the loan contingency if Buyer is otherwise qualified for the specified loan. Buyer's contractual obligations regarding deposit, balance of down payment and closing costs are **not contingencies of this Agreement.**
**(3) LOAN CONTINGENCY REMOVAL:**
Within 21 (or ____ ) Days After Acceptance, Buyer shall, as specified in paragraph 14, in writing, remove the loan contingency or cancel this Agreement. If there is an appraisal contingency, removal of the loan contingency shall not be deemed removal of the appraisal contingency.
**(4) ☒ NO LOAN CONTINGENCY:** Obtaining any loan specified above is NOT a contingency of this Agreement. If Buyer does not obtain the loan and as a result does not purchase the Property, Seller may be entitled to Buyer's deposit or other legal remedies.
**(5) LENDER LIMITS ON BUYER CREDITS:** Any credit to Buyer, from any source, for closing or other costs that is agreed to by the Parties ("Contractual Credit") shall be disclosed to Buyer's lender. If the total credit allowed by Buyer's lender ("Lender Allowable Credit") is less than the Contractual Credit, then (i) the Contractual Credit shall be reduced to the Lender Allowable Credit, and (ii) in the absence of a separate written agreement between the Parties, there shall be no automatic adjustment to the purchase price to make up for the difference between the Contractual Credit and the Lender Allowable Credit.

**K. BUYER STATED FINANCING:** Seller is relying on Buyer's representation of the type of financing specified (including but not limited to, as applicable, all cash, amount of down payment, or contingent or non-contingent loan). Seller has agreed to a specific closing date, purchase price and to sell to Buyer in reliance on Buyer's covenant concerning financing. Buyer shall pursue the financing specified in this Agreement. Seller has no obligation to cooperate with Buyer's efforts to obtain any financing other than that specified in the Agreement and the availability of any such alternate financing does not excuse Buyer from the obligation to purchase the Property and close escrow as specified in this Agreement.

**4. SALE OF BUYER'S PROPERTY:**
**A.** This Agreement and Buyer's ability to obtain financing are NOT contingent upon the sale of any property owned by Buyer.
**OR B.** ☐ This Agreement and Buyer's ability to obtain financing are contingent upon the sale of property owned by Buyer as specified in the attached addendum (C.A.R. Form COP).

**5. ADDENDA AND ADVISORIES:**

**A. ADDENDA:**

| | | |
|---|---|---|
| | ☐ Addendum #_____ (C.A.R. Form ADM) | |
| ☐ Back Up Offer Addendum (C.A.R. Form BUO) | ☐ Court Confirmation Addendum (C.A.R. Form CCA) | |
| ☐ Septic, Well and Property Monument Addendum (C.A.R. Form SWPI) | | |
| ☐ Short Sale Addendum (C.A.R. Form SSA) | ☐ Other | |

**B. BUYER AND SELLER ADVISORIES:**

| | |
|---|---|
| | ☒ Buyer's Inspection Advisory (C.A.R. Form BIA) |
| ☒ Probate Advisory (C.A.R. Form PA) | ☐ Statewide Buyer and Seller Advisory (C.A.R. Form SBSA) |
| ☒ Trust Advisory (C.A.R. Form TA) | ☐ REO Advisory (C.A.R. Form REO) |
| ☐ Short Sale Information and Advisory (C.A.R. Form SSIA) | ☐ Other |

**6. OTHER TERMS:** _____
_____
_____
_____

**7. ALLOCATION OF COSTS**
**A. INSPECTIONS, REPORTS AND CERTIFICATES:** Unless otherwise agreed in writing, this paragraph only determines who is to pay for the inspection, test, certificate or service ("Report") mentioned; it does not determine who is to pay for any work recommended or identified in the Report.
**(1)** ☒ Buyer ☐ Seller shall pay for a natural hazard zone disclosure report, including tax ☐ environmental ☐ Other: _____ prepared by *Click here to select your Service Provider* _____.
**(2)** ☐ Buyer ☐ Seller shall pay for the following Report _____ prepared by _____.
**(3)** ☐ Buyer ☐ Seller shall pay for the following Report _____ prepared by _____.

Buyer's Initials ( *BW* )( _____ )                    Seller's Initials ( _____ )( _____ )

**RPA-CA REVISED 12/15 (PAGE 2 OF 10)**
**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 2 OF 10)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com      631 Caleb

Property Address: *631 Caleb St, Glendale, CA  91202-1114*                                          Date: *November 3, 2017*

**B. GOVERNMENT REQUIREMENTS AND RETROFIT:**
  (1) ☒ Buyer ☐ Seller shall pay for smoke alarm and carbon monoxide device installation and water heater bracing, if required by Law. Prior to Close Of Escrow ("COE"), Seller shall provide Buyer written statement(s) of compliance in accordance with state and local Law, unless Seller is exempt.
  (2) (i) ☒ Buyer ☐ Seller shall pay the cost of compliance with any other minimum mandatory government inspections and reports if required as a condition of closing escrow under any Law.
      (ii) ☒ Buyer ☐ Seller shall pay the cost of compliance with any other minimum mandatory government retrofit standards required as a condition of closing escrow under any Law, whether the work is required to be completed before or after COE.
      (iii) Buyer shall be provided, within the time specified in paragraph 14A, a copy of any required government conducted or point-of-sale inspection report prepared pursuant to this Agreement or in anticipation of this sale of the Property.

**C. ESCROW AND TITLE:**
  (1) (a) ☒ Buyer ☒ Seller shall pay escrow fee *50% By Seller and 50% by Buyer*
      (b) Escrow Holder shall be
      (c) The Parties shall, within 6 (or ___ ) Days After receipt, sign and return Escrow Holder's general provisions.
  (2) (a) ☐ Buyer ☒ Seller shall pay for owner's title insurance policy specified in paragraph 13E
      (b) Owner's title policy to be issued by *Sellers choice*
      (Buyer shall pay for any title insurance policy insuring Buyer's lender, unless otherwise agreed in writing.)

**D. OTHER COSTS:**
  (1) ☐ Buyer ☒ Seller shall pay County transfer tax or fee
  (2) ☐ Buyer ☒ Seller shall pay City transfer tax or fee
  (3) ☐ Buyer ☐ Seller shall pay Homeowners' Association ("HOA") transfer fee
  (4) Seller shall pay HOA fees for preparing documents required to be delivered by Civil Code §4525.
  (5) ☐ Buyer ☐ Seller shall pay HOA fees for preparing all documents other than those required by Civil Code §4525.
  (6) Buyer to pay for any HOA certification fee.
  (7) ☐ Buyer ☐ Seller shall pay for any private transfer fee
  (8) ☐ Buyer ☐ Seller shall pay for
  (9) ☐ Buyer ☐ Seller shall pay for
  (10) ☐ Buyer ☐ Seller shall pay for the cost, not to exceed $ _____, of a standard (or ☐ upgraded) one-year home warranty plan, issued by *Click here to select your Service Provider* , with the following optional coverages: ☒ Air Conditioner ☐ Pool/Spa ☐ Other:
      Buyer is informed that home warranty plans have many optional coverages in addition to those listed above. Buyer is advised to investigate these coverages to determine those that may be suitable for Buyer.
      OR☐ Buyer waives the purchase of a home warranty plan. Nothing in this paragraph precludes Buyer's purchasing a home warranty plan during the term of this Agreement.

**8. ITEMS INCLUDED IN AND EXCLUDED FROM SALE:**
  **A. NOTE TO BUYER AND SELLER:** Items listed as included or excluded in the MLS, flyers or marketing materials are **not** included in the purchase price or excluded from the sale unless specified in paragraph 8 B or C.
  **B. ITEMS INCLUDED IN SALE:** Except as otherwise specified or disclosed,
    (1) All EXISTING fixtures and fittings that are attached to the Property;
    (2) EXISTING electrical, mechanical, lighting, plumbing and heating fixtures, ceiling fans, fireplace inserts, gas logs and grates, solar power systems, built-in appliances, window and door screens, awnings, shutters, window coverings, attached floor coverings, television antennas, satellite dishes, air coolers/conditioners, pool/spa equipment, garage door openers/remote controls, mailbox, in-ground landscaping, trees/shrubs, water features and fountains, water softeners, water purifiers, security systems/alarms and the following if checked: ☐ all stove(s), except _____ ; ☐ all refrigerator(s) except _____ ; ☐ all washer(s) and dryer(s), except _____ ;
    (3) The following additional items: _____
    (4) Existing integrated phone and home automation systems, including necessary components such as intranet and internet-connected hardware or devices, control units (other than non-dedicated mobile devices, electronics and computers) and applicable software, permissions, passwords, codes and access information, are (☐ are NOT) included in the sale.
    (5) **LEASED OR LIENED ITEMS AND SYSTEMS:** Seller shall, within the time specified in paragraph 14A, (i) disclose to Buyer if any item or system specified in paragraph 8B or otherwise included in the sale is leased, or not owned by Seller, or specifically subject to a lien or other encumbrance, and (ii) Deliver to Buyer all written materials (such as lease, warranty, etc.) concerning any such item. Buyer's ability to assume any such lease, or willingness to accept the Property subject to any such lien or encumbrance, is a contingency in favor of Buyer and Seller as specified in paragraph 14B and C.
    (6) Seller represents that all items included in the purchase price, unless otherwise specified, (i) are owned by Seller and shall be transferred free and clear of liens and encumbrances, except the items and systems identified pursuant to 8B(5) and _____ , and (ii) are transferred without Seller warranty regardless of value.
  **C. ITEMS EXCLUDED FROM SALE:** Unless otherwise specified, the following items are excluded from sale: (i) audio and video components (such as flat screen TVs, speakers and other items) if any such item is not itself attached to the Property, even if a bracket or other mechanism attached to the component or item is attached to the Property; (ii) furniture and other items secured to the Property for earthquake purposes; and (iii) _____
    _____ . Brackets attached to walls, floors or ceilings for any such component, furniture or item shall remain with the Property (or ☐ will be removed and holes or other damage shall be repaired, but not painted).

Buyer's Initials ( *DDV* )( _____ )                                          Seller's Initials ( _____ )( _____ )

**RPA-CA REVISED 12/15 (PAGE 3 OF 10)**
**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 3 OF 10)**
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com                631 Caleb

28

Property Address: *831 Caleb St, Glendale, CA 91202-1114*                                              Date: *November 3, 2017*

(2) If the Property is a condominium or is located in a planned development or other common interest subdivision, Seller has 3 (or ___ ) Days After Acceptance to request from the HOA (C.A.R. Form HOA1): (i) Copies of any documents required by Law; (ii) disclosure of any pending or anticipated claim or litigation by or against the HOA; (iii) a statement containing the location and number of designated parking and storage spaces; (iv) Copies of the most recent 12 months of HOA minutes for regular and special meetings; and (v) the names and contact information of all HOAs governing the Property (collectively, "CI Disclosures"). (vi) private transfer fees; (vii) Pet fee restrictions; and (viii) smoking restrictions. Seller shall itemize and Deliver to Buyer all CI Disclosures received from the HOA and any CI Disclosures in Seller's possession. Buyer's approval of CI Disclosures is a contingency of this Agreement as specified in paragraph 14B(3). The Party specified in paragraph 7, as directed by escrow, shall deposit funds into escrow or direct to HOA or management company to pay for any of the above.

11. **CONDITION OF PROPERTY:** Unless otherwise agreed in writing: (i) the Property is sold (a) "AS-IS" in its PRESENT physical condition as of the date of Acceptance and (b) subject to Buyer's Investigation rights; (ii) the Property, including pool, spa, landscaping and grounds, is to be maintained in substantially the same condition as on the date of Acceptance; and (iii) all debris and personal property not included in the sale shall be removed by Close Of Escrow.

   A. Seller shall, within the time specified in paragraph 14A, DISCLOSE KNOWN MATERIAL FACTS AND DEFECTS affecting the Property, including known insurance claims within the past five years, and make any and all other disclosures required by law.

   B. Buyer has the right to conduct Buyer Investigations of the Property and, as specified in paragraph 14B, based upon information discovered in those investigations: (i) cancel this Agreement; or (ii) request that Seller make Repairs or take other action.

   C. Buyer is strongly advised to conduct investigations of the entire Property in order to determine its present condition. Seller may not be aware of all defects affecting the Property or other factors that Buyer considers important. Property improvements may not be built according to code, in compliance with current Law, or have had permits issued.

12. **BUYER'S INVESTIGATION OF PROPERTY AND MATTERS AFFECTING PROPERTY:**

   A. Buyer's acceptance of the condition of, and any other matter affecting the Property, is a contingency of this Agreement as specified in this paragraph and paragraph 14B. Within the time specified in paragraph 14B(1), Buyer shall have the right, at Buyer's expense unless otherwise agreed, to conduct inspections, investigations, tests, surveys and other studies ("Buyer Investigations"), including, but not limited to: (i) a general physical inspection; (ii) an inspection specifically for wood destroying pests and organisms. Any inspection for wood destroying pests and organisms shall be prepared by a registered Structural Pest Control company; shall cover the main building and attached structures; may cover detached structures; shall NOT include water tests of shower pans on upper level units unless the owners of property below the shower consent; shall NOT include roof coverings; and, if the Property is a unit in a condominium or other common interest subdivision, the inspection shall include only the separate interest and any exclusive-use areas being transferred, and shall NOT include common areas; and shall include a report ("Pest Control Report") showing the findings of the company which shall be separated into sections for evident infestation or infections (Section 1) and for conditions likely to lead to infestation or infection (Section 2); (iii) inspect for lead-based paint and other lead-based paint hazards; (iv) satisfy Buyer as to any matter specified in the attached Buyer's Inspection Advisory (C.A.R. Form BIA); (v) review the registered sex offender database; (vi) confirm the insurability of Buyer and the Property including the availability and cost of flood and fire insurance; and (vii) review and seek approval of leases that may need to be assumed by Buyer. Without Seller's prior written consent, Buyer shall neither make nor cause to be made: invasive or destructive Buyer Investigations, except for minimally invasive testing required to prepare a Pest Control Report; or inspections by any governmental building or zoning inspector or government employee, unless required by Law.

   B. Seller shall make the Property available for all Buyer Investigations. Buyer shall (i) as specified in paragraph 14B, complete Buyer Investigations and either remove the contingency or cancel this Agreement, and (ii) give Seller, at no cost, complete Copies of all such Investigation reports obtained by Buyer, which obligation shall survive the termination of this Agreement.

   C. Seller shall have water, gas, electricity and all operable pilot lights on for Buyer's Investigations and through the date possession is made available to Buyer.

   D. Buyer indemnity and seller protection for entry upon property: Buyer shall: (i) keep the Property free and clear of liens; (ii) repair all damage arising from Buyer Investigations; and (iii) indemnify and hold Seller harmless from all resulting liability, claims, demands, damages and costs. Buyer shall carry, or Buyer shall require anyone acting on Buyer's behalf to carry, policies of liability, workers' compensation and other applicable insurance, defending and protecting Seller from liability for any injuries to persons or property occurring during any Buyer Investigations or work done on the Property at Buyer's direction prior to Close Of Escrow. Seller is advised that certain protections may be afforded Seller by recording a "Notice of Non-Responsibility" (C.A.R. Form NNR) for Buyer Investigations and work done on the Property at Buyer's direction. Buyer's obligations under this paragraph shall survive the termination of this Agreement.

13. **TITLE AND VESTING:**

   A. Within the time specified in paragraph 14, Buyer shall be provided a current preliminary title report ("Preliminary Report"). The Preliminary Report is only an offer by the title insurer to issue a policy of title insurance and may not contain every item affecting title. Buyer's review of the Preliminary Report and any other matters which may affect title are a contingency of this Agreement as specified in paragraph 14B. The company providing the Preliminary Report shall, prior to issuing a Preliminary Report, conduct a search of the General Index for all Sellers except banks or other institutional lenders selling properties they acquired through foreclosure (REOs), corporations, and government entities. Seller shall within 7 Days After Acceptance, give Escrow Holder a completed Statement of Information.

   B. Title is taken in its present condition subject to all encumbrances, easements, covenants, conditions, restrictions, rights and other matters, whether of record or not, as of the date of Acceptance except for: (i) monetary liens of record (which Seller is obligated to pay off) unless Buyer is assuming those obligations or taking the Property subject to those obligations; and (ii) those matters which Seller has agreed to remove in writing.

   C. Within the time specified in paragraph 14A, Seller has a duty to disclose to Buyer all matters known to Seller affecting title, whether of record or not.

   D. At Close Of Escrow, Buyer shall receive a grant deed conveying title (or, for stock cooperative or long-term lease, an assignment of stock certificate or of Seller's leasehold interest), including oil, mineral and water rights if currently owned by Seller. Title shall vest as designated in Buyer's supplemental escrow instructions. THE MANNER OF TAKING TITLE MAY HAVE SIGNIFICANT LEGAL AND TAX CONSEQUENCES. CONSULT AN APPROPRIATE PROFESSIONAL.

Buyer's Initials ( _BIV_ )( ___ )                                              Seller's Initials ( _____ )( _____ )
**RPA-CA REVISED 12/15 (PAGE 5 OF 10)**
**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT  (RPA-CA PAGE 5 OF 10)**

30

Property Address: **631 Caleb St, Glendale, CA 91202-1114** _____ Date: **November 3, 2017**

E. Buyer shall receive a CLTA/ALTA "Homeowner's Policy of Title Insurance", if applicable to the type of property and buyer. If not, Escrow Holder shall notify Buyer. A title company can provide information about the availability, coverage, and cost of other title policies and endorsements. If the Homeowner's Policy is not available, Buyer shall choose another policy, instruct Escrow Holder in writing and shall pay any increase in cost.

**14. TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS:** The following time periods may only be extended, altered, modified or changed by mutual written agreement. Any removal of contingencies or cancellation under this paragraph by either Buyer or Seller must be exercised in good faith and in writing (C.A.R. Form CR or CC).

A. **SELLER HAS: 7 (or _____ ) Days After Acceptance to Deliver to Buyer all Reports, disclosures and information for which Seller is responsible under paragraphs 5, 6, 7, 8B(5), 10A, B, C, and F, 11A and 13A.** If, by the time specified, Seller has not Delivered any such item, Buyer after first Delivering to Seller a Notice to Seller to Perform (C.A.R. Form NSP) may cancel this Agreement.

B. (1) **BUYER HAS: 17 (or _____ ) Days After Acceptance, unless otherwise agreed in writing, to:** (i) complete all Buyer Investigations; review all disclosures, reports, lease documents to be assumed by Buyer pursuant to paragraph 8B(5), and other applicable information, which Buyer receives from Seller; and approve all matters affecting the Property; and (ii) Deliver to Seller Signed Copies of Statutory and Lead Disclosures and other disclosures Delivered by Seller in accordance with paragraph 10A.

(2) Within the time specified in paragraph 14B(1), Buyer may request that Seller make repairs or take any other action regarding the Property (C.A.R. Form RR). Seller has no obligation to agree to or respond to (C.A.R. Form RRRR) Buyer's requests.

(3) By the end of the time specified in paragraph 14B(1) (or as otherwise specified in this Agreement), Buyer shall Deliver to Seller a removal of the applicable contingency or cancellation (C.A.R. Form CR or CC) of this Agreement. However, if any report, disclosure or information for which Seller is responsible is not Delivered within the time specified in paragraph 14A, then Buyer has 5 (or _____ ) Days After Delivery of any such items, or the time specified in paragraph 14B(1), whichever is later, to Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement.

(4) Continuation of Contingency: Even after the end of the time specified in paragraph 14B(1) and before Seller cancels, if at all, pursuant to paragraph 14D, Buyer retains the right, in writing, to either (i) remove remaining contingencies, or (ii) cancel this Agreement based on a remaining contingency. Once Buyer's written removal of all contingencies is Delivered to Seller, Seller may not cancel this Agreement pursuant to paragraph 14D(1).

(5) Access to Property: Buyer shall have access to the Property to conduct inspections and investigations for 17 (or _____ ) Days After Acceptance, whether or not any part of the Buyer's Investigation Contingency has been waived or removed.

C. ☐**REMOVAL OF CONTINGENCIES WITH OFFER: Buyer removes the contingencies specified in the attached Contingency Removal form (C.A.R. Form CR). If Buyer removes any contingency without an adequate understanding of the Property's condition or Buyer's ability to purchase, Buyer is acting against the advice of Broker.**

D. **SELLER RIGHT TO CANCEL:**

(1) Seller right to Cancel; Buyer Contingencies: If, by the time specified in this Agreement, Buyer does not Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement, then Seller, after first Delivering to Buyer a Notice to Buyer to Perform (C.A.R. Form NBP), may cancel this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer.

(2) Seller right to Cancel; Buyer Contract Obligations: Seller, after first delivering to Buyer a NBP, may cancel this Agreement if, by the time specified in this Agreement, Buyer does not take the following action(s): (i) Deposit funds as required by paragraph 3A, or 3B or if the funds deposited pursuant to paragraph 3A or 3B are not good when deposited; (ii) Deliver a notice of FHA or VA costs or terms as required by paragraph 3D(3) (C.A.R. Form FVA); (iii) Deliver a letter as required by paragraph 3J(1); (iv) Deliver verification, or a satisfactory verification if Seller reasonably disapproves of the verification already provided, as required by paragraph 3C or 3H; (v) In writing assume or accept leases or liens specified in 8B5; (vi) Return Statutory and Lead Disclosures as required by paragraph 10A(5); or (vii) Sign or initial a separate liquidated damages form for an increased deposit as required by paragraphs 3B and 21B; or (viii) Provide evidence of authority to sign in a representative capacity as specified in paragraph 19. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer.

E. **NOTICE TO BUYER OR SELLER TO PERFORM: The NBP or NSP shall: (i) be in writing; (ii) be signed by the applicable Buyer or Seller; and (iii) give the other Party at least 2 (or _____ ) Days After Delivery (or until the time specified in the applicable paragraph, whichever occurs last) to take the applicable action.** A NBP or NSP may not be Delivered any earlier than 2 Days Prior to the expiration of the applicable time for the other Party to remove a contingency or cancel this Agreement or meet an obligation specified in paragraph 14.

F. **EFFECT OF BUYER'S REMOVAL OF CONTINGENCIES: If Buyer removes, in writing, any contingency or cancellation rights, unless otherwise specified in writing, Buyer shall conclusively be deemed to have: (i) completed all Buyer Investigations, and review of reports and other applicable information and disclosures pertaining to that contingency or cancellation right; (ii) elected to proceed with the transaction; and (iii) assumed all liability, responsibility and expense for Repairs or corrections pertaining to that contingency or cancellation right, or for the inability to obtain financing.**

G. **CLOSE OF ESCROW:** Before Buyer or Seller may cancel this Agreement for failure of the other Party to close escrow pursuant to this Agreement, Buyer or Seller must first Deliver to the other Party a demand to close escrow (C.A.R. Form DCE). The DCE shall: (i) be signed by the applicable Buyer or Seller; and (ii) give the other Party at least 3 (or _____ ) Days After Delivery to close escrow. A DCE may not be Delivered any earlier than 3 Days Prior to the scheduled close of escrow.

H. **EFFECT OF CANCELLATION ON DEPOSITS: If Buyer or Seller gives written notice of cancellation pursuant to rights duly exercised under the terms of this Agreement, the Parties agree to Sign mutual instructions to cancel the sale and escrow and release deposits, if any, to the party entitled to the funds, less fees and costs incurred by that party.** Fees and costs may be payable to service providers and vendors for services and products provided during escrow. Except as specified below, release of funds will require mutual Signed release instructions from the Parties, judicial decision or arbitration award. If either Party fails to execute mutual instructions to cancel escrow, one Party may make a written demand to Escrow Holder for the deposit. (C.A.R. Form BDRD or SDRD). Escrow Holder, upon receipt, shall promptly deliver notice of the demand to the other Party. If, within 10 Days After Escrow Holder's notice, the other Party does not object to the demand, Escrow Holder shall disburse the deposit to the Party making the demand. If Escrow Holder complies with the preceding process, each Party shall be deemed to have released Escrow Holder from any and all claims or liability related to the disbursal of the deposit. Escrow Holder, at its discretion, may nonetheless require mutual cancellation instructions. A Party may be subject to a civil penalty of up to $1,000 for refusal to sign cancellation instructions if no good faith dispute exists as to who is entitled to the deposited funds (Civil Code §1057.3).

Buyer's Initials ( **B D/** )( _____ )      Seller's Initials ( _____ )( _____ )

**RPA-CA REVISED 12/15 (PAGE 6 OF 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 6 OF 10)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com    631 Caleb

Property Address: *631 Caleb St, Glendale, CA 91202-1114*                                      Date: *November 3, 2017*

**15. FINAL VERIFICATION OF CONDITION:** Buyer shall have the right to make a final verification of the Property within 5 (or [ ]___ ) Days Prior to Close Of Escrow, NOT AS A CONTINGENCY OF THE SALE, but solely to confirm: (i) the Property is maintained pursuant to paragraph 11; (ii) Repairs have been completed as agreed; and (iii) Seller has complied with Seller's other obligations under this Agreement (C.A.R. Form VP).

**16. REPAIRS:** Repairs shall be completed prior to final verification of condition unless otherwise agreed in writing. Repairs to be performed at Seller's expense may be performed by Seller or through others, provided that the work complies with applicable Law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. It is understood that exact restoration of appearance or cosmetic items following all Repairs may not be possible. Seller shall: (i) obtain invoices and paid receipts for Repairs performed by others; (ii) prepare a written statement indicating the Repairs performed by Seller and the date of such Repairs; and (iii) provide Copies of invoices and paid receipts and statements to Buyer prior to final verification of condition.

**17. PRORATIONS OF PROPERTY TAXES AND OTHER ITEMS:** Unless otherwise agreed in writing, the following items shall be PAID CURRENT and prorated between Buyer and Seller as of Close Of Escrow: real property taxes and assessments, interest, rents, HOA regular, special, and emergency dues and assessments imposed prior to Close Of Escrow, premiums on insurance assumed by Buyer, payments on bonds and assessments assumed by Buyer, and payments on Mello-Roos and other Special Assessment District bonds and assessments that are now a lien. The following items shall be assumed by Buyer WITHOUT CREDIT toward the purchase price: prorated payments on Mello-Roos and other Special Assessment District bonds and assessments and HOA special assessments that are now a lien but not yet due. Property will be reassessed upon change of ownership. Any supplemental tax bills shall be paid as follows: (i) for periods after Close Of Escrow, by Buyer; and (ii) for periods prior to Close Of Escrow, by Seller (see C.A.R. Form SPT or SBSA for further information). TAX BILLS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYER AND SELLER. Prorations shall be made based on a 30-day month.

**18. BROKERS:**

  **A.** **COMPENSATION:** Seller or Buyer, or both, as applicable, agree to pay compensation to Broker as specified in a separate written agreement between Broker and that Seller or Buyer. Compensation is payable upon Close Of Escrow, or if escrow does not close, as otherwise specified in the agreement between Broker and that Seller or Buyer.

  **B.** **SCOPE OF DUTY:** Buyer and Seller acknowledge and agree that Broker: (i) Does not decide what price Buyer should pay or Seller should accept; (ii) Does not guarantee the condition of the Property; (iii) Does not guarantee the performance, adequacy or completeness of inspections, services, products or repairs provided or made by Seller or others; (iv) Does not have an obligation to conduct an inspection of common areas or areas off the site of the Property; (v) Shall not be responsible for identifying defects on the Property, in common areas, or offsite unless such defects are visually observable by an inspection of reasonably accessible areas of the Property or are known to Broker; (vi) Shall not be responsible for inspecting public records or permits concerning the title or use of Property; (vii) Shall not be responsible for identifying the location of boundary lines or other items affecting title; (viii) Shall not be responsible for verifying square footage, representations of others or information contained in Investigation reports, Multiple Listing Service, advertisements, flyers or other promotional material; (ix) Shall not be responsible for determining the fair market value of the Property or any personal property included in the sale; (x) Shall not be responsible for providing legal or tax advice regarding any aspect of a transaction entered into by Buyer or Seller; and (xi) Shall not be responsible for providing other advice or information that exceeds the knowledge, education and experience required to perform real estate licensed activity. Buyer and Seller agree to seek legal, tax, insurance, title and other desired assistance from appropriate professionals.

**19. REPRESENTATIVE CAPACITY:** If one or more Parties is signing this Agreement in a representative capacity and not for him/herself as an individual then that Party shall so indicate in paragraph 31 or 32 and attach a Representative Capacity Signature Disclosure (C.A.R. Form RCSD). Wherever the signature or initials of the representative identified in the RCSD appear on this Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. The Party acting in a representative capacity (i) represents that the entity for which that party is acting already exists and (ii) shall Deliver to the other Party and Escrow Holder, within 3 Days After Acceptance, evidence of authority to act in that capacity (such as but not limited to: applicable portion of the trust or Certification Of Trust (Probate Code §18100.5), letters testamentary, court order, power of attorney, corporate resolution, or formation documents of the business entity).

**20. JOINT ESCROW INSTRUCTIONS TO ESCROW HOLDER:**

  **A.** The following paragraphs, or applicable portions thereof, of this Agreement constitute the joint escrow instructions of Buyer and Seller to Escrow Holder, which Escrow Holder is to use along with any related counter offers and addenda, and any additional mutual instructions to close the escrow: paragraphs 1, 3, 4B, 5A, 6, 7, 10C, 13, 14G, 17, 18A, 19, 20, 26, 29, 30, 31, 32 and paragraph D of the section titled Real Estate Brokers on page 10. If a Copy of the separate compensation agreement(s) provided for in paragraph 18A, or paragraph D of the section titled Real Estate Brokers on page 10 is deposited with Escrow Holder by Broker, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s). The terms and conditions of this Agreement not set forth in the specified paragraphs are additional matters for the information of Escrow Holder, but about which Escrow Holder need not be concerned. Buyer and Seller will receive Escrow Holder's general provisions, if any, directly from Escrow Holder and will execute such provisions within the time specified in paragraph 7C(1)(c). To the extent the general provisions are inconsistent or conflict with this Agreement, the general provisions will control as to the duties and obligations of Escrow Holder only. Buyer and Seller will execute additional instructions, documents and forms provided by Escrow Holder that are reasonably necessary to close the escrow and, as directed by Escrow Holder, within 3 (or ___ ) Days, shall pay to Escrow Holder or HOA or HOA management company or others any fee required by paragraphs 7, 10 or elsewhere in this Agreement.

  **B.** A Copy of this Agreement including any counter offer(s) and addenda shall be delivered to Escrow Holder within 3 Days After Acceptance (or _____). Buyer and Seller authorize Escrow Holder to accept and rely on Copies and Signatures as defined in this Agreement as originals, to open escrow and for other purposes of escrow. The validity of this Agreement as between Buyer and Seller is not affected by whether or when Escrow Holder Signs this Agreement. Escrow Holder shall provide Seller's Statement of Information to Title company when received from Seller. If Seller delivers an affidavit to Escrow Holder to satisfy Seller's FIRPTA obligation under paragraph 10C, Escrow Holder shall deliver to Buyer a Qualified Substitute statement that complies with federal Law.

Buyer's Initials ( BDV )( _____ )                    Seller's Initials ( _____ )( _____ )

RPA-CA REVISED 12/15 (PAGE 7 OF 10)

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 7 OF 10)**

Property Address: *631 Caleb St, Glendale, CA 91202-1114*                              Date: *November 3, 2017*

C. Brokers are a party to the escrow for the sole purpose of compensation pursuant to paragraph 18A and paragraph D of the section titled Real Estate Brokers on page 10. Buyer and Seller irrevocably assign to Brokers compensation specified in paragraph 18A, and irrevocably instruct Escrow Holder to disburse those funds to Brokers at Close Of Escrow or pursuant to any other mutually executed cancellation agreement. Compensation instructions can be amended or revoked only with the written consent of Brokers. Buyer and Seller shall release and hold harmless Escrow Holder from any liability resulting from Escrow Holder's payment to Broker(s) of compensation pursuant to this Agreement.

D. Upon receipt, Escrow Holder shall provide Seller and Seller's Broker verification of Buyer's deposit of funds pursuant to paragraph 3A and 3B. Once Escrow Holder becomes aware of any of the following, Escrow Holder shall immediately notify all Brokers: (i) if Buyer's initial or any additional deposit or down payment is not made pursuant to this Agreement, or is not good at time of deposit with Escrow Holder; or (ii) if Buyer and Seller instruct Escrow Holder to cancel escrow.

E. A Copy of any amendment that affects any paragraph of this Agreement for which Escrow Holder is responsible shall be delivered to Escrow Holder within 3 Days after mutual execution of the amendment.

**21. REMEDIES FOR BUYER'S BREACH OF CONTRACT:**

A. Any clause added by the Parties specifying a remedy (such as release or forfeiture of deposit or making a deposit non-refundable) for failure of Buyer to complete the purchase in violation of this Agreement shall be deemed invalid unless the clause independently satisfies the statutory liquidated damages requirements set forth in the Civil Code.

B. **LIQUIDATED DAMAGES:** If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid. If the Property is a dwelling with no more than four units, one of which Buyer intends to occupy, then the amount retained shall be no more than 3% of the purchase price. Any excess shall be returned to Buyer. Except as provided in paragraph 14H, release of funds will require mutual, Signed release instructions from both Buyer and Seller, judicial decision or arbitration award. AT THE TIME OF ANY INCREASED DEPOSIT BUYER AND SELLER SHALL SIGN A SEPARATE LIQUIDATED DAMAGES PROVISION INCORPORATING THE INCREASED DEPOSIT AS LIQUIDATED DAMAGES (C.A.R. FORM RID).

Buyer's Initials __*BDV*__ / _____                    Seller's Initials _____ / _____

**22. DISPUTE RESOLUTION:**

A. MEDIATION: The Parties agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action through the C.A.R. Real Estate Mediation Center for Consumers (www.consumermediation.org) or through any other mediation provider or service mutually agreed to by the Parties. The Parties also agree to mediate any disputes or claims with Broker(s), who, in writing, agree to such mediation prior to, or within a reasonable time after, the dispute or claim is presented to the Broker. Mediation fees, if any, shall be divided equally among the Parties involved. If, for any dispute or claim to which this paragraph applies, any Party (i) commences an action without first attempting to resolve the matter through mediation, or (ii) before commencement of an action, refuses to mediate after a request has been made, then that Party shall not be entitled to recover attorney fees, even if they would otherwise be available to that Party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED. Exclusions from this mediation agreement are specified in paragraph 22C.

B. **ARBITRATION OF DISPUTES:**
The Parties agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration. The Parties also agree to arbitrate any disputes or claims with Broker(s), who, in writing, agree to such arbitration prior to, or within a reasonable time after, the dispute or claim is presented to the Broker. The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of residential real estate Law experience, unless the parties mutually agree to a different arbitrator. The Parties shall have the right to discovery in accordance with Code of Civil Procedure §1283.05. In all other respects, the arbitration shall be conducted in accordance with Title 9 of Part 3 of the Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction. Enforcement of this agreement to arbitrate shall be governed by the Federal Arbitration Act. Exclusions from this arbitration agreement are specified in paragraph 22C.
    "NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."
    "WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."

Buyer's Initials __*BDV*__ / _____                    Seller's Initials _____ / _____

C. ADDITIONAL MEDIATION AND ARBITRATION TERMS:
    (1) EXCLUSIONS: The following matters are excluded from mediation and arbitration: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code §2985; (ii) an unlawful detainer action; and (iii) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court.

Buyer's Initials ( __*BDV*__ )( ____._____ )                    Seller's Initials ( _____ )( _____ )
**RPA-CA REVISED 12/15 (PAGE 8 OF 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 8 OF 10)**
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com                631 Caleb

33

Property Address: *631 Caleb St, Glendale, CA 91202-1114*_____ Date: *November 3, 2017*_____

     (2) **PRESERVATION OF ACTIONS:** The following shall not constitute a waiver nor violation of the mediation and arbitration provisions: (i) the filing of a court action to preserve a statute of limitations; (ii) the filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies; or (iii) the filing of a mechanic's lien.

     (3) **BROKERS:** Brokers shall not be obligated nor compelled to mediate or arbitrate unless they agree to do so in writing. Any Broker(s) participating in mediation or arbitration shall not be deemed a party to this Agreement.

**23. SELECTION OF SERVICE PROVIDERS:** Brokers do not guarantee the performance of any vendors, service or product providers ("Providers"), whether referred to or selected by Buyer, Seller or other person. Buyer and Seller may select ANY Providers of their own choosing.

**24. MULTIPLE LISTING SERVICE ("MLS"):** Brokers are authorized to report to the MLS a pending sale and, upon Close Of Escrow, the sales price and other terms of this transaction shall be provided to the MLS to be published and disseminated to persons and entities authorized to use the information on terms approved by the MLS.

**25. ATTORNEY FEES:** In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the non-prevailing Buyer or Seller, except as provided in paragraph 22A.

**26. ASSIGNMENT:** Buyer shall not assign all or any part of Buyer's interest in this Agreement without first having obtained the separate written consent of Seller to a specified assignee. Such consent shall not be unreasonably withheld. Any total or partial assignment shall not relieve Buyer of Buyer's obligations pursuant to this Agreement unless otherwise agreed in writing by Seller. (C.A.R. Form AOAA).

**27. EQUAL HOUSING OPPORTUNITY:** The Property is sold in compliance with federal, state and local anti-discrimination Laws.

**28. TERMS AND CONDITIONS OF OFFER:**
This is an offer to purchase the Property on the above terms and conditions. The liquidated damages paragraph or the arbitration of disputes paragraph is incorporated in this Agreement if initialed by all Parties or if incorporated by mutual agreement in a counter offer or addendum. If at least one but not all Parties initial, a counter offer is required until agreement is reached. Seller has the right to continue to offer the Property for sale and to accept any other offer at any time prior to notification of Acceptance. The Parties have read and acknowledge receipt of a Copy of the offer and agree to the confirmation of agency relationships. If this offer is accepted and Buyer subsequently defaults, Buyer may be responsible for payment of Brokers' compensation. This Agreement and any supplement, addendum or modification, including any Copy, may be Signed in two or more counterparts, all of which shall constitute one and the same writing.

**29. TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES:**    Time is of the essence. All understandings between the Parties are incorporated in this Agreement. Its terms are intended by the Parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. Except as otherwise specified, this Agreement shall be interpreted and disputes shall be resolved in accordance with the Laws of the State of California. Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed, except in writing Signed by Buyer and Seller.

**30. DEFINITIONS:** As used in this Agreement:

    **A.** "Acceptance" means the time the offer or final counter offer is accepted in writing by a Party and is delivered to and personally received by the other Party or that Party's authorized agent in accordance with the terms of this offer or a final counter offer.

    **B.** "Agreement" means this document and any counter offers and any incorporated addenda, collectively forming the binding agreement between the Parties. Addenda are incorporated only when Signed by all Parties.

    **C.** "C.A.R. Form" means the most current version of the specific form referenced or another comparable form agreed to by the parties.

    **D.** "Close Of Escrow", including "COE", means the date the grant deed, or other evidence of transfer of title, is recorded.

    **E.** "Copy" means copy by any means including photocopy, NCR, facsimile and electronic.

    **F.** "Days" means calendar days. However, after Acceptance, the last Day for performance of any act required by this Agreement (including Close Of Escrow) shall not include any Saturday, Sunday, or legal holiday and shall instead be the next Day.

    **G.** "Days After" means the specified number of calendar days after the occurrence of the event specified, not counting the calendar date on which the specified event occurs, and ending at 11:59 PM on the final day.

    **H.** "Days Prior" means the specified number of calendar days before the occurrence of the event specified, not counting the calendar date on which the specified event is scheduled to occur.

    **I.** "Deliver", "Delivered" or "Delivery", unless otherwise specified in writing, means and shall be effective upon: personal receipt by Buyer or Seller or the Individual Real Estate Licensee for that principal as specified in the section titled Real Estate Brokers on page 10, regardless of the method used (i.e., messenger, mail, email, fax, other).

    **J.** "Electronic Copy" or "Electronic Signature" means, as applicable, an electronic copy or signature complying with California Law. Buyer and Seller agree that electronic means will not be used by either Party to modify or alter the content or integrity of this Agreement without the knowledge and consent of the other Party.

    **K.** "Law" means any law, code, statute, ordinance, regulation, rule or order, which is adopted by a controlling city, county, state or federal legislative, judicial or executive body or agency.

    **L.** "Repairs" means any repairs (including pest control), alterations, replacements, modifications or retrofitting of the Property provided for under this Agreement.

    **M.** "Signed" means either a handwritten or electronic signature on an original document, Copy or any counterpart.

**31. EXPIRATION OF OFFER:** This offer shall be deemed revoked and the deposit, if any, shall be returned to Buyer unless the offer is Signed by Seller and a Copy of the Signed offer is personally received by Buyer, or by ___*Robert Ohanian*___ who is authorized to receive it, by 5:00 PM on the third Day after this offer is signed by Buyer (or by ☐ ___*5:00*___ ☐ AM/ ☑ PM, on *November 10, 2017*_____ (date)).

☐ One or more Buyers is signing this Agreement in a representative capacity and not for him/herself as an individual. See attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD-B) for additional terms.

Date *11/03/2017*_____ BUYER _____
(Print name) *Brian Der Vartanian*_____
Date _____ BUYER _____
(Print name) _____

☐ Additional Signature Addendum attached (C.A.R. Form ASA).

Seller's Initials ( _____ )( _____ )

**RPA-CA REVISED 12/15 (PAGE 9 OF 10)**
**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 9 OF 10)**
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com     *631 Caleb*

34

Property Address: *631 Caleb St, Glendale, CA 91202-1114*                    Date: *November 3, 2017*

**32. ACCEPTANCE OF OFFER:** Seller warrants that Seller is the owner of the Property, or has the authority to execute this Agreement. Seller accepts the above offer, and agrees to sell the Property on the above terms and conditions. Seller has read and acknowledges receipt of a Copy of this Agreement, and authorizes Broker to Deliver a Signed Copy to Buyer.

☐ (If checked) SELLER'S ACCEPTANCE **IS SUBJECT TO ATTACHED COUNTER OFFER (C.A.R. Form SCO or SMCO)** DATED:
_____

☐ One or more Sellers is signing this Agreement in a representative capacity and not for him/herself as an individual. See attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD-S) for additional terms.

Date _____ SELLER _____

(Print name) _____

Date _____ SELLER _____

(Print name) _____

☐ Additional Signature Addendum attached (C.A.R. Form ASA).

( _____ / _____ ) (Do not initial if making a counter offer.) **CONFIRMATION OF ACCEPTANCE:** A Copy of Signed Acceptance was
(Initials)      personally received by Buyer or Buyer's authorized agent on (date) _____ at _____
☐ AM/ ☐ PM. A binding Agreement is created when a Copy of Signed Acceptance is personally received by Buyer or Buyer's authorized agent whether or not confirmed in this document. Completion of this confirmation is not legally required in order to create a binding Agreement; it is solely intended to evidence the date that Confirmation of Acceptance has occurred.

---

**REAL ESTATE BROKERS:**
A. Real Estate Brokers are not parties to the Agreement between Buyer and Seller.
B. Agency relationships are confirmed as stated in paragraph 2.
C. If specified in paragraph 3A(2), Agent who submitted the offer for Buyer acknowledges receipt of deposit.
D. **COOPERATING BROKER COMPENSATION:** Listing Broker agrees to pay Cooperating Broker (**Selling Firm**) and Cooperating Broker agrees to accept, out of Listing Broker's proceeds in escrow, the amount specified in the MLS, provided Cooperating Broker is a Participant of the MLS in which the Property is offered for sale or a reciprocal MLS. If Listing Broker and Cooperating Broker are not both Participants of the MLS, or a reciprocal MLS, in which the Property is offered for sale, then compensation must be specified in a separate written agreement (C.A.R. Form CBC). Declaration of License and Tax (C.A.R. Form DLT) may be used to document that tax reporting will be required or that an exemption exists.

Real Estate Broker (Selling Firm) *Ohanian Realty* _____  CalBRE Lic. # *00861650* _____
By _____ *Robert Ohanian* CalBRE Lic. # *00861650* _____  Date _____
By _____ CalBRE Lic. # _____  Date _____
Address *100 N. Brand Blvd. #16* _____ City *Glendale* _____  State *CA* _ Zip *91203* ____
Telephone *(818)522-3197* _____ Fax _____ E-mail *robertderohanian@yahoo.com*
Real Estate Broker (Listing Firm) *Raford Management Co.* _____  CalBRE Lic. # _____
By _____ CalBRE Lic. # _____  Date _____
By _____ CalBRE Lic. # _____  Date _____
Address _____ City _____  State _____ Zip _____
Telephone _____ Fax _____ E-mail _____

---

**ESCROW HOLDER ACKNOWLEDGMENT:**
Escrow Holder acknowledges receipt of a Copy of this Agreement, (if checked), ☐ a deposit in the amount of $ _____ ),
counter offer numbers _____ ☐ Seller's Statement of Information and _____
_____ , and agrees to act as Escrow Holder subject to paragraph 28 of this Agreement, any supplemental escrow instructions and the terms of Escrow Holder's general provisions.

Escrow Holder is advised that the date of Confirmation of Acceptance of the Agreement as between Buyer and Seller is _____

Escrow Holder _____  Escrow # _____
By _____  Date _____
Address _____
Phone/Fax/E-mail _____
Escrow Holder has the following license number # _____
☐ Department of Business Oversight, ☐ Department of Insurance, ☐ Bureau of Real Estate.

---

**PRESENTATION OF OFFER:** ( _____ ) Listing Broker presented this offer to Seller on _____ (date).
                          Broker or Designee Initials

---

**REJECTION OF OFFER:** ( _____ ) ( _____ ) No counter offer is being made. This offer was rejected by Seller on _____ (date).
                         Seller's Initials

---

©1991- 2015, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Buyer Acknowledges that page 10 is part of this Agreement ( *BDV* )( _____ )
                                                              Buyer's Initials

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
»525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____
Broker or Designee

**RPA-CA REVISED 12/15 (PAGE 10 OF 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 10 OF 10)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com   631 Caleb

35



**CALIFORNIA
ASSOCIATION
OF REALTORS®**

## BUYER'S INSPECTION ADVISORY
### (C.A.R. Form BIA, Revised 11/14)

Property Address: <u>631 Caleb St, Glendale, CA 91202-1114</u>                                         ("Property").

**1. IMPORTANCE OF PROPERTY INVESTIGATION:** The physical condition of the land and improvements being purchased is not guaranteed by either Seller or Brokers. You have an affirmative duty to exercise reasonable care to protect yourself, including discovery of the legal, practical and technical implications of disclosed facts, and the investigation and verification of information and facts that you know or that are within your diligent attention and observation. A general physical inspection typically does not cover all aspects of the Property nor items affecting the Property that are not physically located on the Property. If the professionals recommend further investigations, including a recommendation by a pest control operator to inspect inaccessible areas of the Property, you should contact qualified experts to conduct such additional investigations.

**2. BROKER OBLIGATIONS:** Brokers do not have expertise in all areas and therefore cannot advise you on many items, such as those listed below. If Broker gives you referrals to professionals, Broker does not guarantee their performance.

**3.  YOU ARE STRONGLY ADVISED TO INVESTIGATE THE CONDITION AND SUITABILITY OF ALL ASPECTS OF THE PROPERTY, INCLUDING BUT NOT LIMITED TO THE FOLLOWING. IF YOU DO NOT DO SO, YOU ARE ACTING AGAINST THE ADVICE OF BROKERS.**

   **A. GENERAL CONDITION OF THE PROPERTY, ITS SYSTEMS AND COMPONENTS:** Foundation, roof (condition, age, leaks, useful life), plumbing, heating, air conditioning, electrical, mechanical, security, pool/spa (cracks, leaks, operation), other structural and nonstructural systems and components, fixtures, built-in appliances, any personal property included in the sale, and energy efficiency of the Property.

   **B. SQUARE FOOTAGE, AGE, BOUNDARIES:** Square footage, room dimensions, lot size, age of improvements and boundaries. Any numerical statements regarding these items are APPROXIMATIONS ONLY and have not been verified by Seller and cannot be verified by Brokers. Fences, hedges, walls, retaining walls and other barriers or markers do not necessarily identify true Property boundaries.

   **C. WOOD DESTROYING PESTS:** Presence of, or conditions likely to lead to the presence of wood destroying pests and organisms.

   **D. SOIL STABILITY:** Existence of fill or compacted soil, expansive or contracting soil, susceptibility to slippage, settling or movement, and the adequacy of drainage.

   **E. WATER AND UTILITIES; WELL SYSTEMS AND COMPONENTS; WASTE DISPOSAL:** Water and utility availability, use restrictions and costs. Water quality, adequacy, condition, and performance of well systems and components. The type, size, adequacy, capacity and condition of sewer and septic systems and components, connection to sewer, and applicable fees.

   **F. ENVIRONMENTAL HAZARDS:** Potential environmental hazards, including, but not limited to, asbestos, lead-based paint and other lead contamination, radon, methane, other gases, fuel oil or chemical storage tanks, contaminated soil or water, hazardous waste, waste disposal sites, electromagnetic fields, nuclear sources, and other substances, materials, products, or conditions (including mold (airborne, toxic or otherwise), fungus or similar contaminants).

   **G. EARTHQUAKES AND FLOODING:** Susceptibility of the Property to earthquake/seismic hazards and propensity of the Property to flood.

   **H. FIRE, HAZARD AND OTHER INSURANCE:** The availability and cost of necessary or desired insurance may vary. The location of the Property in a seismic, flood or fire hazard zone, and other conditions, such as the age of the Property and the claims history of the Property and Buyer, may affect the availability and need for certain types of insurance. Buyer should explore insurance options early as this information may affect other decisions, including the removal of loan and inspection contingencies.

   **I. BUILDING PERMITS, ZONING AND GOVERNMENTAL REQUIREMENTS:** Permits, inspections, certificates, zoning, other governmental limitations, restrictions, and requirements affecting the current or future use of the Property, its development or size.

   **J. RENTAL PROPERTY RESTRICTIONS:** Some cities and counties impose restrictions that limit the amount of rent that can be charged, the maximum number of occupants, and the right of a landlord to terminate a tenancy. Deadbolt or other locks and security systems for doors and windows, including window bars, should be examined to determine whether they satisfy legal requirements.

   **K. SECURITY AND SAFETY:** State and local Law may require the installation of barriers, access alarms, self-latching mechanisms and/or other measures to decrease the risk to children and other persons of existing swimming pools and hot tubs, as well as various fire safety and other measures concerning other features of the Property.

   **L. NEIGHBORHOOD, AREA, SUBDIVISION CONDITIONS; PERSONAL FACTORS:** Neighborhood or area conditions, including schools, law enforcement, crime statistics, registered felons or offenders, fire protection, other government services, availability, adequacy and cost of internet connections or other technology services and installations, commercial, industrial or agricultural activities, existing and proposed transportation, construction and development that may affect noise, view, or traffic, airport noise, noise or odor from any source, wild and domestic animals, other nuisances, hazards, or circumstances, protected species, wetland properties, botanical diseases, historic or other governmentally protected sites or improvements, cemeteries, facilities and condition of common areas of common interest subdivisions, and possible lack of compliance with any governing documents or Homeowners' Association requirements, conditions and influences of significance to certain cultures and/or religions, and personal needs, requirements and preferences of Buyer.

**By signing below, Buyers acknowledge that they have read, understand, accept and have received a Copy of this Advisory. Buyers are encouraged to read it carefully.**

Buyer _____                     Buyer _____
Brian Der Vartanian

© 1991-2004, California Association of REALTORS®, Inc. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____ Date _____



**BIA REVISED 11/14 (PAGE 1 OF 1)**

## BUYER'S INSPECTION ADVISORY (BIA PAGE 1 OF 1)

Robert Ohanian Realty, 100 N. Brand Blvd., #16 Glendale, CA 91203        Phone: (818)552-3197        Fax:        631 Caleb
Robert Ohanian                           Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

## COUNTER-OFFER

This agreement ("Agreement" or "Counter-Offer") is intended to set forth the terms and conditions of a contract for the purchase by and sale to BRIAN DER VARTANIAN AND/OR ASSIGNEE (the "Buyer") from David Seror, solely in his capacity as Chapter 7 Trustee for the consolidated bankruptcy case of Owner Management Services, LLC., Case No. 1:12-bk-10231-MT (the "Seller"), of the real property commonly known as 631 Caleb Street, Los Angeles, California 91202 (the "Property"). When executed below, this Agreement will constitute conclusive evidence and the exclusive terms and conditions of the contract for such purchase and sale (the "Sale") of the Property and will supersede and replace in its entirety the Residential Purchase Agreement And Joint Escrow Instructions dated November 3, 2017 and all attachments (the "Offer") and any oral or written negotiations since then.

PURCHASE PRICE; DEPOSIT; ESCROW. The purchase price for the Property shall be One Million Two Hundred Thirty Thousand Dollars and no cents ($1,230,000.00) ("Purchase Price"). Buyer shall make an initial deposit of Thirty-Six Thousand Nine Hundred Dollars and no cents ($36,900) (the "Initial Deposit") in the form of cashier's check or wire transfer made payable and delivered to A & A Escrow Services, Inc., Attn: Antonia Delgado, whose address is 415 N. Crescent Drive, Suite 320, Beverly Hills, California 90210, within five (5) business days of acceptance of this Counter-Offer by Buyer, Seller's execution of the Affirmation Agreement in the form attached hereto as Exhibit "A", and Buyer's receipt of a copy of the fully executed Counter-Offer and the Affirmation Agreement. Buyer shall deliver to the Trustee, within two (2) days of mutual agreement upon this Counter-Offer, proof of committed funds available to Buyer, without contingency, sufficient to enable Buyer to consummate the acquisition contemplated herein, which proof shall be in the form of a letter of credit; loan commitment or other form acceptable to the Trustee in the Trustee's sole discretion. In the event that either (i) Buyer fails timely to provide any such proof, or (ii) the Trustee determines, in the Trustee's sole discretion, that any proof of funds provided to Trustee by Buyer is unacceptable, the Trustee shall have the right, at the Trustee's option, to provide written notice to Buyer that this Counter-Offer is terminated. In the event that the Trustee exercises such termination right, this Counter-Offer shall terminate effective as of the date of Trustee's written notice to Buyer, whereupon the Initial Deposit (if theretofore deposited with the Escrow Holder) shall be returned to Buyer and Buyer and Trustee shall each be relieved of any further obligation hereunder.

Escrow instructions corresponding to the terms of this Agreement shall be provided by the Escrow Holder and signed by the parties within five (5) business days of the date of Buyer's and Seller's receipt of said escrow instructions. Buyer and Seller shall deposit such documents and instruments with the Escrow Holder as and when reasonably required to complete the sale. Buyer shall be free to assign this Agreement to another person or entity ("Assignee") subject to Seller's prior review and written approval (which approval Seller may grant or withhold in its sole discretion), but Buyer shall remain liable hereunder, together with such Assignee, in the event that such Assignee fails to perform any of Buyer's obligations hereunder.

1.    BUYER'S DUE DILIGENCE AND FINANCING; CANCELLATION RIGHT. Buyer shall have twenty (20) calendar days from the date of execution hereof to perform, complete, and satisfy all contingencies including financing, inspections, investigations, tests and reviews of reports, and to

Page 1 of 8

1872910

37

complete all due diligence which the Buyer desires for this Sale of the Property, including, but not limited to and performing and completing any geological, soil, structural, environmental, or other tests, inspections, and investigations desire by Buyer. Buyer may, not later than the end of that period, give Seller written notice of Buyer's election to withdraw from this Agreement because of Buyer's inability to complete or dissatisfaction with the results of any of those matters ("Notice of Cancellation"), in which event Buyer's and Seller's obligations under this Agreement shall be terminated and Buyer shall receive a full refund of Buyer's deposit. If Buyer fails to give such Notice of Cancellation as within such period, all such contingencies shall be automatically removed and Buyer's obligation to proceed shall be non-contingent except as provided herein for, (i) Buyer's review of a preliminary report and underlying documents respecting the title to the Property (as set forth in Paragraph 2), and (ii) Bankruptcy Court approval of this Agreement and the Sale (including as set forth in Paragraph 6).

2.     TITLE; TITLE INSURANCE.  Within three (3) business days after acceptance of this Counter Offer Title 365 (the "Title Company") or title-company of Seller's choice will be instructed to provide a preliminary report of the condition of title to the Property, including copies of underlying documents referred to in Schedule B thereof, for Buyer's review. Buyer may, not later than the end of the period in Paragraph 2, or until three (3) days after receipt of the preliminary report and underlying documents, whichever occurs later, in which to give Seller written notice ("Notice of Title Disapproval") that Buyer disapproves the condition of title with respect to a material matter(s) that interfere with the use of the Property for the purpose for which it is currently used or intended to be used. Such notice must refer to the specific exception(s) in Schedule B of the preliminary report and the specific underlying document(s) which are the basis for Buyer's disapproval. Within five (5) business days after receipt of such notice, Seller may, in Seller's sole discretion, either (i) cancel this Agreement and the sale, in which event Buyer's and Seller's obligations under this Agreement shall be terminated and Buyer shall receive a full refund of Buyer's deposit, or (ii) elect to correct the item(s) that were disapproved by Buyer, in which event the sale shall proceed. Seller may correct such item by any means that will result in the Title Company either removing the disapproved exception(s) from the preliminary report or providing title insurance coverage by endorsement against such exception(s). At the close of the sale, Seller shall convey and Buyer shall accept title to the Property as shown in Schedule B of the preliminary report, subject to any corrections as in this paragraph above, free and clear of all monetary liens, subject to the terms of the within contract. Seller shall pay the costs of a CLTA Standard Owner's policy of title insurance.

3.     REMOVAL OF CONTINGENCIES; COURT CONFIRMATION; CLOSING; DELIVERY OF POSSESSION.  If Buyer does not give Seller written Notice of Cancellation as and when provided in Paragraph 1, or Notice of Title Disapproval as and when provided in Paragraph 2, Buyer's silence shall be deemed acceptance and Buyer shall be deemed to have satisfied and removed all of Buyer's contingencies and to proceed with the Sale. Seller shall then file a motion with the Bankruptcy Court to confirm this sale. Upon such removal of contingencies, Buyer shall be unconditionally obligated to proceed with the sale, subject only to Bankruptcy Court confirmation as set forth below. If the Bankruptcy Court confirms the sale to Buyer, the closing shall take place as soon as practicable after entry of the order approving the sale, but no later than the first business day after twenty-five (25) calendar days following the entry of court order approving sale. The closing shall occur on the date the deed transferring the Property to Buyer is recorded with the County Recorder where the Property is located. Occupancy shall be delivered to Buyer upon Escrow Holder's confirmation of recording.

1872910

4.    **BANKRUPTCY SALE.** Buyer acknowledges that Seller is a Trustee appointed to administer the above referenced bankruptcy estate, and is a party to this Agreement solely in that capacity. Seller and Brokers and agents have not and will not determine the condition or fitness for use of the Property for any particular purpose. The sale shall be "as is," "where is," "with all faults," and with no warranty by or recourse whatsoever to Seller or Brokers or agents herein. Transfer of the Property shall be by Quit Claim Deed. All parties acknowledge that Seller is a party to this Agreement solely in the capacity as Trustee of the above referenced bankruptcy estate and that in the event of any default in the performance of any of Seller's obligations under the Offer (as modified hereby) or in the event that any other claim is asserted against the Seller, Trustee or the estate in connection with this transaction, the Trustee shall in no event have any personal liability whatsoever (whether in her individual capacity or otherwise), it being expressly understood and agreed that Buyer's sole recourse, if any, in such event shall be to the assets of such estate.

5.    **TAXES; PRORATIONS; COSTS OF SALE.** All real property taxes and assessments for the current tax year shown in the current County Tax Bill shall be prorated between Seller and Buyer and charged as of the closing date to the applicable accounts of Seller and Buyer. The sale shall be free and clear of all real property taxes (other than those prorated as provided above) enforceable against the Property through the closing date of the sale. Escrow fees shall be split between Buyer and Seller in the manner customary in the County where the Property is located. Seller shall pay any real property transfer tax. Buyer shall pay and have sole responsibility for compliance with any requirements imposed on the Property or this sale by any governmental agency(ies), including compliance with any applicable governmental retrofit requirements. Buyer shall pay the cost of recording the deed. Buyer and Seller shall each pay their own expenses of every other type except as specifically provided in this Agreement.

6.    **BANKRUPTCY COURT APPROVAL; OVERBIDDING.** The sale is subject to notice to creditors, approval by the Bankruptcy Court, and higher and better bids received by Seller through and including the Bankruptcy Court hearing to confirm the sale. Payment of any and all real estate brokers' commissions is also subject to notice to creditors and approval by the Bankruptcy Court. Buyer acknowledges and agrees that Seller may not seek to obtain the Bankruptcy Court's approval if Seller has determined that it would be in the best interest of the bankruptcy estate not to do so.

7.    **BROKERS.** Seller is represented by Raford Management Company, Inc. Buyer is represented by Ohanian Realty. Subject to Bankruptcy Court approval, Seller will pay a real estate broker's commission aggregating 5% of net sales price of the Property to the Brokers as they may allocate it between themselves in connection with the closing of this sale. All such Brokers and agents are collectively referred to herein as the "Brokers." No commission or compensation shall be due or payable to Brokers in connection with this Agreement or sale except from the cash proceeds of an actual Sale of the Property that closes to Buyer. Buyer hereby represents and warrants that, other than the Brokers, Buyer has not dealt with any broker, finder or other person entitled to any fee, commission or other compensation in connection with the Sale and Buyer shall indemnify, defend and protect and hold Seller and the related bankruptcy estate harmless of, from and against any claims, demands, actions, causes of action, losses, liabilities and costs and expenses (including, without limitation, all court costs and reasonable attorneys' fees) as Seller may suffer or incur in the event that any claims for any such fees, commissions or other compensation of any kind are hereafter asserted.

<div align="center">Page 3 of 8</div>

1872910

8.    MATERIAL CHANGE OF CONDITION. In the event of any material change in the condition of the Property after the date of acceptance of this Counter-Offer, if Buyer demands repair of any resulting actual damage to the Property, Seller may, at Seller's sole option: (a) elect to terminate this Agreement, in which event Buyer's and Seller's obligations to buy or sell shall terminate and the full Deposit shall be refunded to Buyer; or (b) make required repairs at the bankruptcy estate's expense; or (c) assign any insurance proceeds for the damage to the Property to Buyer as of the close of the sale; or (d) credit the cost of such repairs to Buyer through escrow, it being agreed that in the event that Seller elects and complies with subpart 9(b), (c) or (d), Buyer's obligation to proceed with the Sale shall be unaffected by any such material change in the condition of the Property.

9.    REMEDY FOR BUYER'S OR SELLER'S FAILURE TO CLOSE. Buyer's sole remedy in the event that the sale fails to close as a result of Seller's inability or failure to close for any reason, including but not limited to the reason of failure to obtain approval of the sale by the Bankruptcy Court, shall be the mutual release of Buyer's and Seller's obligations to buy or sell and a full refund of the Deposit (plus any increase thereof by Buyer). In the event Buyer fails to close the sale for any reason other than Seller's default, after Buyer's contingencies have been removed as under Paragraphs 2 and 3, Buyer's Deposit (plus any increase, thereof by Buyer) shall be paid over to Seller and retained by Seller as liquidated damages without further legal action. If the Property is a dwelling with no more than four units, one of which Buyer intends to occupy, then the amount retained shall be no more than three percent of the Purchase Price. This provision shall apply equally to the Deposit (and any increase, thereof by Buyer).

_____ [Buyer's Initials]

10.    BANKRUPTCY COURT JURISDICTION. The U.S. Bankruptcy Court for the Central District of California shall have sole and exclusive jurisdiction to interpret and enforce the terms of this Agreement and Buyer hereby consents and submits to such exclusive jurisdiction. This Agreement shall be interpreted and enforced pursuant to the laws of the United States of America including the Bankruptcy Code, Title 11, United States Code.

11.    "AS-IS," "WHERE-IS" CONDITION; NO WARRANTIES. Buyer acknowledges and agrees that, to the maximum extent permitted by law, the sale contemplated by this Agreement is made "as-is," "where-is," and "with all faults," except as specifically provided in this Agreement. Seller and Brokers and agents herein have not made, do not make, and specifically negate and disclaim any representations, warranties, promises, covenants, agreements, or guaranties of any kind or character whatsoever, whether express or implied, oral or written, concerning or respecting (i) value of the Property; (ii) income to be derived from the Property; (iii) suitability of the Property, or lack thereof for any activity or use which Buyer may intend to conduct thereon, including any possibilities or limitations for future development; (iv) habitability, merchantability, marketability, profitability, or fitness for a particular purpose, of the Property, or lack thereof; (v) manner, quality, state of repair, or lack of repair of the Property; (vi) nature, quality, or condition of the Property, or any portion, system, or component thereof, including without limitation, water, soil, and geology; (vii) compliance of the Property or its operation, or lack thereof, with any laws, ordinances, regulations, rules, or orders of any applicable governmental authority or body; (viii) manner or quality of engineering, design, construction or materials, if any, incorporated into the Property; (ix) compliance or lack of compliance with any land use, building and safety, or other laws, ordinances, regulations, rules,

Page 4 of 8

1872910

orders, or other requirements imposed or enforced by any governmental or non-governmental body, including without limitation the Americans with Disabilities Act of 1990; (x) the presence or absence at, on, under, or adjacent to the Property, of materials described as "hazardous substances, hazardous materials, or toxic substances" or by similar terms under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (42 U.S. Code §§9601, et seq.), the Hazardous Materials Transportation Act, as amended (49 U.S. Code §§1801, et seq.), the Resource Conservation and Recovery Act (42 U.S. Code §§6901, et seq.), the Toxic Substance Control Act (15 U.S. Code §2601, et seq.), the Clean Water Act (33 U.S. Code §1251, et seq.), California Health and Safety Code §25117 or 25316), or other statutes and laws, all as amended and including all regulations issued thereunder; (xi) the content, completeness or accuracy of any Due Diligence materials or Preliminary Report regarding Title to the Property; (xii) the conformity or lack of conformity of the improvements to any plans or specifications for the Property, including any plans and specifications that may have been or may be provided to Buyer; (xiii) the conformity or lack of conformity of the Property to past, current, or future applicable zoning or building requirements; (xiv) any deficiency of any undershoring, drainage, or other aspects, systems, or components of or affecting the Property; (xv) the fact, if applicable, that all or a portion of the Property may be located on or near any natural hazard zone as determined by any governmental agency or body; (xvi) the existence of vested land use, zoning, or building entitlements affecting the Property or any other property; or (xvii) any other matter. Without in any manner limiting the foregoing, Buyer hereby acknowledges and agrees that (i) Seller's Broker, has provided (and will hereafter provide) to Buyer various materials and information relating to the Property, including, without limitation, information and materials relating to the condition of the Property, and (ii) all such materials and information so provided to Buyer by Seller's Broker shall, for all purposes of this Agreement, be deemed to have been disclosed to Buyer by the Seller, as well.

12.    BROKERS. Brokers and agents herein have not and will not perform any inspections, investigations, or due diligence on behalf of Buyer unless otherwise specified herein. Buyer is informed that Buyer must arrange for any inspections and investigations desired by Buyer utilizing suitable third party professionals selected and compensated by Buyer. In no event shall Seller have any liability or responsibility for any representation, warranty, statement made, or information furnished by Brokers or agents herein, or any other person or entity, concerning the Property, this Agreement, or any other matter, unless expressly set forth in writing and signed personally by Seller.

13.    OPPORTUNITY TO INSPECT; BUYER'S SOLE RELIANCE. Buyer represents, warrants, acknowledges, and agrees that Buyer has been given the opportunity to inspect and investigate the Property and all other facts and circumstances deemed by Buyer relevant and significant, and to review information and documentation affecting the Property. In deciding to proceed with the sale, Buyer is relying solely on Buyer's own inspections and investigation of the Property (including by any outside professionals whom Buyer has elected to engage for such services) and review of such information and documentation, and not on any information provided or to be provided by Seller. Buyer further acknowledges and agrees that any information made available to Buyer or provided or to be provided by or on behalf of Seller with respect to the Property was obtained from a variety of sources and that neither Seller nor the Brokers and agents herein nor any other person has made or makes any representations as to the accuracy or completeness of such information. Buyer hereby fully and irrevocably releases all

Page 5 of 8

such sources and preparers of information and documentation affecting the Property which were retained or engaged by Seller or Brokers or agents from any and all claims that Buyer may now or hereafter have against such sources and preparers of information, for any costs, expenses, losses, liabilities, damages, demands, actions, or causes of action arising from any such information or documentation. NEITHER SELLER NOR BROKERS HAVE PROVIDED OR WILL PROVIDE ANY LEGAL OR TAX ADVICE TO BUYER. Buyer is informed that Buyer must obtain any such advice, if desired by Buyer, from independent professionals selected and engaged by Buyer.

    14.    PHYSICAL, GEOLOGICAL, PEST CONTROL, AND ENVIRONMENTAL INSPECTIONS AND INVESTIGATIONS.

    A.    BUYER SHALL CONDUCT THOROUGH PHYSICAL, GEOLOGICAL, PEST CONTROL, AND ENVIRONMENTAL INSPECTIONS AND INVESTIGATIONS OF THE PROPERTY AS MAY BE DETERMINED BY BUYER, THROUGH QUALIFIED PROFESSIONALS SELECTED BY BUYER. Seller and Brokers and agents herein strongly recommend that Buyer fully exercise and not waive such inspections and investigations.

    B.    Buyer shall select and employ, at Buyer's expense, a licensed engineer(s), architect(s), contractor(s), geologist(s), pest control licensee(s), environmental consultant(s), or other qualified professional(s) to make inspection(s) and investigations of the Property, including, but not limited to, (i) its general structure, plumbing, heating, air conditioning (if any), electrical system, built-in appliances, cesspool/sewer/septic system, well, roof, soils, foundation, mechanical systems, pool, spa, related equipment and filters, sprinklers, and those other matters affecting the desirability of the Property (all if and only to the extent any such structures, systems, and components are presently a part of the Property); (ii) any actual or potential wood destroying pests or other conditions damaging to the Property or any portion thereof; (iii) environmental hazards, substances, products, or conditions, including without limitation, asbestos, formaldehyde, lead, lead-based paint, contaminated soil or water, fuel, chemical storage tanks, hazardous waste, electromagnetic fields, and radon gas, any of which may constitute a health risk; (iv) the presence or absence of any required governmental permits, inspections, applications, approvals, and certificates of occupancy, and compliance or lack of compliance with building codes and laws applicable to the Property; (v) plans and specifications for the Property; (vi) all applicable zoning, municipal, county, state, and federal, including those affecting the past, current, or any future use of the Property; (vii) deed restrictions and other matters of public record which may govern, restrict, condition, or prohibit the use, alteration, or development of the Property; and (viii) generally, without limitation, any and all other items and matters of whatsoever nature, character, or description, which Buyer deems material to Buyer's interests, in, on, or affecting the Property; and to approve or disapprove said inspection within the period and in the manner set forth in this agreement.

    15.    COMPLETE AGREEMENT; NO OTHER REPRESENTATIONS OR WARRANTIES. Seller shall not be liable or bound in any manner by any oral or written statements, representations, or information pertaining to the Property or the operation thereof, furnished by any real estate broker, agent, employee, contractor, or other person. Buyer further acknowledges and agrees Seller has no obligations to make repairs, replacements or

1872910

improvements except as may otherwise be expressly stated herein. Without limiting any other provision hereof, Buyer represents, warrants and covenants to Seller that, except for Seller's express representations and warranties specified in this Agreement, Buyer is relying solely upon Buyer's own investigation of the Property.

16. **WRITTEN AFFIRMATION OF SELLER REQUIRED.** Buyer understands that Seller may continue to receive and respond to other offers on the Property and may be making several Counter-Offers concurrently containing the same or different terms. This Counter-Offer shall not be binding until accepted by Buyer and executed by Buyer and Seller on the signature page below; and then approved by Seller, in Seller's sole discretion, in the form of the Seller's Affirmation of Agreement attached hereto as Exhibit "A" which, if so executed by Seller, will constitute Seller's agreement that Seller will sell the Property to Buyer, subject to Bankruptcy Court approval, the rights of any overbidding parties, and the terms and conditions of this Agreement. Buyer further acknowledges that it would be imprudent and unrealistic to rely upon the expectation of entering into a binding agreement regarding the subject matter of this Counter-Offer prior to receipt of Seller's Affirmation of Agreement, and further represents to Seller that any efforts to complete due diligence, to negotiate or obtain financing, or to perform any of the obligations provided herein shall not be considered as evidence of binding intent without Seller's Affirmation of Agreement, and understands that BUYER'S ACCEPTANCE HEREOF SHALL HAVE NO FORCE OR EFFECT PRIOR TO BUYER'S RECEIPT OF SUCH AFFIRMATION OF AGREEMENT SIGNED BY SELLER.

17. **ATTORNEYS' FEES.** In the event that either party hereto brings an action or other proceeding to enforce or interpret the terms and provisions of this Agreement, the prevailing party in that action or proceeding shall be entitled to have and recover from the non-prevailing party all such fees, costs and expenses (including, without limitation, all court costs and reasonable attorneys' fees) as the prevailing party may suffer or incur in the pursuit or defense of such action or proceeding.

**EXPIRATION OF COUNTER-OFFER.** This Counter-Offer shall expire if not accepted by Buyer by delivering a copy hereof, fully signed and initialed by Buyer, to Seller on or before close of business August 17, 2017. Such acceptance shall nevertheless be subject to Paragraph 16.

AGREED AND ACCEPTED:

"BUYER"

Dated: _____     By: _____

                                     BRIAN DER MARTANIAN AND/OR ASSIGNEE

"SELLER" (subject to Paragraph 16)

Dated: _1 / 1 / 10 /2017_             _____
                                     David Seror, solely in his capacity as Chapter 7
                                     Trustee for the consolidated bankruptcy case of
                                     Owner Management Services, LLC

Page 7 of 8

1872910

43



**CALIFORNIA ASSOCIATION OF REALTORS®**

# BUYER COUNTER OFFER   No. 1
(C.A.R. Form BCO, 11/14)

Date _____ November 12, 2017

This is a counter offer to the: ☒ Seller Counter Offer No. _1_, ☐ Seller Multiple Counter Offer No. ___ , ☐ Other _____ ("Offer"),
dated _____ on property known as ___ 541 Cliff St, Glendale, CA 91202-1718 _____ ("Property"),
between _____ Brian Der Vartanian _____ ("Buyer") and, ___ as Chapter 7 trustee for the consolidated bankruptcy ___ ("Seller").

1. **TERMS:** The terms and conditions of the above referenced document are accepted subject to the following:

   A. Paragraphs in the Offer that require initials by all parties, but are not initialed by all parties, are excluded from the final agreement unless specifically referenced for inclusion in paragraph 1C of this or another Counter Offer or an addendum.

   B. Unless otherwise agreed in writing, down payment and loan amount(s) will be adjusted in the same proportion as in the original Offer.

   C. **OTHER TERMS:** The Purchase price for the property shall be One Million Two Hundred Thousand Dollars and no cents
   ($1,200,000.00) *PER TERMS OF COUNTER OFFER OTHER THAN PRICE* ☒ ☒ / BDV
   Seller is David Seror, Solely in his capacity as Chapter 7 Trustee for the consolidated bankruptcy case of Owner Management Services, LLC.

   _____
   _____
   _____
   _____

   D. The following attached addenda are incorporated into this Buyer Counter Offer: ☐ Addendum No. _____
   ☐ _____ ☐ _____

2. **EXPIRATION:** This Buyer Counter Offer shall be deemed revoked and the deposits, if any, shall be returned:

   A. Unless by 5:00PM on the 3rd Day After the date it is signed in paragraph 3 (if more than one signature then, the last signature date) or by _____ ☐ AM ☐ PM on _____ (date) (i) it is signed in paragraph 4 by Seller and (ii) a copy of the signed Buyer Counter Offer is personally received by Buyer or _____, who is authorized to receive it.

   OR B. If Buyer withdraws it in writing (CAR Form WOO) anytime prior to Acceptance.

3. **OFFER: BUYER MAKES THIS COUNTER OFFER ON THE TERMS ABOVE AND ACKNOWLEDGES RECEIPT OF A COPY.**

   Buyer _____ Brian Der Vartanian Date 11/12/2017
   Buyer _____ Date _____

4. **ACCEPTANCE:** I/WE accept the above Buyer Counter Offer (if checked ☐ SUBJECT TO THE ATTACHED COUNTER OFFER) and acknowledge receipt of a Copy.

   Seller _____ David Seror ? Solely for the consolidated Date 11/16/2017 Time _____ ☐ AM ☐ PM
   Seller _____ Owner Management Services LLC Date _____ Time _____ ☐ AM ☐ PM

**CONFIRMATION OF ACCEPTANCE:**

(BDV _____ ) (Initials) Confirmation of Acceptance: A Copy of Signed Acceptance was personally received by Buyer or Buyer's authorized agent as specified in paragraph 2A on (date) _11/20/17_ at _12:00_ ☐ AM ☐ PM. A binding Agreement is created when a Copy of Signed Acceptance is personally received by Buyer or Buyer's authorized agent whether or not confirmed in this document.

© 2014, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.

THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

BCO 11/14 (PAGE 1 OF 1)

Reviewed by _____ Date _____

## BUYER COUNTER OFFER (BCO PAGE 1 OF 1)

8.	MATERIAL CHANGE OF CONDITION.  In the event of any material change in the condition of the Property after the date of acceptance of this Counter-Offer, if Buyer demands repair of any resulting actual damage to the Property, Seller may, at Seller's sole option: (a) elect to terminate this Agreement, in which event Buyer's and Seller's obligations to buy or sell shall terminate and the full Deposit shall be refunded to Buyer; or (b) make required repairs at the bankruptcy estate's expense; or (c) assign any insurance proceeds for the damage to the Property to Buyer as of the close of the sale; or (d) credit the cost of such repairs to Buyer through escrow, it being agreed that in the event that Seller elects and complies with subpart 9(b), (c) or (d), Buyer's obligation to proceed with the Sale shall be unaffected by any such material change in the condition of the Property.

9.	REMEDY FOR BUYER'S OR SELLER'S FAILURE TO CLOSE.  Buyer's sole remedy in the event that the sale fails to close as a result of Seller's inability or failure to close for any reason, including but not limited to the reason of failure to obtain approval of the sale by the Bankruptcy Court, shall be the mutual release of Buyer's and Seller's obligations to buy or sell and a full refund of the Deposit (plus any increase thereof by Buyer).  In the event Buyer fails to close the sale for any reason other than Seller's default, after Buyer's contingencies have been removed as under Paragraphs 2 and 3, Buyer's Deposit (plus any increase, thereof by Buyer) shall be paid over to Seller and retained by Seller as liquidated damages without further legal action.  If the Property is a dwelling with no more than four units, one of which Buyer intends to occupy, then the amount retained shall be no more than three percent of the Purchase Price.  This provision shall apply equally to the Deposit (and any increase, thereof by Buyer).

_BW_ [Buyer's Initials]

10.	BANKRUPTCY COURT JURISDICTION.  The U.S. Bankruptcy Court for the Central District of California shall have sole and exclusive jurisdiction to interpret and enforce the terms of this Agreement and Buyer hereby consents and submits to such exclusive jurisdiction.  This Agreement shall be interpreted and enforced pursuant to the laws of the United States of America including the Bankruptcy Code, Title 11, United States Code.

11.	"AS-IS," "WHERE-IS" CONDITION; NO WARRANTIES.  Buyer acknowledges and agrees that, to the maximum extent permitted by law, the sale contemplated by this Agreement is made "as-is," "where-is," and "with all faults," except as specifically provided in this Agreement.  Seller and Brokers and agents herein have not made, do not make, and specifically negate and disclaim any representations, warranties, promises, covenants, agreements, or guaranties of any kind or character whatsoever, whether express or implied, oral or written,  concerning or respecting (i) value of the Property; (ii) income to be derived from the Property; (iii) suitability of the Property, or lack thereof for any activity or use which Buyer may intend to conduct thereon, including any possibilities or limitations for future development; (iv) habitability, merchantability, marketability, profitability, or fitness for a particular purpose, of the Property, or lack thereof; (v) manner, quality, state of repair, or lack of repair of the Property; (vi) nature, quality, or condition of the Property, or any portion, system, or component thereof, including without limitation, water, soil, and geology; (vii) compliance of the Property or its operation, or lack thereof, with any laws, ordinances, regulations, rules, or orders of any applicable governmental authority or body; (viii) manner or quality of engineering, design, construction or materials, if any, incorporated into the Property; (ix) compliance or lack of compliance with any land use, building and safety, or other laws, ordinances, regulations, rules,

Page 4 of 8

1872910

45

improvements except as may otherwise be expressly stated herein.  Without limiting any other provision hereof,  Buyer represents, warrants and covenants to Seller that, except for Seller's express representations and warranties specified in this Agreement, Buyer is relying solely upon Buyer's own investigation of the Property.

16.    **WRITTEN AFFIRMATION OF SELLER REQUIRED.**  Buyer understands that Seller may continue to receive and respond to other offers on the Property and may be making several Counter-Offers concurrently containing the same or different terms.  This Counter-Offer shall not be binding until accepted by Buyer and executed by Buyer and Seller on the signature page below; and then approved by Seller, in Seller's sole discretion, in the form of the Seller's Affirmation of Agreement attached hereto as Exhibit "A" which, if so executed by Seller, will constitute Seller's agreement that Seller will sell the Property to Buyer, subject to Bankruptcy Court approval, the rights of any overbidding parties, and the terms and conditions of this Agreement.  Buyer further acknowledges that it would be imprudent and unrealistic to rely upon the expectation of entering into a binding agreement regarding the subject matter of this Counter-Offer prior to receipt of Seller's Affirmation of Agreement, and further represents to Seller that any efforts to complete due diligence, to negotiate or obtain financing, or to perform any of the obligations provided herein shall not be considered as evidence of binding intent without Seller's Affirmation of Agreement, and understands that BUYER'S ACCEPTANCE HEREOF SHALL HAVE NO FORCE OR EFFECT PRIOR TO BUYER'S RECEIPT OF SUCH AFFIRMATION OF AGREEMENT SIGNED BY SELLER.

17.    **ATTORNEYS' FEES.**  In the event that either party hereto brings an action or other proceeding to enforce or interpret the terms and provisions of this Agreement, the prevailing party in that action or proceeding shall be entitled to have and recover from the non-prevailing party all such fees, costs and expenses (including, without limitation, all court costs and reasonable attorneys' fees) as the prevailing party may suffer or incur in the pursuit or defense of such action or proceeding.

**EXPIRATION OF COUNTER-OFFER.**  This Counter-Offer shall expire if not accepted by Buyer by delivering a copy hereof, fully signed and initialed by Buyer, to Seller on or before close of business August 17, 2017.  Such acceptance shall nevertheless be subject to Paragraph 16.

AGREED AND ACCEPTED:

"BUYER"

Dated:  11/27/17

By: _____

BRIAN DER KARTANIAN AND/OR ASSIGNEE.

"SELLER" (subject to Paragraph 16)

Dated:  11/10/2017

_____
David Seror, solely in his capacity as Chapter 7 Trustee for the consolidated bankruptcy case of Owner Management Services, LLC

Page 7 of 8

1872910

46

EXHIBIT "A"

SELLER'S AFFIRMATION OF AGREEMENT

Seller hereby acknowledges Buyer's acceptance of the foregoing Counter-Offer and affirmatively agrees to sell the Property to Buyer on the terms and conditions of the foregoing Agreement, but subject to Bankruptcy Court approval and rights any of overbidders. Seller shall revoke any other outstanding Counter-Offers made to other prospective buyers or make the same subject and subordinate to this agreement.

"SELLER"

Dated: _____

_____
David Seror, solely in his capacity as Chapter 7 Trustee
for the consolidated bankruptcy case of Owner Management Services, LLC

Page 8 of 8

# EXHIBIT B

# TITLE SNAPSHOT GRADE

**stewart title**®

4195 East Thousand Oaks Boulevard, Suite 107, Westlake Village, CA 91362
Main: (805) 367-5624 | Direct: (805) 367-5628



# D

**What does this grade mean?**
**A** = No title curative issues
**B** = Issues to pay or clear
**C** = Liens to clear
**D** = Title curative issues

**REO transactions only:**
**E** = REO curative issues
**R** = IRS curative issues

**Prepared On**
November 30, 2017

**Order Number**
CA0610-17001235-60

**Loan Number**

**Property Address**
631 Caleb Street
Glendale, CA 91202

## Title is Vested in

- 631 Caleb Trust; OMS Global, LLC as Trustee, subject to Item No.13 of Schedule B,

  Subject to proceedings pending in the bankruptcy court where a petition for relief was filed:

  Name of Debtor: OMS Global, LLC
  Date of Filing:  December 18, 2013
  U.S. District Court:  Central District of California (San Fernando Valley)
  Case No: ap-01394MT
  Disclosed by:  Chapter 7

## Issues to Pay or Clear at Closing

| Issue | Description |
|---|---|
| ■ **Possible Judgments and Lien(s)** | The record reflects one or more miscellaneous judgments and liens associated to the vested owner(s). Payoff or Subordination may be necessary. |
| ■ **Taxes Due** | Property taxes are currently due and payable. |
| ■ **Trust** | The Property is vested in a Trust.  A copy of the Trust Agreement and/or Certification of Trust may be required. |

## Liens to Clear/Potential Failure of Title

| Issue | Description |
|---|---|
| ■ **Bankruptcy** | The record reflects an open or recent Bankruptcy. Additional documentation may be required. |
| ■ **Active Senior Foreclosure** | A senior lien is foreclosing on the property. |
| ■ **Private Secured Lien(s)** | One or more unreleased Security Instruments in favor of a Private Party. Payoff or Subordination may be necessary. |
| ■ **Corporation, LLC, Partnership** | The vesting is in the name of a Corporation, LLC or Partnership.  Additional documentation may be required. |

# Questions

**For questions regarding this
Title Snapshot, please contact:**
Steve Lopez
(805) 367-5628
Steve.Lopez@stewart.com

The Title Snapshot is intended for informational purposes only.  It is not intended as a guaranty, affirmation, indemnification, or certification of any fact, insurance coverage or conclusion of law to any insured or party to a transaction.  No liability for reliance thereon is inferred, implied or expressed.

# stewart title®

4195 East Thousand Oaks Boulevard, Suite 107, Westlake Village, CA 91362
Main: (805) 367-5624 | Direct: (805) 367-5628

## PRELIMINARY REPORT

A & A Escrow Services, Inc.
415 N. Crescent Drive, Suite 320
Beverly Hills, CA 90210
Attn:  Antonia Delgado

Our Order:       CA0610-17001235-60
Escrow Ref:      104147-AA
Listing Agent Ref: 631 Caleb
**When Replying Please Contact:**
Stewart Title of California
4195 East Thousand Oaks Boulevard, Suite 107
Westlake Village, CA 91362
Attn:  Steve Lopez
(805) 367-5628

Todays Date:          November 30, 2017

**Property Address: 631 Caleb Street, Glendale, CA 91202**

In response to the application for a Policy of Title Insurance, Stewart Title of California hereby reports that it is prepared to issue, or cause to be issued, as of the date hereof, a Stewart Title Guaranty Company Policy or Policies of Title Insurance describing the land and the estate or interest therein hereinafter set forth, insuring against loss which may be sustained by reason of any defect, lien or encumbrance not shown or referred to as an exception herein and/or not excluded from coverage pursuant to the printed Schedules, Conditions and Stipulations of said Policy forms.

The printed Exceptions and Exclusions from the coverage and Limitations on Covered Risks of said Policy or Policies of Title Insurance are set forth in Exhibit B attached.  The policy to be issued may contain an arbitration clause.  When the Amount of Insurance is less than that set forth in the arbitration clause, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties.  Limitations on Covered Risks applicable to the CLTA and ALTA Homeowner's Policies of Title Insurance which establish a Deductible Amount and a Maximum Dollar Limit of Liability for certain coverages are also set forth in Exhibit B.  Copies of the Policy forms should be read.  They are available from the office which issued this report.

**Please read the exceptions shown or referred to herein and the exceptions and exclusions set forth in Exhibit B of this report carefully.  The exceptions and exclusions are meant to provide you with notice of matters which are not covered under the terms of the Policy or Policies of Title Insurance and should be carefully considered.**

**It is important to note that this preliminary report is not a written representation as to the condition of title and may not list all liens, defects and encumbrances affecting title to the land.**

This report (and any supplements or amendments hereto) is issued solely for the purpose of facilitating the issuance of a Policy or Policies of Title Insurance and no liability is assumed hereby.  If it is desired that liability be assumed prior to the issuance of a Policy or Policies of Title Insurance, a Binder or Commitment should be requested.

**Dated as of November 15, 2017, at 07:30 AM.**

Steve Lopez
Title Officer
Steve.Lopez@stewart.com

**The form of policy of title insurance contemplated by this report is:**
ALTA Loan Policy 2006 with ALTA Endorsement-Form 1 Coverage, ALTA Homeowner's Policy (12/02/13), or equivalent, Underwritten by: Stewart Title Guaranty Company

## SCHEDULE A

The estate or interest in the land hereinafter described or referred to covered by this Report is:

A Fee

Title to said estate or interest at the date hereof is vested in:

631 Caleb Trust; OMS Global, LLC as Trustee, subject to Item No.13 of Schedule B,

Subject to proceedings pending in the bankruptcy court where a petition for relief was filed:

Name of Debtor: OMS Global, LLC
Date of Filing:  December 18, 2013
U.S. District Court:  Central District of California (San Fernando Valley)
Case No: ap-01394MT
Disclosed by:  Chapter 7

The land hereinafter referred to is situated in the City of Glendale, County of Los Angeles, State of CA, and is described as follows:

Lot 11 of Tract 5415, in the City of Glendale, County of Los Angeles, State of California, as per map recorded in Book 131 Pages 85 through 87, inclusive of Maps, in the Office of the County Recorder of said County.

Except therefrom that portion of Lot 11, Tract 5415, as shown on Map recorded in Book 131 Pages 85 and 87 inclusive of Maps, in the Office of the County Recorder of said County, described as follows

Beginning at the Northeasterly corner of said Lot; thence along the Southeasterly line of said Lot, South 32 degrees 47 minutes 34 seconds West 50.00 feet; thence North 12 degrees 09 minutes 26 seconds West 42.33 feet to the Northerly line of said Lot; thence Easterly along said Northerly line to the place of beginning.

APN: 5630-010-038

## SCHEDULE B

At the date hereof, Exceptions to coverage, in addition to the printed Exception and Exclusions contained in said policy form would be as follows:

1.    General and Special City and/or County taxes, including any personal property taxes and any assessments collected with taxes, for the fiscal year 2017 - 2018:

| | | |
|---|---|---|
| 1st Installment: | $6,168.26 | Open |
| Penalty: | $616.82If not paid by December 10, 2017 | |
| 2nd Installment: | $6,168.26 | Open |
| Penalty: | $626.82If not paid by April 10, 2018 | |
| Exemption: | Not Set Out | |
| Code Area: | 04045 | |
| Assessment No. | 5630-010-038 | |

2.    Assessments, if any, for community facility districts affecting said land which may exist by virtue of assessment maps or notices filed by said districts.  Said assessments are collected with the County Taxes.

3.    The lien of supplemental taxes, if any, assessed pursuant to the provisions of Chapter 3.5 (commencing with Section 75) of the revenue and taxation code of the State of California.

4.    Water rights, claims or title to water in or under said land, whether or not shown by the public records.

5.    Such rights or easements in favor of the city of los angeles, as Successor to los angeles gas and electric corporation, affecting the portion of said land herein stated, for pole lines, conduits and incidental purposes, disclosed by a declaration by the department of Water and power of said city:

Recorded: of deeds
Book: 3611
Page: 28
Affects: said land

6.    An easement or other provisions for the purposes shown below and rights incidental thereto as shown on the recorded map:

| | |
|---|---|
| Subdivision: | Tract 5415 |
| Purpose: | Public Utilities |
| Affects: | As Delineated Thereon |

7.    An easement affecting the portion of said land for the purpose shown below and rights incidental thereto as set forth in a document:

| | |
|---|---|
| Purpose: | Public Utilities |
| Recorded: | in Book 6783 and Page 236, of Official Records. |
| Affects: | Said Land |

No representation is made as to the present ownership of said easement.

8.    Covenants, conditions and restrictions (Restrictions, if any, based on race, color, religion, sex, handicap, familial status or national origin are deleted.) as set forth in the document referred to in the numbered item last above shown.

Said covenants, conditions, and restrictions provide that a violation thereof shall not defeat or render invalid the lien of any mortgage or deed of trust made in good faith and for value.

9.    An easement affecting the portion of said land for the purpose shown below and rights incidental thereto as set forth in a document:

| | |
|---|---|
| Purpose: | Public Utilities |
| Recorded: | in Book D2078 and Page 928, of Official Records. |
| Affects: | The Southerly 5 Feet |

No representation is made as to the present ownership of said easement.

10.    An easement affecting the portion of said land for the purpose shown below and rights incidental thereto as set forth in a document:
Purpose:        Pole Lines
Recorded:       February 25, 1965 as Instrument Number 3754, of Official Records.
Affects:        A Portion of Lot 11

No representation is made as to the present ownership of said easement.

11.    Deed of Trust to secure an indebtedness in the amount shown below, and any other obligations secured thereby:
Amount:         $150,000.00
Dated:          January 2, 2004
Trustor:        Alfred Gregorian
Trustee:        American Title Company, a California corporation
Beneficiary:    La Vista Properties
Recorded:       February 24, 2004 as Instrument Number 04 0426500 of Official Records.

   a.    To avoid delays at the time of closing, please submit the original note, deed of trust and request for reconveyance to this office, at least one week prior to the close of escrow.

12.    Deed of Trust to secure an indebtedness in the amount shown below, and any other obligations secured thereby:
Amount:         $1,000,000.00
Dated:          September 6, 2006
Trustor:        Ronald J, Kinsling, a single man
Trustee:        California Reconveyance Company, a California Corp
Beneficiary:    Washington Mutual Bank
Recorded:       September 12, 2006 as Instrument Number 06 2026012 of Official Records.

   a.    By mesne assignments of record, the beneficial interest under said deed of trust was assigned to:
Assignee: U.S. Bank National Association as Trustee, Successor in Interest to Bank of America, National Association as Trustee Successor by Merger to LaSalle Bank, National Association as Trustee for WaMu Mortgage Pass- Through Certificates, Series 2006-AR15 Trust
Mailing Address:  c/o J.P. Morgan Chase Bank, N.A. 780 Delta Drive LA4-1040 Monroe, LA 71203
Loan No.:  Not Set Out
Dated:  December 10, 2015
Last Recorded Assignment:  December 31, 2015 as Instrument Number 20151648904 of Official Records.

   b.    A Substitution of Trustee under said deed of trust which names as the substituted trustee, the following
Trustee:        MTC Financial Inc. dba Trustee Corps
Recorded:       February 2, 2016 as Instrument Number 20160117570, of official records.

   c.    A Notice of Default under the terms of said deed of trust
Executed by: MTC Financial Inc. dba Trustee Corps as duly Appointed Successor Trustee
Recorded: February 2, 2016 as Instrument Number 20160117571 of Official Records.

   d.    A Notice of Trustee's Sale recorded June 6, 2016 as Instrument Number 20160645088 of  Official Records executed pursuant to the Deed of Trust recorded September 12, 2006 as Instrument Number 06-2026012 of  Official Records.

13.    The effect of a deed
Dated:     March 12, 2012
Grantor:   Global Asset Holdings Corp.
Grantee:   631 Caleb Trust; OMS Global, LLC as Trustee
Recorded:  March 14, 2012 as Instrument Number 20120395225, of official records.
The Company is not willing to divest the interest of Global Asset Holdings Corp.. An inquiry of the parties shall be required prior to the issuance of any policy of title insurance.
In order to complete this report, the company **requires** a signed and notarized Affidavit from the above stated Grantor.  The blank Affidavit form is attached to this report for your convenience.

a.    This Company will require the following documents in order to insure a conveyance or encumbrance by corporation or un incorporated association names below:
Corporation: Global Asset Holdings Corp.
(a) A copy of the corporation By-Laws or Articles.
(b) An original or certified copy of the Resolution authorizing the subject transaction.
(c) If the Articles or By-Laws require approval by a "parent" organization, we will also require a copy of those By-Laws or Articles.
(d) If an unincorporated association, a statement pursuant to any applicable State law. The right is reserved to add requirements or additional items after completion of such review.

14.    Deed of Trust to secure an indebtedness in the amount shown below, and any other obligations secured thereby:
Amount:         $100,000.00
Dated:          March 13, 2012
Trustor:        631 Caleb Trust; OMS Global, LLC as Trustee
Trustee:        West Side Servicing Company
Beneficiary:    CD-04, Inc.
Recorded:       March 14, 2012 as Instrument Number 20120395226 of Official Records.

a.    The above security instrument is reflected as an equity line loan or a revolving line of credit.  Said instrument must be closed or subordinated at or prior to closing.

15.    A lien for unsecured property taxes filed by the tax collector of the county shown, for the amount set forth, and any other amounts due:
County:         Los Angeles
Fiscal Year:    2014-2015
Taxpayer:       OMS Global LLC
County ID:      14308-26100
Number:         14/40757743
Amount:         $82.81
Recorded:       December 3, 2014 at Instrument Number 20141299073, of official records.

16.    An Abstract of judgment recorded September 2, 2015 as  Instrument No. 20151085554, of official records:
Case No.:   14UA3146
Entry Date: July 30, 2015
Debtor:     OMS Global, LLC as Successor Trustee of the 57th Trust
Creditor:   Enchantee Lanice Minor
Amount:     $2,200.00 and any other amounts due thereunder.

17.    A lien for unsecured property taxes filed by the tax collector of the county shown, for the amount set forth, and any other amounts due:
County:         Los Angeles
Fiscal Year:    2015-2016
Taxpayer:       OMS Global, LLC
County ID:      15316-24507
Number:         15/40693521
Amount:         $200.22
Recorded:       December 8, 2015 at Instrument Number 20151535741, of official records.

18.    A tax lien for the amount shown, and any other amounts due, in favor of the State of California:
Amount:         $451.80
Filed by:       State of California Employment Development Department
Taxpayer:       OMS Global, LLC
Certificate No: G001189700
Recorded:       February 1, 2016 as Instrument Number 20160111640 of Official Records

19.    A tax lien for the amount shown, and any other amounts due, in favor of the State of California:
Amount:         $4,338.07
Filed by:       State of California Employment Development Department
Taxpayer:       OMS Global, LLC
Certificate No: G001314775
Recorded:       July 13, 2016 as Instrument Number 20160815275 of Official Records

20.    A lien for unsecured property taxes filed by the tax collector of the county shown, for the amount set forth, and any other amounts due:

County:            Los Angeles
Fiscal Year:       2016-2017
Taxpayer:          OMS Global LLC
County ID:         16312-24522
Number:            16/40685232
Amount:            $196.92
Recorded:          December 7, 2016 at Instrument Number 20161544499, of official records.

21.    If title is to be insured in the trustee(s) of a trust or their act is to be insured, we will require a full copy of the trust agreement and any amendments thereto.  In certain situations the Company may accept a Trustee certificate pursuant to Section 18100.5 of the California Probate Code for the trust agreement.  The Company reserves the right to except additional items and/or make additional requirements after reviewing said documents.

Name of Trust: 631 Caleb Trust

22.    Prior to the issuance of any policy of title insurance, the Company will require the following with respect to OMS Global LLC, a limited liability company:
(1) A copy of its operating agreement and any amendments thereto must be submitted to the Company for review.
(2) A certified copy of its articles of organization (LLC-1), any certificate of correction (LLC-11), certificate of amendment (LLC-2), or restatement of articles of organization (LLC-10) must be submitted to the Company for review.
(3) With respect to any deed, deed of trust, lease, subordination agreement or other document or instrument executed by such limited liability company and presented to the Company for recording or upon which the Company is asked to rely, such document or instrument must be executed in accordance with the following:
   (a) If the limited liability company properly operates through officers appointed or elected pursuant to the terms of the written operating agreement, such document or instrument must be executed by at least two duly elected or appointed officers as follows:  the chairman of the board, the president, vice president, and any secretary, assistant secretary, the chief financial officer or any assistant treasurer.
   (b) If the limited liability company properly operates through a manager or managers identified in the articles of organization and/or duly elected pursuant to the terms of a written operating agreement, such document or instrument must be executed by at least two such managers or by one manager if the limited liability company properly operates with the existence of only one manager.
(4) Other requirements which the Company may impose following its review of the material required herein and other information which the Company may require.

23.    This Company will require the following documents for review prior to the issuance of any title assurance predicated upon a conveyance or encumbrance by the suspended corporation named below.
Suspended LLC: OMS Global LLC, a limited liability company:

(a) A Certificate of Revivor,
(b) A Certificate of Relief from Voidability; and
(c) Comfirmation that there now in good standing and authorized to do business in the State or Country where the said Corporation was formed.

The Company reserves the right to add additional items or make further requirements after review of the requested documentation.

24.    In order to complete this report, this Company requires a Statement of Information to be completed by the following party(ies),

Party(ies): All Parties

The Company reserves the right to add additional items or make further requirements after review of the requested Statement(s) of Information.

**END OF SCHEDULE B**

# stewart title®

4195 East Thousand Oaks Boulevard, Suite 107, Westlake Village, CA 91362
Main: (805) 367-5624 | Direct: (805) 367-5628

Attn:

**Borrower:  Brian Der Vartanian**

**Lenders Supplemental Report to Preliminary Report**

The Preliminary Report (including any supplements or amendments thereto) to which this is attached is hereby modified and/or supplemented in order to reflect the following additional items relating to the issuance of an American Land Title Association loan policy form as follows:

A.     This report is preparatory to this issuance of an American Land Title Association loan policy of title insurance . This report discloses nothing, which would preclude the issuance of said American Land Title Association loan policy of title insurance with endorsement No. 100 attached thereto.

B.     The improvements on said land are designated as:

Single Family   *(Residential)*

631 Caleb Street, in the City of Glendale, County of Los Angeles, State of California.

C.     Pursuant to information provided to Stewart Title of California as of the date hereinabove, the proposed insured loan amount is $1.00 with the proposed insured lender being .

D.     The only conveyance(s) affecting said land recorded with 24 months of the date of this report are as follows:

NONE

| Lenders Supplemental Report | Created: 11/30/2017 | CA0610-17001235-60 |

# stewart title®

4195 East Thousand Oaks Boulevard, Suite 107, Westlake Village, CA 91362
Main: (805) 367-5624 ┊ Direct: (805) 367-5628

## Notes and Requirements Section

Note 1:  On July 1, 1985, Assembly Bill 3132 became effective.  Assembly Bill 3132 adds and repeals portions of Sections 480.3 and 480.4 of the Revenue and Taxation Code of the State of California.

The act requires the County Assessor and/or Recorder to make available a statutorily prescribed form entitled "Preliminary Change of Ownership Report".  Said report must be completed by the buyer and filed concurrently with the recordation of the documents evidencing the change of ownership.  Failure to present the Change of Ownership Report at the time of recordation will cause the County Recorder to charge an additional $20.00 penalty recording fee.  The fee cannot be charged if the transfer document is accompanied by the affidavit stating that the buyer/transferee is not a resident of the State of California.  This report is for official use only and is not open to public inspection.

For further information, contact the Change of Ownership Section in the Assessor's Office located in the County of said property or the County Recorder's Office located in the County of said property.

Note 2:  Attached are Privacy Policy Notices in compliance with the Gramm-Leach-Bliley Act (GLBA) effective July 1, 2001.  Please review said Notices regarding personal information.

Note 3:  The map attached hereto may or may not be a survey of the land depicted thereon.  You should not rely upon it for any purpose other than orientation to the general location of the parcel or parcels depicted.  This company expressly disclaims any liability for alleged loss or damage which may result from reliance upon this map.

Note 4:  The only conveyance(s) affecting said land recorded with 24 months of the date of this report are as follows:

NONE

Note 5:  Additional Requirements for "Short Sale" Transactions in which a lender will accept less than the outstanding balance of its loan as full satisfaction of the obligation:

The Company will require, prior to the issuance of a policy of title insurance, evidence that the first-position trust deed holder has received and acknowledged all payments to be made to subordinate-position lien holders, regardless of whether such payments are to be made from proceeds or from contributions by real estate brokers and/or buyers in the subject transaction, or from other third-party sources. Evidence shall include but not be limited to: (a) a written demand from the first-position trust deed holder acknowledging and approving payments to subordinate position lien holders from proceeds and otherwise; or (b) a supplemental letter or amended demand from the first-position lien holder acknowledging payments to be made to subordinate lien holders from sources other than proceeds (including broker commissions and additional buyer deposits).

# stewart title®

4195 East Thousand Oaks Boulevard, Suite 107, Westlake Village, CA 91362
Main: (805) 367-5624  |  Direct: (805) 367-5628

## CALIFORNIA "GOOD FUNDS" LAW

California Insurance Code Section 12413.1 regulates the disbursement of escrow and sub-escrow funds by title companies. The law requires that funds be deposited in the title company escrow account and available for withdrawal prior to disbursement. Funds received by A & A Escrow Services, Inc. via wire transfer may be disbursed upon receipt. Funds received via cashier's checks or teller checks drawn on a California Bank may be disbursed on the next business day after the day of deposit. If funds are received by any other means, recording and/or disbursement may be delayed, and you should contact your title or escrow officer. All escrow and sub-escrow funds received will be deposited with other escrow funds in one or more non-interest bearing escrow accounts in a financial institution selected by A & A Escrow Services, Inc.. A & A Escrow Services, Inc. may receive certain direct or indirect benefits from the financial institution by reason of the deposit of such funds or the maintenance of such accounts with the financial institution, and A & A Escrow Services, Inc. shall have no obligation to account to the depositing party in any manner for the value of, or to pay to such party, any benefit received by A & A Escrow Services, Inc.. Such benefits shall be deemed additional compensation to A & A Escrow Services, Inc. for its services in connection with the escrow or sub-escrow.  If any check submitted is dishonored upon presentation for payment, you are authorized to notify all principals and/or their respective agents of such nonpayment.

# Stewart Title Guaranty Company Privacy Notice
# Stewart Title Companies

## WHAT DO THE STEWART TITLE COMPANIES DO WITH YOUR PERSONAL INFORMATION?

Federal and applicable state law and regulations give consumers the right to limit some but not all sharing. Federal and applicable state law regulations also require us to tell you how we collect, share, and protect your personal information. Please read this notice carefully to understand how we use your personal information. This privacy notice is distributed on behalf of the Stewart Title Guaranty Company and its title affiliates (the Stewart Title Companies), pursuant to Title V of the Gramm-Leach-Bliley Act (GLBA).

The types of personal information we collect and share depend on the product or service that you have sought through us. This information can include social security numbers and driver's license number.

All financial companies, such as the Stewart Title Companies, need to share customers' personal information to run their everyday business—to process transactions and maintain customer accounts. In the section below, we list the reasons that we can share customers' personal information; the reasons that we choose to share; and whether you can limit this sharing.

| Reasons we can share your personal information. | Do we share | Can you limit this sharing? |
|---|---|---|
| **For our everyday business purposes**— to process your transactions and maintain your account. This may include running the business and managing customer accounts, such as processing transactions, mailing, and auditing services, and responding to court orders and legal investigations. | Yes | No |
| **For our marketing purposes** — to offer our products and services to you. | Yes | No |
| **For joint marketing with other financial companies** | No | We don't share |
| **For our affiliates' everyday business purposes**— information about your transactions and experiences. Affiliates are companies related by common ownership or control. They can be financial and non-financial companies. *Our affiliates may include companies with a Stewart name; financial companies, such as Stewart Title Company* | Yes | No |
| **For our affiliates' everyday business purposes**— information about your creditworthiness. | No | We don't share |
| **For our affiliates to market to you –** For your convenience, Stewart has developed a means for you to opt out from its affiliates marketing even though such mechanism is not legally required. | Yes | Yes, send your first and last name, the email address used in your transaction, your Stewart file number and the Stewart office location that is handling your transaction by email to optout@stewart.com or fax to 1-800-335-9591. |
| **For non-affiliates to market to you.** Non-affiliates are companies not related by common ownership or control. They can be financial and non-financial companies. | No | We don't share |

We may disclose your personal information to our affiliates or to non-affiliates as permitted by law. If you request a transaction with a non-affiliate, such as a third party insurance company, we will disclose your personal information to that non-affiliate.  [We do not control their subsequent use of information, and suggest you refer to their privacy notices.]

## SHARING PRACTICES

| | |
|---|---|
| **How often do the Stewart Title companies notify me about their practices?** | We must notify you about our sharing practices when you request a transaction. |
| **How do the Stewart Title Companies protect my personal information?** | To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer, file, and building safeguards. |
| **How do the Stewart Title Companies collect my personal information?** | We collect your personal information, for example, when you<br>• request insurance-related services<br>• provide such information to us<br>We also collect your personal information from others, such as the real estate agent or lender involved in your transaction, credit reporting agencies, affiliates or other companies. |
| **What sharing can I limit?** | Although federal and state law give you the right to limit sharing (e.g., opt out) in certain instances, we do not share your personal information in those instances. |

**Contact us: If you have any questions about this privacy notice, please contact us at: *Stewart Title Guaranty Company, 1980 Post Oak Blvd., Privacy Officer, Houston, Texas 77056***

Revised 11-19-2013

# stewart title®

4195 East Thousand Oaks Boulevard, Suite 107, Westlake Village, CA 91362
Main: (805) 367-5624 | Direct: (805) 367-5628

## AFFILIATED BUSINESS ARRANGEMENT DISCLOSURE STATEMENT

Date:           November 30, 2017

Order No.:      CA0610-17001235-60

Property:       631 Caleb Street, Glendale, CA 91202

From:           A & A Escrow Services, Inc.

This is to give you notice that Stewart Title of California, Inc. ("Stewart Title") has a business relationship with Stewart Solutions, LLC, DBA - Stewart Specialty Insurance Services, LLC ("Stewart Insurance"). Stewart Information Services Corporation owns 100% of Stewart Insurance and Stewart Title of California. Because of this relationship, this referral may provide Stewart Title a financial or other benefit.

Set forth below is the estimated charge or range of charges for the settlement services listed. You are NOT required to use the listed provider(s) as a condition for purchase, sale, or refinance of the subject Property. THERE ARE FREQUENTLY OTHER SETTLEMENT SERVICE PROVIDERS AVAILABLE WITH SIMILAR SERVICES. YOU ARE FREE TO SHOP AROUND TO DETERMINE THAT YOU ARE RECEIVING THE BEST SERVICES AND THE BEST RATE FOR THESE SERVICES.

| Stewart Insurance Settlement Service | Charge or range of charges |
| --- | --- |
| Hazard Insurance | $400.00 to $6,500.00 |
| Home Warranty | $255.00 to $ 780.00 |
| Natural Hazard Disclosure Report | $ 42.50 to $ 149.50 |

# stewart title®

4195 East Thousand Oaks Boulevard, Suite 107, Westlake Village, CA 91362
Main: (805) 367-5624 | Direct: (805) 367-5628

## FOR TRANSACTIONS WHERE STEWART
## TITLE OF CALIFORNIA IS NOT CLOSING ESCROW

Order Number:            CA0610-17001235-60
Subject Property Address: 631 Caleb Street, Glendale, CA 91202
                         APN: 5630-010-038

## ACKNOWLEDGMENT OF RECEIPT, UNDERSTANDING
## AND APPROVAL OF "AFFILIATED BUSINESS
## ARRANGEMENT DISCLOSURE STATEMENT" AND
## "STG PRIVACY NOTICE FOR STEWART TITLE COMPANIES"

The undersigned hereby acknowledge that I/we have received, read, understand and approve Stewart Title of California, Inc.'s "Affiliated Business Arrangement Disclosure Statement" and "STG Privacy Notice for Stewart Title Companies", provided to me/us in connection with the above captioned matter.

Read and signed on _____     _____

                                            Brian Der Vartanian

Affiliated Business Arrangement Disclosure | Created: 11/30/2017 | CA0610-17001235-60

# STEWART TITLE®

4195 East Thousand Oaks Boulevard, Suite 107, Westlake Village, CA 91362
Main: (805) 367-5624 | Direct: (805) 367-5628

## AVAILABLE DISCOUNTS DISCLOSURE STATEMENT

This is to give you notice that Stewart Title of California, Inc. ("Stewart Title") is pleased to inform you that upon proper qualification, there are premium discounts available upon the purchase of title insurance covering improved property with a one to four family residential dwelling.

Such discounts apply to and include:

Property located within an area proclaimed a state or federal disaster area;

Property purchased from a foreclosing beneficiary or successful bidder at a foreclosure sale;

Property being refinanced.

Please talk with your escrow or title officer to determine your qualification for any of these discounts.

**EXHIBIT A**
Legal Description

The land hereinafter referred to is situated in the City of Glendale, County of Los Angeles, State of CA, and is described as follows:

Lot 11 of Tract 5415, in the City of Glendale, County of Los Angeles, State of California, as per map recorded in Book 131 Pages 85 through 87, inclusive of Maps, in the Office of the County Recorder of said County.

Except therefrom that portion of Lot 11, Tract 5415, as shown on Map recorded in Book 131 Pages 85 and 87 inclusive of Maps, in the Office of the County Recorder of said County, described as follows

Beginning at the Northeasterly corner of said Lot; thence along the Southeasterly line of said Lot, South 32 degrees 47 minutes 34 seconds West 50.00 feet; thence North 12 degrees 09 minutes 26 seconds West 42.33 feet to the Northerly line of said Lot; thence Easterly along said Northerly line to the place of beginning.

APN: 5630-010-038



This map is for your aid in locating the subject property with reference to streets and other parcels.  While this map is believed to be correct, Stewart Title of California and subsequent insurance companies, assume no liability for any loss occurred by reason of reliance thereon.

# EXHIBIT B (05-06-16)

## CALIFORNIA LAND TITLE ASSOCIATION STANDARD COVERAGE POLICY – 1990 EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1. (a) Any law, ordinance or governmental regulation (including but not limited to building or zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien, or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

(b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

2. Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.

3. Defects, liens, encumbrances, adverse claims or other matters:
   a. whether or not recorded in the public records at Date of Policy, but created, suffered, assumed or agreed to by the insured claimant;
   b. not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;
   c. resulting in no loss or damage to the insured claimant;
   d. attaching or created subsequent to Date of Policy; or
   e. resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage or for the estate or interest insured by this policy.

4. Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with the applicable doing business laws of the state in which the land is situated.

5. Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.

6. Any claim, which arises out of the transaction vesting in the insured the estate of interest insured by this policy or the transaction creating the interest of the insured lender, by reason of the operation of federal bankruptcy, state insolvency or similar creditors' rights laws.

## EXCEPTIONS FROM COVERAGE - SCHEDULE B, PART I

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1. Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records.
   Proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the public records.
2. Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of the land or which may be asserted by persons in possession thereof.
3. Easements, liens or encumbrances, or claims thereof, which are not shown by the public records.
4. Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records.
5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the public records.
6. Any lien or right to a lien for services, labor or material not shown by the public records.

## CLTA/ALTA HOMEOWNER'S POLICY OF TITLE INSURANCE (12-02-13) EXCLUSIONS

In addition to the Exceptions in Schedule B, You are not insured against loss, costs, attorneys' fees, and expenses resulting from:

1. Governmental police power, and the existence or violation of those portions of any law or government regulation concerning:
   a. building;
   b. zoning;
   c. land use;
   d. improvements on the Land;
   e. land division;
   f. environmental protection.
   This Exclusion does not limit the coverage described in Covered Risk 8.a., 14, 15, 16, 18, 19, 20, 23 or 27.
2. The failure of Your existing structures, or any part of them, to be constructed in accordance with applicable building codes. This Exclusion does not limit the coverage described in Covered Risk 14 or 15.
3. The right to take the Land by condemning it. This Exclusion does not limit the coverage described in Covered Risk 17.
4. Risks:
   a. that are created, allowed, or agreed to by You, whether or not they appear in the Public Records;
   b. that are Known to You at the Policy Date, but not to Us, unless they are recorded in the Public Records at the Policy Date;
   c. that result in no loss to You; or
   d. that first occur after the Policy Date - this does not limit the coverage described in Covered Risk 7, 8.e., 25, 26, 27 or 28.
5. Failure to pay value for Your Title.
6. Lack of a right:
   a. to any land outside the area specifically described and referred to in paragraph 3 of Schedule A; and
   b. in streets, alleys, or waterways that touch the Land.
   This Exclusion does not limit the coverage described in Covered Risk 11 or 21.
7. The transfer of the Title to You is invalid as a preferential transfer or a fraudulent transfer or conveyance under federal bankruptcy.
8. Contamination, explosion, fire, flooding, vibration, fracturing, earthquake, or subsidence.
9. Negligence by a person or an Entity exercising a right to extract or develop minerals, water, or any other substances.

## LIMITATIONS ON COVERED RISKS

Your insurance for the following Covered Risks is limited on the Owner's Coverage Statement as follows:
* For Covered Risk 16, 18, 19, and 21 Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.
The deductible amounts and maximum dollar limits shown on Schedule A are as follows:

|                | Your Deductible Amount | Our Maximum Dollar Limit of Liability |
|----------------|------------------------|----------------------------------------|
| Covered Risk 16: | 1% of Policy Amount or $2,500.00 (whichever is less) | $10,000.00 |
| Covered Risk 18: | 1% of Policy Amount or $5,000.00 (whichever is less) | $25,000.00 |
| Covered Risk 19: | 1% of Policy Amount or $5,000.00 (whichever is less) | $25,000.00 |
| Covered Risk 21: | 1% of Policy Amount or $2,500.00 (whichever is less) | $5,000.00 |

## 2006 ALTA LOAN POLICY (06-17-06) EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees or expenses that arise by reason of:

1. (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
   (i) the occupancy, use, or enjoyment of the Land;
   (ii) the character, dimensions, or location of any improvement erected on the Land;
   (iii) the subdivision of land; or
   (iv) environmental protection;
   or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
   (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.
2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3. Defects, liens, encumbrances, adverse claims, or other matters
   (a) created, suffered, assumed, or agreed to by the Insured Claimant;
   (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
   (c) resulting in no loss or damage to the Insured Claimant;
   (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 13, or 14); or
   (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.
4. Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing business laws of the state where the Land is situated.
5. Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury or any consumer credit protection or truth-in-lending law.
6. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is
   (a) a fraudulent conveyance or fraudulent transfer, or
   (b) a preferential transfer for any reason not stated in Covered Risk 13(b) of this policy.
7. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the Insured Mortgage in the Public Records. This Exclusion does not modify or limit the coverage provided under Covered Risk 11(b).
The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

## EXCEPTIONS FROM COVERAGE

### PART I

This policy does not insure against loss or damage (and the company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1. (a) taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records.
   (b) Proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the public records.
2. Any facts, rights, interests, or claims that are not shown by the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by persons in possession of the Land.
3. Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.
4. Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records.
5. (a) unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the Public Records.
6. Any lien or right to a lien for services, labor or material not shown by the Public Records.

### PART II

In addition to the matters set forth in Part I of this Schedule, the Title is subject to the following matters, and the Company insures against loss or damage sustained in the event that they are not subordinate to the lien of the Insured Mortgage:

## 2006 ALTA OWNER'S POLICY (06-17-06) EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:
1.  (a)  Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
    (i)   the occupancy, use, or enjoyment of the Land;
    (ii)  the character, dimensions, or location of any improvement erected on the Land;
    (iii) the subdivision of land; or
    (iv)  environmental protection;
    or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
    (b)  Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.
2.  Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3.  Defects, liens, encumbrances, adverse claims, or other matters
    (a)  created, suffered, assumed, or agreed to by the Insured Claimant;
    (b)  not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became
    an Insured under this policy;
    (c)  resulting in no loss or damage to the Insured Claimant;
    (d)  attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 9 and 10); or
    (e)  resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.
4.  Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title as shown in Schedule A, is
    (a)  a fraudulent conveyance or fraudulent transfer; or
    (b)  a preferential transfer for any reason not stated in Covered Risk 9 of this policy.
5.  Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that
    vests Title as shown in Schedule A.
The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions fromCoverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following
Exceptions from Coverage:

## EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage (and the company will not pay costs, attorneys' fees or expenses) which arise by reason of:
1.  Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records.
    Proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the public records.
2.  Any facts, rights, interests or claims which are not shown by the public records but which could be ascertained by an inspection of the land or by making inquiry of persons in possession thereof.
3.  Easements, liens or encumbrances, or claims thereof, which are not shown by the public records.
4.  Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and that are not shown by the Public Records.
5.  (a) unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the public
    records.
6.  Any lien or right to a lien for services, labor or material not shown by the public records.

## ALTA EXPANDED COVERAGE RESIDENTIAL LOAN POLICY (04-02-15) EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys
fees or expenses which arise by reason of:
1.  a.  Any law, ordinance or governmental regulation (including but not limited to building and zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating to
    (i)   the occupancy, use, or enjoyment of the Land;
    (ii)  the character, dimensions or location of any improvement now or hereafter erected on the Land;
    (iii) the subdivision of land; or
    (iv)  environmental protection or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5, 6, 13(c), 13(d), 14 or 16.
    b.  Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 5, 6, 13(c), 13(d), 14 or 16.
2.  Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3.  Defects, liens, encumbrances, adverse claims or other matters:
    (a)  created, suffered, assumed or agreed to by the Insured Claimant;
    (b)  not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became
    an Insured under this policy;
    (c)  resulting In no loss or damage to the Insured Claimant;
    (d)  attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 16, 17, 18, 19, 20, 21, 22, 23, 24, 27 or 28); or
    (e)  resulting in loss or damage which would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.
4.  Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doingbusiness laws of the state where the Land is situated.
5.  Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury, or any consumer credit protection or truth-in-lending law. This
    Exclusion does not modify or limit the coverage provided in Covered Risk 26.
6.  Any claim of invalidity, unenforceability or lack of priority of the lien of the Insured Mortgage as to Advances or modifications made after the Insured has Knowledge that the vestee shown in Schedule A is no longer the owner of the estate
    o r interest covered by this policy.  This Exclusion does not modify or limit the coverage provided in Covered Risk 11.
7.  Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching subsequent to Date of Policy. This Exclusion does not modify or limit the coverage provided in Covered Risk 11(b) or
    25.
8.  The failure of the residential structure, or any portion of it, to have been constructed before, on or after Date of Policy in accordance with applicable building codes. This Exclusion does not modify or limit the coverage provided in Covered
    Risk 5 or 6.
9.  Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is
    (a)  a fraudulent conveyance or fraudulent transfer, or
    (b)  a preferential transfer for any reason not stated in Covered Risk 27(b) of this policy.
10  Contamination, explosion, fire, flooding, vibration, fracturing, earthquake, or subsidence.
11. Negligence by a person or an Entity exercising a right to extract or develop minerals, water, or any other substances.

| Exhibit B | Created: 11/30/2017 | CA0610-17001235-60 |
|---|---|---|

# Statement of Information (Confidential)

Note: This form is needed in order to eliminate judgments and liens against people with similar names

The street address of the property in this transaction is:    (if none, leave blank)

Address _____    City _____

Occupied by:    ☐ Owner    ☐ Tenants    ☐ Lessee    ☐ Single Residence    ☐ Multiple Residence    ☐ Commercial    ☐ Vacant Land

Any construction/improvements in last 6 months?    ☐ Yes    ☐ No    Is any portion of new loan to be used for improvements?    ☐ Yes    ☐ No

If yes, state nature of work done or contemplated _____

| *Party 1* | | | *Party 2* | | |
|---|---|---|---|---|---|
| First | Middle | Last | First | Middle | Last |
| Former last name(s), if any | | | Former last name(s), if any | | |
| Birthplace | | Birth Date | Birthplace | | Birth Date |
| Social Security No. | | Driver's License No. | Social Security No. | | Driver's License No. |

I ☐ am single ☐ am married ☐ Have a domestic partner                    I ☐ am single ☐ am married ☐ Have a domestic partner

Name of <u>current</u> spouse or domestic partner (if other than Party 2)                    Name of <u>current</u> spouse or domestic partner (if other than Party 1)

Name of <u>former</u> spouse/domestic partner (if none, write "none")                    Name of <u>former</u> spouse/domestic partner (if none, write "none")

## Marriage or Domestic Partnership Between Parties 1 and 2

Are Parties 1 & 2:    Married?_____    Domestic Partners? _____    Date of Marriage/Domestic Partnership:_____

## Party 1 – Occupations for Last 10 Years

| Present Occupation | Firm Name | Address | No. of Years |
|---|---|---|---|
| Prior Occupation | Firm Name | Address | No. of Years |

### Party 1 – Residences for Last 10 Years

| Number and Street | City and State | From | To |
|---|---|---|---|
| | | | |
| | | | |

## Party 2 – Occupations for Last 10 Years

| Present Occupation | Firm Name | Address | No. of Years |
|---|---|---|---|
| Prior Occupation | Firm Name | Address | No. of Years |

### Party 2 – Residences for Last 10 Years

| Number and Street | City and State | From | To |
|---|---|---|---|
| | | | |
| | | | |

Have any of the above parties owned or operated a business?    ☐ Yes    ☐ No    If so, please list names _____

I have never been adjudged, bankrupt nor are there any unsatisfied judgments or other matters pending against me which might affect my title to this property, except as follows: _____

The undersigned declare under penalty of perjury that the above information is true and correct.    (all parties must sign)

Date _____    Signature _____    Signature _____

Home Phone _____ Work Phone _____    Home Phone _____ Work Phone _____

Email Address _____    Email Address _____

# STEWART TITLE®

4195 East Thousand Oaks Boulevard, Suite 107, Westlake Village, CA 91362
Main: (805) 367-5624 | Direct: (805) 367-5628

Title Company:    Stewart Title of California
Title Order No.:   CA0610-17001235-60
Escrow Holder:    A & A Escrow Services, Inc.
Escrow No.:       CA0610-17001235-60

## CERTIFICATION OF TRUSTEES UNDER TRUST
### (California Probate Code Section 18100.5)

1.    Declarant(s), the currently acting Trustee(s) of the Trust, certify the existence of the following described Trust and facts regarding said Trust:

Name of Trust: _____

Made Under the Laws of the State of _____

Date of Execution of Trust: _____

The name of the Trustee(s) now qualified to act under the Trust instrument and who are the only qualified Trustee(s): _____

Settlor(s): _____

Social Security No. or Employer Identification No. _____

2.    Declarant(s) certify that if fewer than all currently acting Trustees are required to sign, the Trustee(s) named below are all those necessary to execute documents on behalf of the Trust:

Trustee(s) _____

_____

3.    Declarant(s) certify that the Trust is in full force and effect and has not been revoked, terminated, or otherwise amended in any manner which would cause the representation in this Certification to be incorrect, except as follows:

_____

_____

4.    The Trust is           ☐        irrevocable

                            ☐        revocable and the person(s) holding the power to revoke is/are:

_____

5.    The manner in which title to Trust assets is to be taken is:

_____

6.    Declarant(s) state that the above named trustee(s) is/are fully empowered to act for said trust and is/are properly exercising his/her/their authority under said Trust in negotiating for, contracting for, and executing these document(s).

_____

_____

7.    Declarant(s) state(s) that to the best of his/her/their knowledge, there are no claims, challenges of any kind or causes of action alleged, contesting or questioning the validity of the Trust or the trustee's authority to act for the trust.

This document is to be signed by all of the currently acting Trustees:

I declare that the statements contained herein are true and correct and are made under penalty of perjury, this _____ day of _____, 20_____.


_____          _____
Signature                                                          Address


_____          _____
Name (Type or Print)


_____          _____
Signature                                                          Address


_____          _____
Name (Type or Print)


Subscribed and sworn (or affirmed) before me on this _____ day of _____,
20_____, by _____, proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

Notary Signature: _____

Space below reserved for notary seal.

# stewart title®

,

Main: (877) 365-9365 | Direct:

|  |  |
|---|---|
| Date: | November 30, 2017 |
| Escrow No.: | CA0610-17001235-60 |
| Loan No.: | |
| Borrower(s): | 631 Caleb Trust / 631 Caleb Trust |
| Property Address: | 631 Caleb Street |
| | Glendale, CA 91202 |

Attn:  Line of Credit – Payoff Dept.

With regard to our  equity/credit line with the account number of , we hereby certify that:

**TO LENDER:**
I/We hereby request that the above referenced credit line account be FROZEN AND CLOSED as of the date of your receipt of this notice.  I/We contemplate payment in full of the Note secured by Trust Deed shortly through the above referenced escrow with A & A Escrow Services, Inc..  I/We agree NOT to request any advances on this account on or after the date of this letter. Upon payment in full by A & A Escrow Services, Inc., you are instructed to close the above referenced account and forward a reconveyance/release and/or satisfaction to the appropriate county recorder's office for recording.

**TO A & A Escrow Services, Inc.:**
I/We further warrant to A & A Escrow Services, Inc. that I/we, as of the date shown above, will no longer use the referenced credit line account and will immediately destroy all unused checks.

I/We fully understand and acknowledge that if funds from the referenced credit line account are advanced, for whatever purpose and/or reason, with or without my/our consent, that I/we will be held fully responsible to immediately deposit with A & A Escrow Services, Inc. sufficient funds to cover the advance(s).  In the event funds are remaining in escrow for the payment of the advance(s) in full or in part, A & A Escrow Services, Inc. is hereby instructed to utilize said funds until exhausted and make demand for the balance from me/us, if necessary.

I/We will be responsible for any and all charges, which are presented for payment, including charges presented after the requested demand is prepared.

If A & A Escrow Services, Inc. advances on my/our behalf, funds to payoff the Equity Line/Credit Line in full, I/We Agree, upon written demand, to promptly reimburse A & A Escrow Services, Inc..

Sincerely,

631 Caleb Trust / 631 Caleb Trust

BY:_____

**AFFIDAVIT - UNINSURED DEED**

*NOTE: Must be notarized by a notary who is an EMPLOYEE of the title or escrow company*

STATE OF _____  )
                                                          ) SS.
COUNTY OF _____  )

_____ of legal age, being first duly sworn, deposes and says that the following information and answers are true:

25.   I am the person who executed and delivered the deed dated _____ to _____, grantee, recorded on _____ as Instrument No. _____, Official Records of _____ County, _____, conveying title to the following described real property (the "Property"):

2.   Who is currently occupying the Property? _____.

3.   What is the approximate value of the Property? $_____.

4.   I received the following consideration for the deed: $_____ and/or other Property described as follows: _____.

5.   If the deed was a gift or I otherwise received no consideration for it, the reason I gave the Property away is: _____.

6.   Do you have an option to repurchase the Property? _____.  If so, please attach a copy of the agreement or documentation that gives you the right to repurchase.

7.   This Affidavit is made for the protection and benefit of the grantee, the grantee's successors and assigns, and for all other parties hereafter dealing with or who may acquire an interest in the Property, and for the purpose of inducing _____ ("Title Company") to insure title to the Property. I know that Title Company will rely on this Affidavit and would not insure title without this Affidavit.

Dated: _____              _____

                                                                    _____

Subscribed and sworn to (or affirmed) before me on this
_____ day of _____, _____, by
_____,
proved to me on the basis of satisfactory evidence to
be the person(s) who appeared before me.


Signature _____              (This area for notary stamp)

BOE-502-A  (P1) REV. 12 (05-13)

## PRELIMINARY CHANGE OF OWNERSHIP REPORT

To be completed by the transferee (buyer) prior to a transfer of subject property, in accordance with section 480.3 of the Revenue and Taxation Code.  A *Preliminary Change of Ownership Report* must be filed with each conveyance in the County Recorder's office for the county where the property is located.

NAME AND MAILING ADDRESS OF BUYER/TRANSFEREE
*(Make necessary corrections to the printed name and mailing address)*

Brian Der Vartanian
631 Caleb St
Glendale, CA 91202

| | |
|---|---|
| ASSESSOR'S PARCEL NUMBER | 5630-010-038 |
| SELLER/TRANSFEROR | 631 Caleb Trust / 631 Caleb Trust |
| BUYER'S DAYTIME TELEPHONE NUMBER | (   ) |
| BUYER'S EMAIL ADDRESS | |

STREET ADDRESS OR PHYSICAL LOCATION OF REAL PROPERTY
631 Caleb Street, Glendale, CA 91202

MAIL PROPERTY TAX INFORMATION TO (NAME)
Brian Der Vartanian

| ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|
| 631 Caleb St | Glendale | CA | 91202 |

☐ YES  ☐ NO  This property is intended as my principal residence.  If YES, please indicate the date of occupancy or intended occupancy.   MO ___ DAY ___ YEAR ___

### PART 1.  TRANSFER INFORMATION      *Please complete all statements.*

This section contains possible exclusions from reassessment for certain types of transfers.

YES NO

☐ ☐  A. This transfer is solely between spouses *(addition or removal of a spouse, death of a spouse, divorce settlement, etc.).*

☐ ☐  B. This transfer is solely between domestic partners currently registered with the California Secretary of State *(addition or removal of a partner, death of a partner, termination settlement, etc.).*

☐ ☐  *C. This is a transfer:  ☐ between parent(s) and child(ren)   ☐ from grandparent(s) to grandchild(ren).

☐ ☐  *D. This transfer is the result of a cotenant's death.  Date of death _____

☐ ☐  *E. This transaction is to replace a principal residence by a person 55 years of age or older.
Within the same county?  ☐ YES   ☐ NO

☐ ☐  *F. This transaction is to replace a principal residence by a person who is severely disabled as defined by Revenue and Taxation Code section 69.5.  Within the same county?  ☐ YES   ☐ NO

☐ ☐  G. This transaction is only a correction of the name(s) of the person(s) holding title to the property *(e.g., a name change upon marriage).*
If YES, please explain: _____

☐ ☐  H. The recorded document creates, terminates, or reconveys a lender's interest in the property.

☐ ☐  I. This transaction is recorded only as a requirement for financing purposes or to create, terminate, or reconvey a security interest *(e.g., cosigner).*  If YES, please explain: _____

☐ ☐  J. The recorded document substitutes a trustee of a trust, mortgage, or other similar document.

K. This is a transfer of property:

☐ ☐  1. to/from a revocable trust that may be revoked by the transferor and is for the benefit of
☐ the transferor, and/or   ☐ the transferor's spouse   ☐ registered domestic partner.

☐ ☐  2. to/from a trust that may be revoked by the creator/grantor/trustor who is also a joint tenant, and which names the other joint tenant(s) as beneficiaries when the creator/grantor/trustor dies.

☐ ☐  3. to/from an irrevocable trust for the benefit of the
☐ creator/grantor/trustor and/or   ☐ grantor's/trustor's spouse   ☐ grantor's/trustor's registered domestic partner.

☐ ☐  L. This property is subject to a lease with a remaining lease term of 35 years or more including written options.

☐ ☐  M. This is a transfer between parties in which proportional interests of the transferor(s) and transferee(s) in each and every parcel being transferred remain exactly the same after the transfer.

☐ ☐  N. This is a transfer subject to subsidized low-income housing requirements with governmentally imposed restrictions.

☐ ☐  *O. This transfer is to the first purchaser of a new building containing an active solar energy system.

* Please refer to the instructions for Part 1.

**Please provide any other information that will help the Assessor understand the nature of the transfer.**

---

**THIS DOCUMENT IS NOT SUBJECT TO PUBLIC INSPECTION**

BOE-502-A  (P2) REV. 12 (05-13)

**PART 2.  OTHER TRANSFER INFORMATION**      *Check and complete as applicable.*

A.   Date of transfer, if other than recording date: _____

B.   Type of transfer:

☐ Purchase    ☐ Foreclosure    ☐ Gift    ☐ Trade or exchange     ☐ Merger, stock, or partnership acquisition (Form BOE-100-B)

☐ Contract of sale.  Date of contract: _____       ☐ Inheritance.  Date of death: _____

☐ Sale/leaseback    ☐ Creation of a lease    ☐ Assignment of a lease    ☐ Termination of a lease.  Date lease began: _____

       Original term in years *(including written options)*: _____   Remaining term in years *(including written options)*: _____

☐ Other.  Please explain: _____

C.   Only a partial interest in the property was transferred.  ☐ YES   ☐ NO      If YES, indicate the percentage transferred: _____ %

**PART 3.  PURCHASE PRICE AND TERMS OF SALE**      *Check and complete as applicable.*

A.   Total purchase price.                                                 $_____

B.   Cash down payment or value of trade or exchange excluding closing costs        Amount $_____

C.   First deed of trust @_____% interest for _____ years.  Monthly payment $_____    Amount $_____

☐ FHA (____Discount Points)    ☐ Cal-Vet    ☐ VA (____Discount Points)    ☐ Fixed rate    ☐ Variable rate

☐ Bank/Savings & Loan/Credit Union    ☐ Loan carried by seller

☐ Balloon payment $_____      Due date: _____

D.   Second deed of trust @_____% interest for _____ years.  Monthly payment $_____    Amount $_____

☐ Fixed rate    ☐ Variable rate    ☐ Bank/Savings & Loan/Credit Union    ☐ Loan carried by seller

☐ Balloon payment $_____      Due date: _____

E.   Was an Improvement Bond or other public financing assumed by the buyer? ☐ YES   ☐ NO    Outstanding balance $_____

F.   Amount, if any, of real estate commission fees paid by the buyer which are not included in the purchase price      $_____

G.   The property was purchased: ☐ Through real estate broker.  Broker name: _____   Phone number: (____)_____

☐ Direct from seller    ☐ From a family member-Relationship _____

☐ Other. Please explain: _____

H.   Please explain any special terms, seller concessions, broker/agent fees waived, financing, and any other information (e.g., buyer assumed the existing loan balance) that would assist the Assessor in the valuation of your property. _____

**PART 4.  PROPERTY INFORMATION**      *Check and complete as applicable.*

A.   Type of property transferred

☐ Single-family residence                ☐ Co-op/Own-your-own            ☐ Manufactured home

☐ Multiple-family residence.  Number of units: _____    ☐ Condominium                ☐ Unimproved lot

☐ Other.  Description:  (i.e., timber, mineral, water rights, etc.)    ☐ Timeshare              ☐ Commercial/Industrial

     _____

B.   ☐ YES ☐ NO   Personal/business property, or incentives, provided by seller to buyer are included in the purchase price.  Examples of personal property are furniture, farm equipment, machinery, etc. Examples of incentives are club memberships, etc. Attach list if available.

     If YES, enter the value of the personal/business property:      $_____      Incentives $_____

C.   ☐ YES ☐ NO   A manufactured home is included in the purchase price.

     If YES, enter the value attributed to the manufactured home:      $_____

     ☐ YES ☐ NO   The manufactured home is subject to local property tax.  If NO, enter decal number: _____

D.   ☐ YES ☐ NO   The property produces rental or other income.

     If YES, the income is from:  ☐ Lease/rent   ☐ Contract   ☐ Mineral rights   ☐ Other: _____

E.   The condition of the property at the time of sale was:  ☐ Good    ☐ Average    ☐ Fair   ☐ Poor

     Please describe: _____

### CERTIFICATION

*I certify (or declare) that the foregoing and all information hereon, including any accompanying statements or documents, is true and correct to the best of my knowledge and belief.*

| SIGNATURE OF BUYER/TRANSFEREE OR CORPORATE OFFICER | DATE | TELEPHONE |
|---|---|---|
| ▶ | | (   ) |
| NAME OF BUYER/TRANSFEREE/LEGAL REPRESENTATIVE/CORPORATE OFFICER (PLEASE PRINT) | TITLE | E-MAIL ADDRESS |

The Assessor's office may contact you for additional information regarding this transaction.

# EXHIBIT C



**This page is part of your document - DO NOT DISCARD**



## 20151085554

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**09/02/15 AT 11:08AM**

FEES :

TAXES :

OTHER :

PAID :





**L E A D S H E E T**



201509020670017

**00011085146**



007058338

**SEQ:**
**02**

DAR - Counter (Upfront Scan)



**THIS FORM IS NOT TO BE DUPLICATED**

*E497906*

**RECORDING REQUEST BY**

Kevin Hermansen

**WHEN RECORDED MAIL TO**

NAME Basta, Inc.

MAILING ADDRESS 667 West Ave J.

CITY, STATE ZIP CODE Lancaster, CA 93534

SPACE ABOVE THIS LINE RESERVED FOR RECORDER'S

# TITLE(S)

Abstract of Judgment

EJ-001

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and telephone number)* |
|---|
| Recording requested by and return to |

Kevin Hermansen, SBN 266254
BASTA, Inc.
667 West Avenue J
Lancaster, CA 93534
(213) 736-5050

[✓] ATTORNEY FOR   [✓] JUDGMENT CREDITOR   [ ] ASSIGNEE OF RECORD

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS 42011 4th Street West
MAILING ADDRESS 42011 4th Street West
CITY AND ZIP CODE Lancaster, CA 93534
BRANCH NAME Antelope Valley Courthouse (North District)

*FOR RECORDER'S USE ONLY*

PLAINTIFF: OMS Global, LLC as Successor Trustee of the 57th Trust

DEFENDANT: Enchantee Lanice Minor

CASE NUMBER
14UA3146

**ABSTRACT OF JUDGMENT—CIVIL
AND SMALL CLAIMS**   [ ] Amended

*FOR COURT USE ONLY*

1. The [✓] judgment creditor [ ] assignee of record
   applies for an abstract of judgment and represents the following:
   a. Judgment debtor's

   Name and last known address

   ⊠ ┌─────────────────────────────────────────┐
      │ OMS Global, LLC as Successor Trustee of the │
      │ 57th Trust          7120 Carlson Cir. #363  │
      │                     Canoga Park, CA 91303   │
      └─────────────────────────────────────────┘

   b. Driver's license no. [last 4 digits] and state.   [✓] Unknown
   c. Social security no. [last 4 digits].              [✓] Unknown
   d. Summons or notice of entry of sister-state judgment was personally served or
      mailed to *(name and address):* N/A

2. [ ] Information on additional judgment
      debtors is shown on page 2.

3. Judgment creditor *(name and address)*
   Enchantee Lanice Minor c/o BASTA
   2500 Wilshire Blvd. Ste. 1050 LA CA 90057

Date: 08/25/15
Kevin Hermansen
_____
(TYPE OR PRINT NAME)

4. [ ] Information on additional judgment
      creditors is shown on page 2.

5. [ ] Original abstract recorded in this county
   a. Date:
   b. Instrument No.:

▶  _____
(SIGNATURE OF APPLICANT OR ATTORNEY)

6. Total amount of judgment as entered or last renewed
   $ 2,200.00

7. All judgment creditors and debtors are listed on this abstract.

8. a. Judgment entered on *(date):* 07/30/15
   b. Renewal entered on *(date):*

9. [ ] This judgment is an installment judgment.

10. [ ] An [ ] execution lien [ ] attachment lien
    is endorsed on the judgment as follows.
    a. Amount: $
    b. In favor of *(name and address):*

11. A stay of enforcement has
    a. [✓] not been ordered by the court.
    b. [ ] been ordered by the court effective until
           *(date):*

12. a. [✓] I certify that this is a true and correct abstract of
           the judgment entered in this action.
    b. [ ] A certified copy of the judgment is attached.

[SEAL]

Sherri R. Carter, Executive Officer/Clerk

This abstract issued on *(date):*

AUG 2 8 2015

Clerk, by _____, Deputy
M. S...

Form Adopted for Mandatory Use
Judicial Council of California
EJ-001 [Rev. January 1, 2008]

**ABSTRACT OF JUDGMENT—CIVIL
AND SMALL CLAIMS**

Code of Civil Procedure, §§ 488.480,
674

American LegalNet, Inc.
www.FormsWorkflow.com

| PLAINTIFF: OMS Global, LLC as Successor Trustee of the 57th Trust | CASE NUMBER |
|---|---|
| DEFENDANT· Enchantee Lanice Minor | 14UA3146 |

**NAMES AND ADDRESSES OF ADDITIONAL JUDGMENT CREDITORS:**

13. Judgment creditor *(name and address)·*

14. Judgment creditor *(name and address):*

15. ☐ Continued on Attachment 15.

**INFORMATION ON ADDITIONAL JUDGMENT DEBTORS:**

16. Name and last known address

17. Name and last known address

Driver's license no. [last 4 digits]
and state:                                     ☐ Unknown

Driver's license no. [last 4 digits]
and state.                                     ☐ Unk

Social security no. [last 4 digits]:     ☐ Unknown

Social security no. [last 4 digits].     ☐ Unk

Summons was personally served at or mailed to *(address):*

Summons was personally served at or mailed to *(addr*

18. Name and last known address

19. Name and last known address

Driver's license no [last 4 digits]
and state:                                     ☐ Unknown

Driver's license no. [last 4 digits]
and state:                                     ☐ Unk

Social security no. [last 4 digits]     ☐ Unknown

Social security no. [last 4 digits]     ☐ Unk

Summons was personally served at or mailed to *(address).*

Summons was personally served at or mailed to *(addr*

20. ☐ Continued on Attachment 20.

EJ-001 [Rev January 1, 2008]

**ABSTRACT OF JUDGMENT—CIVIL
AND SMALL CLAIMS**

Pag

# EXHIBIT D

B10 (Official Form 10) (04/13)

| UNITED STATES BANKRUPTCY COURT | PROOF OF CLAIM |
|---|---|

| Name of Debtor:<br><br>OMS Global, LLC | Case Number:<br><br>1:12-bk-10231-MT | **FILED**<br><br>**OCT 13 2015**<br><br>CLERK U.S. BANKRUPTCY COURT<br>CENTRAL DISTRICT OF CALIFORNIA<br>BY:_____ Deputy Clerk |

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

| | COURT USE ONLY |
|---|---|
| Name of Creditor (the person or other entity to whom the debtor owes money or property):<br>BASTA, Inc. (on behalf of | |
| Name and address where notices should be sent:<br>BASTA, Inc.<br>2500 Wilshire Boulevard, Suite 1050<br>Los Angeles, CA 90057<br><br>Telephone number:  (213) 736-5050   email:  kph.basta@gmail.com | ☐ Check this box if this claim amends a previously filed claim.<br><br>**Court Claim Number:**_____<br>    (*If known*)<br><br>Filed on:_____ |
| Name and address where payment should be sent (if different from above):<br>"BASTA, Inc."<br>2500 Wilshire Boulevard, Suite 1050<br>Los Angeles, CA 90057<br><br>Telephone number:  (213) 736-5050   email:  kph.basta@gmail.com | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars. |

**1. Amount of Claim as of Date Case Filed:**       $_____2,200.00_____

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☐ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:**  Superior Court Judgment
    (See instruction #2)

| **3. Last four digits of any number by which creditor identifies debtor:** | **3a. Debtor may have scheduled account as:**<br><br>(See instruction #3a) | **3b. Uniform Claim Identifier (optional):**<br><br>(See instruction #3b) |
|---|---|---|

**4. Secured Claim (See instruction #4)**
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** ☑ Real Estate  ☐ Motor Vehicle  ☐ Other
Describe:

**Value of Property:** $ unknown

**Annual Interest Rate**_____% ☐ Fixed  or  ☐ Variable
**(when case was filed)**

Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:

$_____

**Basis for perfection:**  Recorded Abstract

**Amount of Secured Claim:**  $_____2,200.00

**Amount Unsecured:**  $_____

**5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a).** If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

☐ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5).

☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(___).

**Amount entitled to priority:**

$_____

*Amounts are subject to adjustment on 4/01/16 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

B10 (Official Form 10) (04/13)
2

**7. Documents:** Attached are *redacted* copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**8. Signature:** (See instruction #8)

Check the appropriate box.

☐ I am the creditor.  ☑ I am the creditor's authorized agent.  ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)  ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name:  Kevin Hermansen
Title:  Attorney for Judgment Creditor
Company:  BASTA, Inc.
Address and telephone number (if different from notice address above):
2500 Wilshire Boulevard, Suite 1050
Los Angeles, CA 90057

_(Signature)_          _(Date)_  10/12/15

Telephone number  (213) 736-5050    email: kph.basta@gmail.com

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

---

**INSTRUCTIONS FOR PROOF OF CLAIM FORM**

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*
**Items to be completed in Proof of Claim form**

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the

claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest and documents required by FRBP 3001(c) for claims based on an open-end or revolving consumer credit agreement or secured by a security interest in the debtor's principal residence. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.



**This page is part of your document - DO NOT DISCARD**

## 20151085554





Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**09/02/15 AT 11:08AM**

Pages:
0004

| | |
|---|---|
| FEES: | 33.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 33.00 |



**L E A D S H E E T**



201509020670017

**00011085146**

007058338

**SEQ:**
**02**

**DAR - Counter (Upfront Scan)**



**THIS FORM IS NOT TO BE DUPLICATED**



RECORDING REQUEST BY

Kevin Hermansen

WHEN RECORDED MAIL TO

NAME Basta, Inc.

MAILING
ADDRESS 667 west Ave J.

CITY, STATE
ZIP CODE Lancaster, CA 93534

09/02/2015

*20151085554*

SPACE ABOVE THIS LINE RESERVED FOR RECORDER'S USE

# TITLE(S)

Abstract of Judgment

R428 6/94

**EJ-001**

ATTORNEY OR PARTY WITHOUT ATTORNEY *(name, state Bar number, and telephone number):*
Recording requested by and return to:

Kevin Hermansen, SBN 266254
BASTA, Inc.
667 West Avenue J
Lancaster, CA 93534
(213) 736-5050

[✓] ATTORNEY FOR  [✓] JUDGMENT CREDITOR  [ ] ASSIGNEE OF RECORD

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 42011 4th Street West
MAILING ADDRESS: 42011 4th Street West
CITY AND ZIP CODE: Lancaster, CA 93534
BRANCH NAME: Antelope Valley Courthouse (North District)

*FOR RECORDER'S USE ONLY*

PLAINTIFF: OMS Global, LLC as Successor Trustee of the 57th Trust

DEFENDANT: Enchantee Lanice Minor

| ABSTRACT OF JUDGMENT—CIVIL AND SMALL CLAIMS | [ ] Amended |
|---|---|

CASE NUMBER:
14UA3146

*FOR COURT USE ONLY*

1. The [✓] judgment creditor [ ] assignee of record
   applies for an abstract of judgment and represents the following:
   a. Judgment debtor's

   Name and last known address

   OMS Global, LLC as Successor Trustee of the
   57th Trust        7120 Carlson Cir. #363
                      Canoga Park, CA 91303

   b. Driver's license no. [last 4 digits] and state:        [✓] Unknown
   c. Social security no. [last 4 digits]:                    [✓] Unknown
   d. Summons or notice of entry of sister-state judgment was personally served or
      mailed to *(name and address):* N/A

2. [ ] Information on additional judgment debtors is shown on page 2.
3. Judgment creditor *(name and address):*
   Enchantee Lanice Minor c/o BASTA
   2500 Wilshire Blvd. Ste. 1050 LA CA 90057

   Date: 08/25/15
   Kevin Hermansen
   (TYPE OR PRINT NAME)

4. [ ] Information on additional judgment creditors is shown on page 2.
5. [ ] Original abstract recorded in this county:
   a. Date:
   b. Instrument No.:

   ▶ *(signature of applicant or attorney)*

6. Total amount of judgment as entered or last renewed:
   $ 2,200.00
7. All judgment creditors and debtors are listed on this abstract.
8. a. Judgment entered on *(date):* 07/30/15
   b. Renewal entered on *(date):*
9. [ ] This judgment is an installment judgment.

10. [ ] An [ ] execution lien [ ] attachment lien
    is endorsed on the judgment as follows:
    a. Amount: $
    b. In favor of *(name and address):*

11. A stay of enforcement has
    a. [✓] not been ordered by the court.
    b. [ ] been ordered by the court effective until
       *(date):*

12. a. [✓] I certify that this is a true and correct abstract of
          the judgment entered in this action.
    b. [ ] A certified copy of the judgment is attached.

[SEAL]

Sherri R. Carter, Executive Officer/Clerk

This abstract issued on *(date):*
AUG 2 8 2015

Clerk, by _____ M. STUDNICKI , Deputy

Form Adopted for Mandatory Use
Judicial Council of California
EJ-001 [Rev. January 1, 2008]

**ABSTRACT OF JUDGMENT—CIVIL AND SMALL CLAIMS**

Page 1 of 2
Code of Civil Procedure, §§ 488.480, 674, 700.190

American LegalNet, Inc.
www.FormsWorkflow.com

84

| PLAINTIFF: OMS Global, LLC as Successor Trustee of the 57th Trust | CASE NUMBER: |
|---|---|
| DEFENDANT: Enchantee Lanice Minor | 14UA3146 |

**NAMES AND ADDRESSES OF ADDITIONAL JUDGMENT CREDITORS:**

13. Judgment creditor *(name and address):*      14. Judgment creditor *(name and address):*

15. ☐ Continued on Attachment 15.

**INFORMATION ON ADDITIONAL JUDGMENT DEBTORS:**

16.    Name and last known address    17.    Name and last known address

Driver's license no. [last 4 digits] and state: ☐ Unknown

Social security no. [last 4 digits]: ☐ Unknown

Summons was personally served at or mailed to *(address):*

Driver's license no. [last 4 digits] and state: ☐ Unknown

Social security no. [last 4 digits]: ☐ Unknown

Summons was personally served at or mailed to *(address):*

18.    Name and last known address    19.    Name and last known address

Driver's license no. [last 4 digits] and state: ☐ Unknown

Social security no. [last 4 digits]: ☐ Unknown

Summons was personally served at or mailed to *(address):*

Driver's license no. [last 4 digits] and state: ☐ Unknown

Social security no. [last 4 digits]: ☐ Unknown

Summons was personally served at or mailed to *(address):*

20. ☐ Continued on Attachment 20.

**ABSTRACT OF JUDGMENT—CIVIL
AND SMALL CLAIMS**

EXHIBIT "E"

**BRUTZKUS GUBNER**
Brutzkus Gubner Rozansky Seror Weber LLP

YOUR COUNSEL MATTERS®
21650 Oxnard St., Suite 500
Woodland Hills, CA 91367-4911
818- 827-9000  Main
818- 827-9099  Fax
www.brutzkusgubner.com

Reed H. Bernet
(818) 827-9165  Direct
(818) 827-9065  Direct Fax
rbernet@brutzkusgubner.com

January 25, 2016

**VIA E-MAIL AND U.S. MAIL**

BASTA, Inc.
2500 Wilshire Boulevard, Suite 1050
Los Angeles, CA 90057
kph.basta@gmail.com

> Re:    **Owner Management Service, LLC**
>        **Claim 32**
>        **Our File No. 13336.0207**

Dear Mr. Hermansen:

I represent David Seror, the Chapter 7 Trustee ("Trustee") in the bankruptcy of Owner Management Service, LLC et al, case no. 1:12-bk-10231-MT. I am sending this letter to ask you to provide evidentiary support or withdraw the claim you filed in that case.

The Claim

On October 13, 2015, you filed Claim 32 ("Claim") in the above referenced bankruptcy case, listing the name of the debtor as "OMS Global, LLC." The name of the creditor is listed as "BASTA, Inc. (on behalf of" and does not indicate who BASTA Inc. is a creditor on behalf of. The Claim asserts a $2,200 secured claim on account of "Superior Court Judgment." In support, the Claim includes an abstract of judgment for $2,200, with the judgment debtors listed as "OMS Global, LLC as Successor Trustee of the 57th Trust" and the judgment creditor listed as "Enchantee Lanice Minor c/o BASTA" ("Abstract"). The Abstract was issued on August 28, 2015, and recorded on September 2, 2015.

> a.    The Claim Is Not Entitled To Prima Facia Validity

It is well established in the Ninth Circuit that the initial burden of persuasion for establishing the validity and amount of a proof of claim is upon the claimant. *Ashford v. Consolidated Pioneer Mortgage (In re Consolidated Pioneer Mortgage)*, 178 B.R. 222 (9th Cir. BAP 1995) (a claim must have a writing attached and otherwise be properly filed to qualify for presumptive validity). The prima facie validity of a claim does not attach unless the claim sets forth the facts necessary to support the claim. *Id.* at 226.

Bankruptcy Code section 502 authorizes a "party in interest," such as the Trustee, to object to claims. 11 U.S.C. § 502(a). Once the objector raises "facts tending to defeat the claim

1484756

87

**BRUTZKUS GUBNER**
Brutzkus Gubner Rozansky Seror Weber LLP

YOUR COUNSEL MATTERS®

January 25, 2016
Page 2

by probative force equal to that of the allegations of the proofs of claim themselves," then the burden reverts to the claimant to prove the validity of the claim by a preponderance of evidence. *Wright v. Holm (In re Holm),* 931 F.2d 620, 623 (9th Cir. 1991); *In re Consolidated Pioneer Mortgage*, 178 B.R. at 226. Indeed, the ultimate burden of persuasion is always on the claimant. *In re Holm*, 931 F.2d at 623; *see also In re Heath*, 331 B.R. 424 (9th Cir. BAP 2005) (explaining that a claim that fails to attach supporting documentation is not entitled to be considered as prima facie evidence of validity and amount of claim).

       b.    <u>The Abstract of Judgment Was Recorded in Violation of the Automatic Stay And Is Void</u>

      Any action taken in violation of the automatic stay imposed by 11 U.S.C. § 362 is void. *In re Gruntz*, 202 F.3d 1074, 1082 (9th Cir. 2000). The Abstract is based on a Superior Court Judgment entered on July 30, 2015 and was allegedly perfected by recordation on September 2, 2015. Both of these actions took place after the May 14, 2015 substantive consolidation order was entered in this bankruptcy case.

      The recordation of the Abstract and the judgment the Abstract is based on are therefore void and cannot form the basis of a valid claim.

       c.    <u>There Is Insufficient Evidence To Support the Claim</u>

      The only evidence filed in support of the Claim is the Abstract, which lists Enchantee Lanice Minor as the judgment creditor. It is unclear from the Claim who is the creditor. A creditor filing a proof of claim in a bankruptcy case is required to provide at least some supporting documentation.

      If a creditor "does not provide information or is unable to support its claim, then that in itself may raise an evidentiary basis to object to the unsupported aspects of the claim, or even a basis for evidentiary sanctions, thereby coming within Section 502(b)'s grounds to disallow the claim." *In re Heath*, 331 B.R. 424, 437 (B.A.P. 9th Cir. 2005). If BASTA, Inc. is holding itself out as the creditor on this Claim, there is insufficient evidence to support this because there is no evidence that Enchantee Lanice Minor has transferred her interest to BASTA, Inc.

**BRUTZKUS GUBNER**
Brutzkus Gubner Rozansky Seror Weber LLP
YOUR COUNSEL MATTERS®

January 25, 2016
Page 3

        Because the Claim is based upon a void judgment and Abstract, and is unsupported by
sufficient documentation to establish that BASTA Inc. has any claim, if you do not supplement
the Claim or withdraw the Claim by February 3, 2016, the Trustee will file an objection to the
Claim.

        Please contact me with any questions.

                                         Sincerely,

                                         REED H. BERNET

RHB:rhb

1484756

89

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: **21650 Oxnard Street, Suite 500, Woodland Hills, CA 91367.**

A true and correct copy of the foregoing document entitled: **MOTION BY CHAPTER 7 TRUSTEE TO: (1) APPROVE SALE OF REAL PROPERTY FREE AND CLEAR OF ALL LIENS, INTERESTS, CLAIMS, AND ENCUMBRANCES WITH SUCH LIENS, INTERESTS, CLAIMS, AND ENCUMBRANCES TO ATTACH TO PROCEEDS PURSUANT TO 11 U.S.C. §§ 363(b) AND (f); (2) APPROVE OVERBID PROCEDURES; (3) DETERMINE THAT BUYER IS ENTITLED TO PROTECTION PURSUANT TO 11 U.S.C. § 363(m) MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS OF DAVID SEROR AND RAFAEL FIGUEROA IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **January 19, 2018**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒   Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:   On **January 19, 2018**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Honorable Maureen A. Tighe
United States Bankruptcy Court
21041 Burbank Blvd., Bin on First Floor
Woodland Hills, CA  91367

☒   Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **_____**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐   Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| January 19, 2018 | JESSICA ROEL | /s/ Jessica Roel |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

- Sean D. Allen    allen@RAattorneys.com
- Gregory J Babcock    gbabcockecf@hotmail.com
- Julian K Bach    Julian@Jbachlaw.com, julianbach@sbcglobal.net
- Jessica L Bagdanov    jbagdanov@brutzkusgubner.com, ecf@brutzkusgubner.com
- Leslie M Baker    L.baker@oms-llc.com
- Leslie M Baker    lesliebaker@earthlink.net
- Jason Balitzer    jbalitzer@sulmeyerlaw.com,
jbalitzer@ecf.inforuptcy.com;dwalker@ecf.inforuptcy.com;kmccamey@sulmeyerlaw.com
- Justin D Balser    justin.balser@akerman.com,
toni.domres@akerman.com;elizabeth.streible@akerman.com;katherine.macelwain@akerman.com;tamara
.landgren@akerman.com;nick.mangels@akerman.com
- Andrew Bao    aabao@wolfewyman.com, kabeall@wolfewyman.com
- Adam N Barasch    anb@severson.com, dgl@severson.com;efiling@severson.com
- Steven J Barkin    stevenbarkin@gmail.com
- James C Bastian    jbastian@shbllp.com
- Michael Jay Berger    michael.berger@bankruptcypower.com,
yathida.nipha@bankruptcypower.com;michael.berger@ecf.inforuptcy.com
- Reed Bernet    rbernet@brutzkusgubner.com, ecf@brutzkusgubner.com
- Reagan E Boyce    rboyce@bg.law, ecf@bg.law
- Nathaniel M Brodnax    bankruptcy@zievelaw.com
- Patrick K Bruso    bruso005@umn.edu
- Joely Khanh Linh Bui    wdk@wolffirm.com
- Kim A Bui    kbui@allenmatkins.com
- Katherine Bunker    kate.bunker@usdoj.gov
- Richard Burstein    rburstein@brutzkusgubner.com, ecf@brutzkusgubner.com
- Chad L Butler    ecfcacb@piteduncan.com
- Brendt C Butler - INACTIVE -    brendt.butler@gmail.com
- Jonathan C Cahill    ecfcacb@aldridgepite.com, jcahill@aldridgepite.com;JCC@ecf.inforuptcy.com
- Drew A Callahan    dcallahan@aldridgepite.com, unionbankecf@aldridgepite.com
- Anthony P Cara    , Martha.ormonde@gmail.com
- Caren J Castle    wdk@wolffirm.com, wdk@wolffirm.com
- Harris L Cohen    hcohen00@aol.com
- Deborah Conley    bankruptcyecfmail@mccallaraymer.com
- Theron S Covey    tsc@tblaw.com, CAECF@tblaw.com
- Donald H Cram    dhc@severson.com, jc@severson.com
- Natalie B. Daghbandan    natalie.daghbandan@bryancave.com,
raul.morales@bryancave.com;theresa.macaulay@bryancave.com
- Nicolas A Daluiso    ndaluiso@robinsontait.com, ievans@robinsontait.com;njohnson@robinsontait.com
- Ryan M Davies    rdavies@zievelaw.com, bankruptcy@zievelaw.com
- Michael W Davis    mdavis@brutzkusgubner.com, ecf@brutzkusgubner.com
- Joseph C Delmotte    ecfcacb@aldridgepite.com, JCD@ecf.inforuptcy.com;jdelmotte@aldridgepite.com
- Mark T. Domeyer    mdomeyer@denleyinvestment.com
- Jacqueline S Eberhard    bknotice@mccarthyholthus.com
- Howard M Ehrenberg    hehrenberg@sulmeyerlaw.com,
hehrenberg@ecf.inforuptcy.com;mviramontes@ecf.inforuptcy.com
- Mark D Estle    mdestle@estlelaw.com
- Oscar Estrada    oestrada@ttc.lacounty.gov
- Dane W Exnowski    dane.exnowski@buckleymadole.com, cabk@BuckleyMadole.com
- Bryan S Fairman    ecfcacb@aldridgepite.com, BSF@ecf.inforuptcy.com;bfairman@aldridgepite.com
- Fahim Farivar    ffarivar@bakerlaw.com,
amcdow@bakerlaw.com,mdelaney@bakerlaw.com,sgaeta@bakerlaw.com
- Susan L Ferguson    Susan.L.Ferguson@gmail.com
- Michelle T Fernandez    mfernandez@fiorelaw.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

| | |
|---|---|
| 1 | •Edward J Fetzer    edwardfetzer@gmail.com, caecf@tblaw.com |
| | •Daniel K Fujimoto    wdk@wolffirm.com |
| 2 | •Todd S Garan    ch11ecf@aldridgepite.com, TSG@ecf.inforuptcy.com;tgaran@aldridgepite.com |
| | •Thomas M Geher    tmg@jmbm.com, bt@jmbm.com;fc3@jmbm.com;tmg@ecf.inforuptcy.com |
| 3 | •Michelle R Ghidotti    ECFNotifications@ghidottilaw.com |
| | •Philip J Giles    pgiles@allenbarneslaw.com, mvasquez@allenbarneslaw.com |
| 4 | •Nichole Glowin    nglowin@wrightlegal.net, BKUDGeneralupdates@wrightlegal.net |
| | •Steven M Gluck    sgluck@juno.com |
| 5 | •Michael R Gonzales    lbcecf@bvwlaw.com |
| | •Steven T Gubner    sgubner@bg.law, ecf@bg.law |
| 6 | •Kevin Hahn    khahn@yunhahn.com |
| | •Coby Halavais    coby@halavaislaw.com |
| 7 | •Keith A Higginbotham    HigginbothamLaw@aol.com |
| | •Teresa Y Hillery    teresa.hillery@fnf.com |
| 8 | •Jonathan M Hurst    jonathanhurstlaw@gmail.com, theresa.macaulay@bryancave.com |
| | •Jonathan M Hurst    jon.hurst@bryancave.com, theresa.macaulay@bryancave.com |
| 9 | •Michael D Iverson    mdiversonesq@hotmail.com |
| | •Merdaud Jafarnia    bknotice@mccarthyholthus.com, mjafarnia@ecf.inforuptcy.com |
| 10 | •Starlet J Japp    sjapp@amslca.com, bnc@amslca.com |
| | •Cori B Jones    cjones@wrightlegal.net, spolin@wrightlegal.net |
| 11 | •James A Judge    james@thejudgefirm.com, anja@thejudgefirm.com |
| | •Neil B Katz    neilkatz@pacbell.net |
| 12 | •Talin Keshishian    tkeshishian@brutzkusgubner.com, ecf@brutzkusgubner.com |
| | •John W Kim    johnkim@jwklawgroup.com |
| 13 | •William W Kim    william@parkandlim.com |
| | •Yale K Kim    ykim@allenmatkins.com, lpanderson@allenmatkins.com |
| 14 | •Alyssa B Klausner    abk@sghoalaw.com |
| | •Leslie M Klott    bankruptcy@zievelaw.com |
| 15 | •Jason C Kolbe    bknotice@rcolegal.com |
| | •Michael D Kolodzi    mdk@mdklawfirm.com |
| 16 | •Bernard J Kornberg    bjk@severson.com, elw@severson.com |
| | •David S Kupetz    dkupetz@sulmeyerlaw.com, |
| 17 | dperez@sulmeyerlaw.com;dperez@ecf.inforuptcy.com;dkupetz@ecf.inforuptcy.com |
| | •Laszlo Ladi    lladi@mccarthyholthus.com |
| 18 | •Asya Landa    ecfcca@ecf.courtdrive.com |
| | •Erin L Laney    ecfcacb@piteduncan.com |
| 19 | •Matthew B Learned    mlearned@mccarthyholthus.com, schoi@mccarthyholthus.com |
| | •Nancy L Lee    bknotice@mccarthyholthus.com, nlee@ecf.courtdrive.com |
| 20 | •Bryan Leifer    bryan.leifer@lewisbrisbois.com, |
| | bonnie.reinhard@lewisbrisbois.com;Benjamin.Clements@lewisbrisbois;Thomas.Grant@lewisbrisbois |
| 21 | .com |
| | •Halie Leonard    hleonard@pralc.com, cmartin@pralc.com |
| 22 | •Jonathan A Loeb    jloeb@blankrome.com, fpippo@blankrome.com |
| | •Erica T Loftis    Erica.Loftis@BuckleyMadole.com, Susana.Hernandez@BuckleyMadole.com |
| 23 | •Terry Loftus    bknotice@mccarthyholthus.com, tloftus@mccarthyholthus.com |
| | •Melissa Davis Lowe    mdavis@shbllp.com, sswartzell@shbllp.com |
| 24 | •Joe M Lozano    notice@NBSDefaultServices.com |
| | •Erin A Maloney    EMaloney@fiorelaw.com |
| 25 | •Jeannette Marsala    jmarsala@marsalalawfirm.com, jmarsala@marsalalawfirm.com |
| | •Angie M Marth    amarth@logs.com, ssali@logs.com |
| 26 | •J. Barrett Marum    bmarum@sheppardmullin.com, egarcia@sheppardmullin.com |
| | •David E McAllister    ecfcacb@aldridgepite.com, dem@ecf.inforuptcy.com;dmcallister@aldridgepite.com |
| 27 | •Erin M McCartney    bankruptcy@zbslaw.com, emccartney@ecf.courtdrive.com |
| | •William F McDonald    Caecf@tblaw.com, wfm@tblaw.com;snchampney@tblaw.com |
| 28 | •Ashley M McDow    amcdow@bakerlaw.com, |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

1  mdelaney@bakerlaw.com;sgaeta@bakerlaw.com;rojeda@bakerlaw.com;ffarivar@bakerlaw.com;nbrazil@bakerlaw.com

2  •Reed M Mercado    rmercado@sheppardmullin.com
•Jennifer S Muse    jsm@amclaw.com, lmg@amclaw.com,amc@amclaw.com

3  •Marisol A Nagata    cdcaecf@bdfgroup.com
•Natalie T Nguyen    nnguyen@piteduncan.com

4  •Peter L Nisson    , Martha.ormonde@gmail.com
•Brian Nomi    briannomi@yahoo.com

5  •Patrick R Noonan    PNoonan@bosslawfirm.com, PNoonan@bosslawfirm.com
•Christina J O    christinao@mclaw.org, CACD_ECF@mclaw.org

6  •Sherrill A Oates    soates@smithdollar.com,
dsmith@smithdollar.com;rsutherland@smithdollar.com;mjones@smithdollar.com

7  •Chanel L Oldham    coldham@frandzel.com, bwilson@frandzel.com
•Parada K. Ornelas    ecfcacb@piteduncan.com

8  •Renee M Parker    bknotice@earthlink.net, renee.parker@mtglawfirm.com
•Joseph S Perry    jsperry@rewlaw.com

9  •Misty A Perry Isaacson    misty@ppilawyers.com,
ecf@ppilawyers.com;perryisaacsonmr51779@notify.bestcase.com

10  •David M Poitras    dpoitras@jmbm.com, bt@jmbm.com;vr@jmbm.com;dmp@ecf.inforuptcy.com
•Michael Poole    Tonyqlaw@gmail.com, mpoole25@gmail.com;ernesto@improvingmyscore.com

11  •Stuart W Price    swprice@bryancave.com, apameh.vaziri@bryancave.com
•Karen A Ragland    Karen.ragland@fnf.com, Roselle.Bloodsaw@fnf.com

12  •Casper J Rankin    ecfcacb@aldridgepite.com, CJR@ecf.inforuptcy.com
•Richard J Reynolds    rreynolds@bwslaw.com, psoeffner@bwslaw.com,tmims@bwslaw.com,rjr-nef@bwslaw.com;fcabezas@bwslaw.com

13  •Irina C Ribeiro    ecfcacb@piteduncan.com

14  •Cassandra J Richey    ecfcca@ecf.courtdrive.com
•Melissa Robbins Coutts.    mcoutts@mccarthyholthus.com, jfiedler@mccarthyholthus.com

15  •Ricardo Rozen    rrozen@wrslawyers.com
•Timothy M Ryan    tryan@theryanfirm.com, ecf@theryanfirm.com

16  •Diego Santana    anja@thejudgefirm.com
•Edward G Schloss    egs2@ix.netcom.com

17  •John D Schlotter    ecfmail@aclawllp.com
•Valerie J Schratz    vschratz@greenhall.com

18  •David Seror    dseror@brutzkusgubner.com, ecf@brutzkusgubner.com
•David Seror (TR)    kpscion@ebg-law.com, C133@ecfcbis.com

19  •David Seror (TR)    mtzeng@brutzkusgubner.com, C133@ecfcbis.com
•Timothy J Silverman    tsilverman@scheerlawgroup.com

20  •Ryan P Spitalnick    bnc@amslca.com, vaguirre@amslca.com
•Richard P Steelman    ricky.steelman@bryancave.com, Debbie.Throckmorton@BryanCave.com

21  •Jeffrey L Sumpter    jsumpter@epiqtrustee.com, jsumpter@cbiz.com
•Brian H Tran    bankruptcy@zievelaw.com

22  •Edward A Treder    cdcaecf@bdfgroup.com
•Meghann A Triplett    Meghann@MarguliesFaithlaw.com,

23  Helen@MarguliesFaithlaw.com;Noreen@MarguliesFaithlaw.com;Victoria@MarguliesFaithlaw.com;Brian@MarguliesFaithlaw.com

24  •Ronald D Tym    RTym@Tymfirm.com
• United States Trustee (SV)    ustpregion16.wh.ecf@usdoj.gov

25  •Carol G Unruh    cgunruh@sbcglobal.net
•Thomas B Ure    tbuesq@aol.com, ThomasUre@aol.com

26  •Gagan G Vaideeswaran    ecfcacb@aldridgepite.com, GGV@ecf.inforuptcy.com
•Melissa A Vermillion    ecfcca@ecf.courtdrive.com

27  •Darlene C Vigil    cdcaecf@bdfgroup.com
•Darlene C Vigil    cdcaecf@bdfgroup.com

28  •Katherine S Walker    kwalker@amslca.com, bnc@amslca.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

1

•Kristin S Webb    bknotice@rcolegal.com, RCO@ecf.inforuptcy.com
•Edward T Weber    bknotice@rcolegal.com

2

•Sharon Z. Weiss    sharon.weiss@bryancave.com, raul.morales@bryancave.com
•Kristi M Wells    bknotice@rcolegal.com, RCO@ecf.inforuptcy.com

3

•Steven Werth    swerth@sulmeyerlaw.com,
asokolowski@sulmeyerlaw.com;kmccamey@sulmeyerlaw.com;asokolowski@ecf.inforuptcy.com;swerth@

4

ecf.inforuptcy.com
•Reilly D Wilkinson    rwilkinson@scheerlawgroup.com

5

•Bethany Wojtanowicz    bethanyw@w-legal.com, BNC@w-legal.com
•Jennifer C Wong    bknotice@mccarthyholthus.com, jwong@ecf.courtdrive.com

6

•Lukasz I Wozniak    Lwozniak@wrightlegal.net
•Lisa R Yamasaki    Lisa.r.Yamasaki@gmail.com, lisa.r.yamasaki@gmail.com

7

•Robert M Yaspan    court@yaspanlaw.com, tmenachian@yaspanlaw.com
•Michael D Zeff    jessicak@rosenthalzeff.com

8

•Les A Zieve    bankruptcy@zievelaw.com
•Kristin A Zilberstein    ecfnotifications@ghidottilaw.com

9

•Debora M Zumwalt    bankruptcy@epsten.com, rlopez@epsten.com

10

11

12

**2. SERVED BY UNITED STATES MAIL**:

13

**Buyer:**                          Alfred Gregorian                   Alfred Gregorian
Brian Der Vartanian                 1528 Canada Blvd. 205              1901 De Osma St,

14

100 North Brand Blvd, Suite #16     Glendale, CA 91208-3202           Las Vegas, NV 89102-2027
Glendale, CA 91023

15

BASTA, Inc.                         BASTA, Inc.                       BASTA, Inc.

16

2500 Wilshire Boulevard, Suite      c/o Kevin Hermansen, Attoreny     c/o Kevin Hermansen
1050                                for Judgment Creditor             667 West Ave J.

17

Los Angeles, CA 90057               2500 Wilshire Blvd., Suite 1050   Lancaster, CA 93534
                                    Los Angeles, CA 90057

18

La Vista Properties                 La Vista Properties

19

1901 De Osma St,                    1528 Canada Blvd. 205
Las Vegas, NV 89102-2027            Glendale, CA 91208-3202

20

21

22

23

24

25

26

27

28

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**